# United States of America



## DEPARTMENT OF THE ARMY

Washington, DC          November 18, 2011
_____PLACE_____          _____DATE_____

I HEREBY CERTIFY that the attached constitute true and accurate copies of files pertaining to Alan Matthew Spadone, a member of the United States Army and former Cadet at the United States Military Academy. Copies of Military Academic Records and other investigative Records are located at the U.S. Military Academy, West Point, NY 10996. Copies of the Official Military Personnel File (OMPF) are maintained by the U.S. Army Human Resources Command, Fort Knox, Kentucky. The original personnel records and copies of other records are in the official temporary custody of the Military Personnel Litigation Branch, Litigation Division, Office of The Judge Advocate General of the Army.

_Susan B. Sutherland_
SUSAN B. SUTHERLAND
Lieutenant Colonel, U.S. Army
Chief, Military Personnel Litigation Branch

VOLUME I of II

I HEREBY CERTIFY that Lieutenant Colonel Susan B. Sutherland, who signed the foregoing certificate, is the Chief, Military Personnel Litigation Branch, Litigation Division, Office of the Judge Advocate of the Army, and that full faith and credit should be given to her certification.

IN TESTIMONY WHEREOF I, Joyce E. Morrow

The Administrative Assistant to the Secretary of the Army, have hereunto caused the seal of the Department of the Army to be affixed this   18th   day of

November          2011

By _____
_Administrative Assistant._

**VANESSA A. BERRY**

**Colonel, U.S. Army**

**Chief, Litigation Division**

# ADMINISTRATIVE RECORD
## Alan Matthew Spadone v. Secretary of the Army
### Volume I

| | | |
|---|---|---|
| Tab 1 | Orders Amending Report Date to Advanced Individual Training (AIT), dated 13 September 2011 | 000001 |
| Tab 2 | Orders to Active Duty, dated 2 September 2011 | 000002 |
| Tab 3 | Assistant Secretary of the Army Decision Separating Plaintiff from the United States Military Academy, dated 23 August 2011 | 000003 |
| Tab 4 | Superintendent Recommendation Memorandum, dated 7 March 2011 | 000004-000006 |
| Tab 5 | Legal Review of the Vacation of Suspension of Plaintiff's Suspended Separation, dated 22 February 2011 | 000007-000008 |
| Tab 6 | Tactical Officer and Chain of Command Recommendation Concerning Vaction of Suspended Separation, dated 20 December 2011 | 000009 |
| Tab 7 | Psychiatrist (Keller Army Community Hospital) Recommendation, undated | 000010 |
| Tab 8 | Honor Mentor's Recommendation Concerning Plaintiff's Participation in the Honor Mentorship Program (HMP), dated 14 December 2010 | 000011 |
| Tab 9 | Plaintiff's Rebuttal Submission Through Counsel, dated 10 December 2010 | 000012-000015 |
| Tab 10 | Superintendant's Recommendation Concerning Vacation of Suspension of Separation and Assignment to Army Reserves, dated  30 November 2010 | 000016-000018 |
| Tab 11 | Legal Review of the Vacation of Suspension of Plaintiff's Separation, dated 19 November 2010 | 000019-000020 |
| Tab 12 | Tactical Officer Counseling Form Concerning Honor Mentorship Program (HMP) Failure, dated 26 October 2010 | 000021-000022 |
| Tab 13 | Special Assistant to the Commandant for Honor Matters Recommendation to Process Plaintiff for HMP Failure, dated 22 October 2010 | 000023 |
| Tab 14 | Plaintiff's HMP Essays #1 Thru #9, undated | 000024-000031 |

Tab 15     Superintendant's Decision Regarding the Honor Investigative
           Hearing (HIH) Recommendation, dated 3 May 2010                    000032

Tab 16     Staff Judge Advocate's Recommendation Concerning HIH
           Recommendation, dated 27 April 2010                              000033

Tab 17     Commandant's Recommendation to Suspend Separation and Enroll
           in HMP, dated 20 April 2010                                      000034-000035

Tab 18     Memorandum to Plaintiff Offering the Opportunity for Rebuttal,
           undated                                                          000036

Tab 19     Special Assistant to the Commandant for Honor Matters Summary
           and Recommendation Regarding HIH, undated                       000037-000041

Tab 20     Legal Review of the Honor Investigative Hearing, dated
           7 April 2010                                                     000042-000044

Tab 21     Cadet Advisory Board Recommendations on HIH Findings,
           8 March 2010                                                     000045-000046

Tab 22     Plaintiff's United States Military Academy Oath, 2 July 2007     000047-000048

DEPARTMENT OF THE ARMY
U.S. ARMY HUMAN RESOURCES COMMAND
1600 SPEARHEAD DIVISION AVENUE
FORT KNOX, KY  40122

AHRC-OPD-A                                              13 September 2011
ORDERS A-09190127A01


ALAN M. SPADONE                                      PFC



FOLLOWING ORDER IS AMENDED AS INDICATED:

SO MUCH OF: FORMAT 172, ORDERS A-09-190127 THIS CENTER, DATED 2 SEPTEMBER 20111,
IS AMENDED.

PERTAINING TO:  ABOVE NAMED INDIVIDUAL

AS READS:  REPORT DATE: 10 OCTOBER 2011

HOW CHANGED:  IS AMENDED TO READ:  REPORT DATE 23 APRIL 2012

AS READS: TO ATTEND AIT COURSE 010-11B10 ( R) CLASS 002, 14-0CT 2011-2 DEC 2011
INFANTRYMAN

HOW CHANGED:  IS AMEND TO READ:  TO ATTEND AIT COURSE 010-11B10  (R) CLASS 020,
27 APRIL 2012- 15 JUN 2012  INFANTRYMAN


AUTHORITY: VOCG
PCN:  TCCIA03588
FORMAT: 700

FOR THE COMMANDER:

*****************                      STEVEN W. MOSS
*      AHRC       *                    COL, GS
*    OFFICIAL     *                    DEPUTY CHIEF OF STAFF
*****************

DISTRIBUTION:  A1 PLUS
AHRC-MSR (1)     AHRC-OP (1)     AHRC-OPD-A (1)
CDR IN TNG BDE 30 AG BN RC (W2L5Z0) FT. BENNING, GA 31905 (1)
CDR, HRC FORT KNOX, ATTN: AHRC-EPA-1, 1600 SPEARHEAD DIVISION AVENUE, FORT
KNOX, KY 40122 (1)

DEPARTMENT OF THE ARMY
U.S. ARMY HUMAN RESOURCES COMMAND
1600 SPEARHEAD DIVISION AVENUE
FORT KNOX, KY 40122

AHRC-OPD-A                                                              2 SEPTEMBER 2011
ORDERS A- 09-190127

ALAN M. SPADONE                                                               PFC

YOU ARE ORDERED TO ACTIVE DUTY IN THE GRADE OF RANK SHOWN ABOVE FOR THE PERIOD SHOWN IN ACTIVE DUTY COMMITMENT BELOW.
YOU ARE ASSIGNED AS SHOWN AND WILL PROCEED FROM YOUR CURRENT LOCATION IN TIME TO REPORT ON THE DATE SHOWN BELOW.

REPORT TO:  IN TNG BDE 30TH AG BN (RECEPTION) (W2L5ZQ) FT. BENNING, GA 31905
REPORT DATE:  10 OCTOBER 2011

ASSIGNED TO: IN TNG BDE 30TH AG BN (RECEPTION) (W2L5ZQ) FT. BENNING, GA 31905
ACTIVE DUTY COMMITMENT:  TO COMPLETE PRIOR SERVICE OBLIGATION.
PURPOSE:  FULFILL ACTIVE ARMY REQUIREMENT

ADDITIONAL INSTRUCTIONS:  PURSUANT TO THE AUTHORITY CONTAINED IN UNITED STATES MILITARY ACADEMY (USMA) REGULATIONS AND
THE OFFICE OF THE ASSISTANT SECRETARY OF THE ARMY (MANPOWER & RESERVE AFFAIRS) DATED 23 AUGUST 2011. THE
SUPERINTENDENTS RECOMMENDATION TO SEPARATE CADET SPADONE FROM THE UNITED STATES MILITARY ACADEMY IS APPROVED. IN
ACCORDANCE WITH AR 612-205, TABLE 3, RULE 6 CADET SPADONE WILL BE TRANSFERRED TO THE UNITED STATES ARMY RESERVE IN THE
GRADE OF E-3 FOR TWO YEARS AND THEN IMMEDIATELY ORDERED TO ACTIVE DUTY FOR TWO YEARS. CADET SPADONE WILL BE DROPPED
FROM ALL USMA ROLLS EFF 23 AUGUST 2011. UNDER PROVISIONS OF CHAPTER 5, PART 9, AR 37-104-3, PERSONNEL FINANCE RECORDS OF SM
WERE CLOSED WHEN HE ENTERED INTO THE CADET STATUS AND THE GAINING ORGANIZATION MUST INITIATE NEW PERSONNEL FINANCE
RECORD. CADET TIME IS CREDITABLE FOR BASIC ACTIVE SERVICE AND PAY PURPOSES. YOU ARE AUTHORIZED SEPARATION TRAVEL PAY
FROM THE USMA, WEST POINT, NY TO YOUR HOR AND TRAVEL PAY TO YOUR NEW UNIT OF ASSIGNMENT. ACCESSION OF THE SM TO AD ARMY
ROLLS WILL BE ACCOMPANIED BY THE FIRST DUTY STA/TDY SITE. TRAVEL BY POV IS AUTH AS MORE ADVANTEGEOUS TO THE GOV.  OFFICIAL
TRAVEL ARRANGEMENT PURCHASED THROUGH A COMMERCIAL TRAVEL OFFICE (TRAVEL AGENCY) NOT UNDER CONTRACT TO THE
GOVERNMENT ARE NOT REIMBURSABLE.  IF YOU PLAN TO SHIP PERSONAL PROPERTY AT GOVERNMENT EXPENSE, CONTACT YOUR
TRANSPORTATION OFFICE TO ARRANGE FOR SHIPMENT AND CONTACT THE TRANSPORTATION OFFICE AT YOUR NEW DUTY STATION
IMMEDIATELY AFTER ARRIVAL TO ARRANGE DELIVERY. SOLDIER MUST HAND CARRY ALL ORDERS, PERSONNEL (201 FILE), MEDICAL AND
DENTAL RECORDS. CADET SPADONE HAS COMPLETED BASIC TRAINING AND WILL REPORT NLT 10 OCT 2011 TO IN TNG BDE 30TH AG
RECEPTION FT BENNING, GA 31905 FOR ACCESSION ONTO ACTIVE DUTY.  UPON COMPLETION PROCEED TO AIT ASSIGNMENT. CADET
SPADONE WILL ATTEND AIT COURSE 010-11B10 (R), CLASS 002, 14 OCT 2011- 2 DEC 2011 SC; 071 INFANTRYMAN,  FT. BENNING, GA 31905-5273.

FOR ARMY USE:
AUTH:  MEMORANDUM, OFFICE OF THE ASSISTANT SECRETARY OF THE ARMY (MANPOWER AND RESERVE AFFAIRS)
        DATED 23 AUG 2011
PER CON NO:  N/A                                    MDC:  1AE1
HOR:                                               PLEAD/OAD: WEST POINT, NY 10996-1692
PMOS:  09D00                                        PEBD:  NA
SEX: MALE                                           COMP:  RA
RES GR:  PFC                                         CIC:  NONE
PPN:  N/A                                            ACCT CLAS:

FORMAT:  172

FOR THE COMMANDER:

*****************
*  AHRC  *                                          STEVEN W. MOSS
* OFFICIAL  *                                       COL, GS
*****************                                   DEPUTY CHIEF OF STAFF
DISTRIBUTION:  SM (1)
HQDA, MAAG-PM (1)     TREAS, USMA (1)     DAD (1)   S1, USCC (1)
CDR, IN TNG BDE 30 AG BN RC (W2L5ZO) FT. BENNING, GA 31905 (1)
CDR, HRC FORT KNOX, ATTN: AHRC-EPA-1, 1600 SPEARHEAD DIVISION AVENUE, FORT KNOX, KY 40122 (1)



**DEPARTMENT OF THE ARMY**
OFFICE OF THE ASSISTANT SECRETARY
MANPOWER AND RESERVE AFFAIRS
111 ARMY PENTAGON
WASHINGTON DC 20310-0111

SAMR

MEMORANDUM FOR SUPERINTENDENT, UNITED STATES MILITARY ACADEMY,
ATTN: MAJA-MJ, WEST POINT, NEW YORK 10996

SUBJECT: Separation of Cadet Alan Spadone, Class of 2012

1. Reference. Memorandum, USMA, MAJA-MJ, subject: Separation of Cadet Alan
Spadone, Company B-1, Class of 2012, dated 7 March 2011.

2. I approve the Superintendent's recommendation to separate Cadet Spadone from
the United States Military Academy. In accordance with Army Regulation 612-205,
Table 3, Rule 6, Cadet Spadone will be transferred to the United States Army Reserve
in the grade of E-3 for two years and ordered to active duty for two years.

3. The HQDA, DCS, G-1 point of contact is MAJ Barrcary J. Lane, (703) 695-7283,
DSN 225-7283 or barrcary.lane@conus.army.mil.

THOMAS R. LAMONT
Assistant Secretary of the Army
(Manpower and Reserve Affairs)



OFFICE OF THE SUPERINTENDENT
**UNITED STATES MILITARY ACADEMY**
WEST POINT, NEW YORK  10996-5000

MAJA-MJ                                                    MAR 7 2011

MEMORANDUM FOR Headquarters, Department of the Army, G-1 (ATTN: DAPE-MPO-AP), Washington, DC  20301-0300

SUBJECT:  Separation of Cadet Alan Spadone, Company B-1, Class of 2012

1.  The summarized record of proceedings of the Honor Investigative Hearing and allied documents in the case of Cadet Alan Spadone, Company B-1, Class of 2012, are forwarded pursuant to AR 210-26, paragraphs 6-16 and 7-3.

2.  On 3 May 2010, the previous Superintendent, Lieutenant General F.L. Hagenbeck, reviewed the record of proceedings and allied documents in Cadet Spadone's honor case, and approved the finding of the Honor Investigative Hearing board that Cadet Spadone violated the Cadet Honor Code by cheating on or about 27 October 2009 and 19 November 2009.  Cadet Spadone's graduation was delayed until May 2012, and he was placed in a suspended separation status until his graduation – contingent upon his future exemplary conduct and adherence to the terms of the suspended separation.

3.  One of the terms of the suspended separation was that Cadet Spadone must successfully complete the requirements of the USMA Honor Mentorship Program (HMP).  On 22 October 2010, Major Jason Daugherty, Special Assistant to the Commandant for Honor Matters, informed the chain of command that Cadet Spadone was failing HMP.  Specifically, Cadet Spadone, after seven weeks in the program, failed to submit any journal entries that met the intent of reflection as outlined in Chapter 6 of USCC PAM 15-1, paragraph 605c.  Additionally, the Honor Mentor that Cadet Spadone selected, Lieutenant Colonel John Billie, believes that Cadet Spadone has unresolved issues that will prevent him from successfully completing HMP.

4.  On 30 November 2010, I signed memoranda stating that Cadet Spadone had violated the terms of his suspended separation.  These memoranda set forth my intent to recommend to Headquarters, Department of the Army, that the suspension of Cadet Spadone's separation be vacated based on his HMP failure, and that he be transferred to the US Army Reserve in the grade of E-3 for two years, and ordered to active duty for two years, in accordance with AR 612-205, Table 3, Rule 6.  In addition, I immediately suspended Cadet Spadone from USMA, and pursuant to Title 10, Section 702, US Code, and AR 612-205, I ordered that Cadet Spadone's pay and allowances be stopped upon his departure from West Point.

5.  Subsequent to my signing these 30 November 2010 memoranda, matters were received from Cadet Spadone's psychiatrist, from his Honor Mentor, and from his attorney.  To date, only so much of my 30 November 2010 memoranda as concluded that Cadet Spadone has violated the terms of his suspended separation, as immediately suspended Cadet Spadone from USMA, and as ordered that Cadet Spadone's pay and allowances be stopped upon his departure from West Point,

MAJA-MJ
SUBJECT:  Separation of Cadet Alan Spadone, Company B-1, Class of 2012    MAR 7 2011

has been enforced.  This limited enforcement is due to the receipt of the additional matters
mentioned above.

6.  Based upon my review of the entire case file, including all matters submitted following my
30 November 2010 action in this case, I reaffirm that Cadet Spadone has violated the terms of his
suspended separation by his failure to complete the requirements of the USMA Honor
Mentorship Program.

7.  A copy of the entire case file, including the summarized record of the honor proceedings and a
copy of the USMA Honor Mentorship Program requirements, is hereby forwarded to Headquarters,
Department of the Army, with a recommendation that Cadet Spadone be separated from USMA,
transferred to the United States Army Reserve in the grade of E-3 for two years, and ordered to
active duty for two years, in accordance with AR 612-205, Table 3, Rule 6.

8.  Cadet Spadone remains suspended from USMA until final action on his case is taken by
Headquarters, Department of the Army.  Cadet Spadone's status is:  authorized leave of absence
without pay and allowances pending separation.

Encl
Case file

DAVID H. HUNTOON, JR.
Lieutenant General, US Army
Superintendent

2

**000005**

**UPDATED ACTION**
**Cadet Alan Spadone, Company B-1, Class of 2012**

The following actions are taken with respect to the honor case of Cadet Alan Spadone, Company B-1, Class of 2012:

a. Based upon my review of the entire case file, including all matters submitted following my 30 November 2010 action in this case, I hereby reaffirm that Cadet Spadone has violated the terms of his suspended separation by his failure to complete the requirements of the USMA Honor Mentorship Program.

b. A copy of the entire case file, including the summarized record of the honor proceedings and a copy of the USMA Honor Mentorship Program requirements, will be forwarded to Headquarters, Department of the Army, with a recommendation that Cadet Spadone be separated from USMA, transferred to the United States Army Reserve in the grade of E-3 for two years, and ordered to active duty for two years, in accordance with AR 612-205, Table 3, Rule 6.

c. Cadet Spadone remains suspended from USMA until final action on his case is taken by Headquarters, Department of the Army. In accordance with Title 10, Section 702, United States Code, and AR 612-205, Cadet Spadone's pay and allowances were stopped upon his departure from West Point. Cadet Spadone's status is: authorized leave of absence without pay and allowances pending separation.

7 MAR 2011
_____
DATE

DAVID H. HUNTOON, JR.
Lieutenant General, US Army
Superintendent



**DEPARTMENT OF THE ARMY**
UNITED STATES MILITARY ACADEMY
646 SWIFT ROAD
WEST POINT, NY 10996-1905

REPLY TO
ATTENTION OF

MAJA-MJ                                                                22 February 2011

MEMORANDUM THRU

Secretary of the General Staff, United States Military Academy, West Point, New York 10996
Chief of Staff, United States Military Academy, West Point, New York 10996

FOR Superintendent, United States Military Academy, West Point, New York 10996

SUBJECT: Legal Review of the Vacation of Suspension of Separation – Cadet Alan Spadone, Company B-1, Class of 2012

1. Purpose. To review the request for vacation of suspension of separation in the honor case of Cadet Alan Spadone, Company B-1, Class of 2012.

2. Background.

a. On 3 May 2010, the previous Superintendent, Lieutenant General F.L. Hagenbeck, reviewed the record of proceedings and allied documents in Cadet Spadone's honor case, and approved the finding of the Honor Investigative Hearing board that Cadet Spadone violated the Cadet Honor Code by cheating on or about 27 October 2009 and 19 November 2009 (TAB I). Cadet Spadone's graduation was delayed until May 2012, and he was placed in a suspended separation status until his graduation – contingent upon his future exemplary conduct and adherence to the terms of the suspended separation.

b. One of the terms of the suspended separation was that Cadet Spadone must successfully complete the requirements of the USMA Honor Mentorship Program (HMP). On 22 October 2010, Major Jason Daugherty, Special Assistant to the Commandant for Honor Matters, informed the chain of command that Cadet Spadone was failing HMP (TAB F). Specifically, Cadet Spadone, after seven weeks in the program, failed to submit any journal entries that met the intent of reflection as outlined in Chapter 6 of USCC PAM 15-1, paragraph 605c (TAB G). Additionally, the Honor Mentor that Cadet Spadone selected, Lieutenant Colonel John Billie, believes that Cadet Spadone has unresolved issues that will prevent him from successfully completing HMP.

c. On 30 November 2010, you signed memoranda stating that Cadet Spadone had violated the terms of his suspended separation (TAB H). These memoranda set forth your intent to recommend to Headquarters, Department of the Army, that the suspension of Cadet Spadone's separation be vacated based on his HMP failure, and that he be transferred to the US Army Reserve in the grade of E-3 for two years, and ordered to active duty for two years, in accordance with AR 612-205, Table 3, Rule 6. In addition, you immediately suspended Cadet Spadone from

MAJA-MJ
SUBJECT: Legal Review of the Vacation of Suspension of Separation – Cadet Alan Spadone,
Company B-1, Class of 2012

USMA, and pursuant to Title 10, Section 702, US Code, and AR 612-205, you ordered that Cadet
Spadone's pay and allowances be stopped upon his departure from West Point.

   d.  Subsequent to your signing these 30 November 2010 memoranda, matters were received
from Cadet Spadone's psychiatrist, from his Honor Mentor, and from his attorney (TABS C, D,
and E, respectively).  Based upon these new matters, the chain of command revised its
recommendation to state that a call to active duty would not be appropriate in this case (TAB C).
The chain of command now recommends that Cadet Spadone be separated from USMA and
discharged from the Army, and that you direct an AR 15-6 investigation to determine if Cadet
Spadone has breached his service agreement, and whether he should be required to reimburse his
educational costs.

   e.  To date, only so much of your 30 November 2010 memoranda as concluded that Cadet
Spadone has violated the terms of his suspended separation, as immediately suspended Cadet
Spadone from USMA, and as ordered that Cadet Spadone's pay and allowances be stopped upon
his departure from West Point, has been enforced.  This limited enforcement is due to the receipt
of the additional matters mentioned in paragraph 2d above.

3.  Staff Judge Advocate's Recommendations.

   a.  Please review the entire file, particularly TABS C, D, and E.

   b.  I concur with the chain of command.  I recommend that you vacate the suspension of Cadet
Spadone's separation, and discharge him from the Army with an Honorable Discharge certificate
under the provisions of AR 612-205, Table 3, Rule 9, and the Delegation of Separation and
Discharge Authority for USMA memorandum, dated 5 March 2007, and its enclosures.  In
accordance with AR 210-26, I also recommend that you direct an AR 15-6 investigation to
determine if Cadet Spadone has breached his service agreement, and whether he should be
required to reimburse his educational costs.

   c.  If you concur with the aforementioned recommendations, please sign and date the new
action memorandum located at TAB A.  If you prefer an alternate disposition, an alternate action
memorandum will be prepared for you upon your request.

Encls
as

JERRY J. LINN
COL, JA
Staff Judge Advocate

2

000008



DEPARTMENT OF THE ARMY
B Company, 1ˢᵗ Regiment, United States Corps of Cadets
United States Military Academy
West Point, New York 10996

MACC-O-B1                                                         20 December 2010

MEMORANDUM THRU

Regiment Tactical Officer, First Regiment, United States Corps of Cadets, United States Military
   Academy, West Point, NY  10996
Brigade Tactical Officer, United States Corps of Cadets, United States Military Academy, West Point,
   NY  10996
Commandant, United States Corps of Cadets, United States Military Academy, West Point, NY  10996

FOR Superintendent, United States Military Academy, West Point, NY  10996

SUBJECT:  Disposition of Cadet Alan Spadone's Separation from the United States Military Academy

1.  Although you have taken action on the request to vacate Cadet Alan Spadone's suspended separation, I respectfully
request that you consider the following information before submitting your recommendation to HQDA.

   a.  My interactions with Cadet Spadone over the last year and half lead me to distrust him and his judgment.  I feel that
that Cadet Spadone would be a potentially hazardous liability to his future chain of command.  He has displayed a
continuing downward spiral of personality issues which include suicidal acts and intentions, a lack of a functioning grasp
of reality, and an inability to move beyond what most observers consider to be inconsequential events.  I distrust him to
the extent that I would not allow him to be armed given the reasons expressed above.

   b.  Dr. Hain, Psychiatrist, Keller Army Community Hospital, has evaluated and treated Cadet Alan Spadone, and
concurs that a call to active service would not be appropriate.  See enclosure 1.

   c.  CDT Spadone has displayed a pattern of misconduct since being enrolled into the Honor Mentorship Program
(HMP).  Namely, he failed to comply with orders by refusing to begin the HMP until several months after being enrolled,
failing to wear the rank assigned to him while in the HMP, and failing to submit HMP requirements until several months
overdue.  Also, on 20 DEC 10, during a phone conversation with CDT Spadone, I gave him orders not to return to West
Point which he disobeyed.

2.  Based on these factors, I highly recommend that CDT Spadone not be given the opportunity to serve in the active duty
Army.  Therefore, I recommend that the United States Military Academy seek recoupment from Cadet Alan Spadone for
his educational costs.

3.  Point of contact for this memorandum is michael.denehy@usma.edu or (845) 938-2905.

Encls                                                     MICHAEL C. DENEHY
1)  Psychiatrist's Recommendation                         MAJ, SF
                                                          Tactical Officer, Company B1



**DEPARTMENT OF THE ARMY**
**U.S. ARMY MEDICAL DEPARTMENT ACTIVITY**
**WEST POINT, NEW YORK 10996-1197**

To Whom It May Concern,

I have had the opportunity to assess Cadet Alan Spadone.   I am of the opinion that his personality traits and significant adjustment difficulties are likely to continue to adversely affect his ability to serve both as an officer and in the active military.  I do not think he would be suitable in either role at this time.

A call to action is not in the best interest of the cadet or the US Army.

Thank you,

Joshua Hain, MD
Attending Psychiatrist
Keller Army Community Hospital
West Point, NY 10996



DEPARTMENT OF THE ARMY
**UNITED STATES MILITARY ACADEMY**
West Point, New York 10996

REPLY TO
ATTENTION OF

MADN-MATH                                                          14 December 2010

MEMORANDUM FOR Whom It May Concern

SUBJECT:  Cadet Alan Spadone Participation in the Honor Mentorship Program

1.  The purpose of the Honor Mentorship Program (HMP), stated in Chapter 6, USCC PAM 15-1 is to enable the cadet to identify and remediate shortcomings in personal integrity and ethical decision-making skills that resulted in a violation of the Cadet Honor Code.  Cadet Alan Spadone showed neither the ability to identify any shortcomings he had that led to his violation nor the desire to remediate any of his integrity and/or decision-making skills to complete the HMP.

2.  Alan was not pro-active during any portion of the program.  He failed to schedule a timely in-brief in May 2010, which resulted in missing the cut-off to formally begin the program until the fall semester.  I afforded him the opportunity to participate informally with me during the course of the summer, but never received a response.  I was not contacted by Alan until the third week of the fall semester to attend his formal in-brief.  We met on two occasions to talk, but Alan never completed his own character development plan (Program Requirements, Paragraph 605, Chapter 6, USCC PAM 15-1).  I did not receive any journal entries until 6 October 2010.

3.  In his journal essay, on the fifth page, he finally admits to knowingly committing an honor code violation.  He states that based on his perception, he no longer had to adhere to the West Point code.  At that point, I no longer felt Alan was capable of successfully completing the HMP.  I informed MAJ Denehy (Alan's Tactical Officer) and MAJ Daugherty (Special Assistant to the Commandant for Honor) of my decision and forwarded Alan's essay.  Alan is an intellectually bright person, but I do not feel he will ever adhere to either the code or the spirit of the code here at West Point.  My opinion is based on being a former cadet honor representative, five years as an Assistant Professor here at the Academy and over twenty-five years of service in the Army.

4.  **Point of Contact** is the undersigned, (845) 938-5649.

J. Scott Billie
LTC, FA49
Assistant Professor
Department of Mathematical Sciences

**000011**

Reply to:

78 Clark Mill Road
Weare, NH 03281
800-355-1095
603-219-8718
fax 603-369-3507

Washington, D.C.
202-857-8465
800-355-1095

email: conway@mclaw.us
www.mcmilitarylaw.com

Gary Myers & Associates
Attorneys-at-Law

Daniel S. Conway
Admitted in
New Hampshire

10 December 2010

| | |
|---|---|
| Memorandum for: | Lieutenant General David H. Huntoon, Jr. Superintendent, United States Military Academy |
| Via: | Colonel Jerry Linn, Staff Judge Advocate |
| Subject: | Separation of Cadet Alan Spadone Company B-1, Class of 2012 |

1.    This firm represents Cadet Alan Spadone.  On 30 November 2010, Cadet Spadone was notified that he was recommended for separation based on an alleged failure to complete the Honor Mentorship Program.  Cadet Spadone was recommended for transfer to the United States Army Reserve in the grade of E-3, for two years, and ordered to active duty for two years.  Prompt attention to this matter is necessary as Cadet Spadone is presently out-processing.

2.    The separation of Cadet Spadone for a purported violation of the HMP is arbitrary and capricious, an abuse of discretion, and not in accordance with the law.  More significantly, the separation action infringes on Cadet Spadone's First Amendment right to freedom of speech and is a violation of the West Point regulatory scheme. This is a request that his separation proceedings be immediately halted, that Cadet Spadone be returned to his classes, and that Cadet Spadone be reinstated in the HMP.

3.    The basis for the separation act is a memorandum authored by Major Jason Daugherty, Special Assistant to the Commandant for Honor Matters.  The discussion provided by MAJ Daugherty is provided below for convenience and is included at TAB A:

1

> 2. DISCUSSION: CDT Spadone was found to have violated the Honor Code on 8 March 2010, was ruled a Full-Year Turnback to the Class of 2012, and was suspended from the Academy from June to August 2010. Due to his Honor violation, he is on Suspended Separation Status until graduation. Upon returning to the Academy for the Fall Academic Semester, he was directed to begin active work on the Honor Mentorship (HMP) requirements. For the seven weeks CDT Spadone is to have been actively working (2SEP10 to 22OCT10) in HMP, he has neglected to submit any journals that meet the intent of reflection outlined in HMP, or has he began work on any other HMP requirement. Furthermore, CDT Spadone's mentor, LTC John Billie, believes that he has unresolved issues that will prevent him from being able to participate in the program. Additionally, CDT Spadone's TAC reported that he was cleared by a professional at behavioral health, who stated that CDT Spadone cannot contribute his actions to any mental condition.

4.  On 19 November 2010, Colonel Jerry Linn completed a legal review of the record of proceedings and allied documents in the proposed separation.  TAB B.  COL Linn wrote that:

> b.  One of the conditions of the suspension was that Cadet Spadone must successfully complete the requirements of the USMA Honor Mentorship Program (HMP).
> On 22 October 2010, Major Jason Daugherty, Special Assistant to the Commandant for Honor Matters, informed the chain of command that Cadet Spadone was failing the HMP.  Specifically, Cadet Spadone, after seven weeks in the program, failed to submit any journal entries that met the intent of reflection as outlined in Chapter 6 of USCC Pam 15-1, paragraph 605c. Additionally, Cadet Spadone's mentor, Lieutenant Colonel John Billie, believes that Cadet Spadone has unresolved issues that will prevent him from successful completion of the HMP.

5.  As indicated in both MAJ Daugherty and COL Linn's memorandums, the basis for the separation action is that Cadet Spadone "failed to submit any journal entries that met the intent of reflection as outlined in Chapter 6 of USCC Pam 15-1, paragraph 605c." Unspecified unresolved issues were also cited as justification for the separation action.

6.  USCC Pam 15-1, Chapter 6, para. 605c is provided below for convenience.  That provision of the regulation "allows the mentored cadet to document actions and reflect upon the associated thought processes behind those actions."  The regulation also states that the journal will "provide a good opportunity to discover personal habits that relate to moral decision-making."  Though the "journal is not a diary" it is intended to provide "directed reflection on topics/issues by the mentor."  Under subparagraphs 1-3, there is no set format or length.  The journal entries are required at least twice a week for a total of 48 entries.  The goal is to "REFLECT" upon events that involve the mentored cadet's moral bearings."

2

000013

c. **Journals.** The purpose of the journal is to reinforce the reflective and rehabilitative processes. The journal allows the mentored cadet to document actions and reflect upon the associated thought processes behind those actions. The journal will also provide a good opportunity to discover personal habits that relate to moral decision-making. The journal is not a diary, but directed reflection on topics/issues by the mentor.

(1) **Format.** There is no set format or length for journal entries; however, a page typed is the recommended length. They will be legible and maintained in the portfolio.

(2) **Frequency.** The mentored cadet will make journal entries at least twice a week. They will pre-plan their entry days on the planning calendar, continue journal entries over the holidays, and while away from West Point. If a mentored cadet falls behind, he/she may journal three times per week but no more than three per week is authorized. In addition, a mentored cadet is not authorized to finish the program early by submitting extra journal entries to reach 48 entries.

(3) **Content.** The mentored cadet should write down brief descriptions of events that stimulated or challenged the sense of morality. The mentored cadet should record what confronted him/her, what action(s) taken, *and what the cadet was thinking at the time.* The issues do not need to be tremendously significant. A small argument with a roommate can provide many opportunities for reflection upon one's values and leadership dimensions. As time progresses, the mentored cadet should record efforts to alter his/her behavior to break "bad" habits. This will serve to heighten awareness during normal experiences and increase the likelihood that the cadet will try to modify behavior in the future. The goal is to REFLECT upon events that involve the mentored cadet's moral bearings. This should not just be a description of the mentored cadet's daily events.

(4) **Review.** The mentored cadet should review the journal, and provide a copy for the mentor, before seeing the mentor. During the review, the mentored cadet should examine the thought processes and search for behavioral aspects and beliefs that should change. The cadet and mentor should also look for repeated behaviors, habits that are both positive and negative. This advance preparation will enhance the effectiveness of each counseling session.

7.  After seven weeks in the program, Cadet Spadone had submitted nine journal entries. TAB C. In the third sentence of the first journal entry, Cadet Spadone clearly indicated that he would "talk about what happened leading up to the honor violation and then discuss what happened after the honor violation...if you simply look upon the honor violation itself it would be shortsighted and intellectually incomplete." Over the next six weeks, Cadet Spadone reflected on his experiences chronologically from his time at a Jesuit High School up until Essay 9, which reflected on an experience at a hospital.

8.  There no evidence in the record that Cadet Spadone's mentor provided any insight into Cadet Spadone's "thought processes and search for behavioral aspect and beliefs that should change." USCC Pam 15-1, Chapter 6, para. 605c (4). Nonetheless, Cadet Spadone's essays plainly are reflective and consistent with the broad mandate provided by the regulation. The proposed separation should immediately be halted and Cadet Spadone should be restored to his studies.

3

000014

9.   The undersigned can be reached at conway@mclaw.us or (603) 219-8718.  Mr. Gary Myers may be reached at myers@mclaw.us or (603) 493-6665; however, Mr. Myers is departing for Yongsan, Korea, on Saturday, 11 December 2010.

TABS:

A: 22 October 2010 Memorandum.
B: 19 November 2010 Legal Review.
C: Journal Entries.

Respectfully,

Daniel Conway

4

000015



OFFICE OF THE SUPERINTENDENT
**UNITED STATES MILITARY ACADEMY**
WEST POINT, NEW YORK  10996-5000

30 NOV 2010

MAJA-MJ

MEMORANDUM FOR Headquarters, Department of the Army, G-1 (ATTN: DAPE-MPO-AP), Washington, DC 20301-0300

SUBJECT: Separation of Cadet Alan Spadone, Company B-1, Class of 2012

1. The summarized record of proceedings of the Honor Investigative Hearing and allied documents in the case of the Respondent, Cadet Alan Spadone, Company B-1, Class of 2012, are forwarded pursuant to AR 210-26, paragraphs 6-16 and 7-3.

2. On 3 May 2010, the previous Superintendent, Lieutenant General F.L. Hagenbeck, reviewed the record of proceedings and allied documents in this case and approved the finding of the Honor Investigative Hearing that Cadet Spadone violated the Cadet Honor Code by cheating on or about 27 October 2009 and 19 November 2009. Cadet Spadone's graduation was delayed until May 2012, and he was placed in a suspended separation status until his graduation— contingent upon his future exemplary conduct and adherence to the terms of the suspended separation.

3. One of the conditions of the suspension was that Cadet Spadone must successfully complete the requirements of the USMA Honor Mentorship Program (HMP). On 22 October 2010, Major Jason Daugherty, Special Assistant to the Commandant for Honor Matters, informed the chain of command that Cadet Spadone was failing the HMP. Specifically, Cadet Spadone, after seven weeks in the program, failed to submit any journal entries that meet the intent of reflection as outlined in Chapter 6 of USCC Pam 15-1, paragraph 605c. Additionally, Cadet Spadone's mentor, Lieutenant Colonel John Billie, believes that Cadet Spadone has unresolved issues that will prevent him from successful completion of the HMP.

4. After reviewing the entire file, I have determined that Cadet Spadone has failed to successfully complete the HMP. Thus, I find that Cadet Spadone has violated the terms of his suspended separation, and I request that the suspension of Cadet Spadone's separation be vacated. I recommend that he be separated from the United States Military Academy, transferred to the United States Army Reserve in the grade of E-3 for two years, and ordered to active duty for two years, in accordance with AR 612-205, Table 3, Rule 6. Cadet Spadone entered the Academy from civilian status.

000016

MAJA-MJ
SUBJECT:  Separation of Cadet Alan Spadone, Company B-1, Class of 2012


5.  I have suspended Cadet Spadone from the Military Academy pending the final decision on his case.  In accordance with Title 10, Section 702, United States Code, and AR 612-205, *Appointment and Separation of Service Academy Attendees*, Cadet Spadone's pay and allowances will be stopped upon his departure from West Point.  Cadet Spadone's status is: authorized leave of absence without pay and allowances pending separation.


Encl
Case file

DAVID H. HUNTOON, JR.
Lieutenant General, US Army
Superintendent

2

**000017**

## ACTION
### Cadet Alan Spadone, Company B-1, Class of 2012

The following actions are taken with respect to the findings of the Honor Investigative Hearing regarding the honor case of Cadet Alan Spadone, Company B-1, Class of 2012:

    a. Based upon my review of the entire case file, Cadet Spadone has violated the terms of his suspended separation. A copy of the entire case file, including the summarized record of the honor proceedings and a copy of the HMP requirements, will be forwarded to Headquarters, Department of the Army, with a recommendation that Cadet Spadone be separated from the United States Military Academy, transferred to the United States Army Reserve in the grade of E-3 for two years, and ordered to active duty for two years, in accordance with AR 612-205, Table 3, Rule 6.

    b. Cadet Spadone is immediately suspended from the United States Military Academy until final action on his case is taken by Headquarters, Department of the Army.

    c. In accordance with Title 10, Section 702, United States Code, and AR 612-205, *Appointment and Separation of Service Academy Attendees*, Cadet Spadone's pay and allowances will be stopped upon his departure from West Point. Cadet Spadone's status is: authorized leave of absence without pay and allowances pending separation.


_30 Nov 2010_
DATE

DAVID H. HUNTOON, JR.
Lieutenant General, U.S. Army
Superintendent



DEPARTMENT OF THE ARMY
**UNITED STATES MILITARY ACADEMY**
West Point, New York 10996

REPLY TO
ATTENTION OF

MAJA                                                        19 November 2010

MEMORANDUM THRU

Secretary of the General Staff, United States Military Academy, West Point, New York 10996
Chief of Staff, United States Military Academy, West Point, New York 10996

FOR Superintendent, United States Military Academy, West Point, New York 10996

SUBJECT: Legal Review of the Vacation of Suspension of Separation pertaining to Cadet Alan
Spadone, Company B-1, Class of 2012

1. Purpose. To review the request for vacation of suspended separation in the Honor Case of
Cadet Alan Spadone, Company B-1, Class of 2012. The request to vacate the suspended
separation, terms of the suspended separation, the requirements of the Honor Mentorship
Program, Cadet Spadone's first eight journal entries, and Cadet Spadone's CRB are tabbed for
your convenience.

2. Background.

   a. On 3 May 2010, the previous Superintendent, Lieutenant General F.L. Hagenbeck,
reviewed the record of proceedings and allied documents in this case and approved the finding of
the Honor Investigative Hearing that Cadet Spadone violated the Cadet Honor Code by cheating
on or about 27 October 2009 and 19 November 2009. Cadet Spadone's graduation was delayed
until May 2012, and he was placed in a suspended separation status until his graduation—
contingent upon his future exemplary conduct and adherence to the terms of the suspended
separation.

   b. One of the conditions of the suspension was that Cadet Spadone must successfully
complete the requirements of the USMA Honor Mentorship Program (HMP).
On 22 October 2010, Major Jason Daugherty, Special Assistant to the Commandant for Honor
Matters, informed the chain of command that Cadet Spadone was failing the HMP. Specifically,
Cadet Spadone, after seven weeks in the program, failed to submit any journal entries that met
the intent of reflection as outlined in Chapter 6 of USCC Pam 15-1, paragraph 605c.
Additionally, Cadet Spadone's mentor, Lieutenant Colonel John Billie, believes that Cadet
Spadone has unresolved issues that will prevent him from successful completion of the HMP.

3. Chain of Command Recommendation. The Special Assistant to the Commandant for Honor
Matters and Cadet Spadone's Tactical Officer recommend vacating the suspended separation.
The Regimental Tactical Officer, Brigade Tactical Officer, and the Commandant concur.

# B

**000019**

MAJA

SUBJECT:  Legal Review of the Vacation of Suspension of Separation pertaining to Cadet Alan Spadone, Company B-1, Class of 2012

4.  Staff Judge Advocate's Recommendations.

   a.  I recommend that you request HQDA to separate Cadet Spadone from the United States Military Academy, transfer him to the United States Army Reserve in the grade of E-3 for two years, and order him to active duty for two years, in accordance with AR 612-205, Table 3, Rule 6.

   b.  If you concur with the aforementioned recommendations, recommend signing the attached action documents.

Encls
as

JERRY J. LINN
COL, JA
Staff Judge Advocate

2

## DEVELOPMENTAL COUNSELING FORM
For use of this form, see FM 6-22; the proponent agency is TRADOC

### DATA REQUIRED BY THE PRIVACY ACT OF 1974

**AUTHORITY:** 5 USC 301, Departmental Regulations; 10 USC 3013, Secretary of the Army and E.O. 9397 (SSN)

**PRINCIPAL PURPOSE:** To assist leaders in conducting and recording counseling data pertaining to subordinates.

**ROUTINE USES:** For subordinate leader development IAW FM 6-22. Leaders should use this form as necessary.

**DISCLOSURE:** Disclosure is voluntary.

### PART I - ADMINISTRATIVE DATA

| Name *(Last, First, MI)* | Rank/Grade | Social Security No. | Date of Counseling |
|---|---|---|---|
| Spadone, Alan | Cadet | | 26 28 OCT 10 |

| Organization | Name and Title of Counselor |
|---|---|
| B1, USCC | MAJ Michael Denehy |

### PART II - BACKGROUND INFORMATION

**Purpose of Counseling:** *(Leader states the reason for the counseling, e.g. Performance/Professional or Event-Oriented counseling, and includes the leader's facts and observations prior to the counseling.)*

Discuss your participation in the Honor Mentorship Program (HMP) and the reasons you are beign considered an HMP failure

### PART III - SUMMARY OF COUNSELING
Complete this section during or immediately subsequent to counseling.

**Key Points of Discussion:**

Your activity in the Honor Mentorship Program up to this point leads me to consider you an HMP failure. Both your honor mentor and myself believe that your participation in the program is a failing effort due to your inability to move beyond issues from your past as well as your refusal to live up to expectations of you as a member of the program. Reason 1: You were told to begin the HMP process last semester well before you left USMA for the summer and you did not. Reason 2: You refused to don the US brass insignia which you were ordered to do as part of your HMP. Reason 3: Upon return to USMA this semester, you again failed to begin the program for over a month until directed to do so by me. Reason 4: Upon reading your first several essays, you seem intent on ensuring others receive blame for what you feel are their flaws prior to moving past what you have done. For example, your essays are made up of bearly 5,000 words of which less than 50 addressed your honor case. The remainder simply addressed the actons of others, none of which justifies you having cheated twice. You also compared being denied the ability to go overseas for one semester to being a victim of rape which brings your perspective on the matter into question. These actions leave both your HMP mentor, LTC Billie of your choosing, and myself convinced beyond any doubt that you are unwilling to progress in the HMP.

I have placed you in an inactive status over the last week and half while I have assessed your case. I have engaged your mentor, Behavioral health, and the Honor Staff to determine a way ahead. The professional opinions of all involved is that you have not made satisfactory progress in the HMP and that your inability to do so is voluntary and shows no signs of changing. The four reasons listed above show a clear pattern of you being unwilling to take the neccessary steps to remediate your situation.

As part of being found for honor violations you were separated from the academy which then became a suspended separation. The terms of the suspensions clearly state that failure of your HMP could result in having the separation suspension vacated. Based on the reasons set forth in this counseling statement, I am recommending to the chain of command that you be separated from the United States Military Academy on grounds of failure to successfully complete your HMP - a violation of the terms of your suspended separation.

### OTHER INSTRUCTIONS
This form will be destroyed upon: reassignment   *(other than rehabilitative transfers)* , separation at ETS, or upon retirement. For separation requirements and notification of loss of benefits/consequences see local directives and AR 635-200.

DA FORM 4856, MAR 2006          EDITION OF JUN 99 IS OBSOLETE          APD PE v2.01ES

**Plan of Action**   *(Outlines actions that the subordinate will do after the counseling session to reach the agreed upon goal(s).  The actions must be specific enough to modify or maintain the subordinate's behavior and include a specified time line for implementation and assessment (Part IV below)*

You will continue to be in a flagged status.

You will continue to attend class and perform all military duties as you normally would.

I will begin processing of the neccessary paperwork for your dismissal from the academy.

**Session Closing:**  *(The leader summarizes the key points of the session and checks if the subordinate understands the plan of action.  The subordinate agrees/disagrees and provides remarks if appropriate.)*

Individual counseled:  ☑ I agree      ☐ disagree with the information above.
Individual counseled remarks:

Signature of Individual Counseled: _____     Date: 26 OCT 10

**Leader Responsibilities:**   *(Leader's responsibilities in implementing the plan of action.)*

Signature of Counselor: _____     Date: 26 OCT 10

**PART IV - ASSESSMENT OF THE PLAN OF ACTION**

**Assessment:**  *(Did the plan of action achieve the desired results?  This section is completed by both the leader and the individual counseled and provides useful information for follow-up counseling.)*

Counselor: _____     Individual Counseled: _____     Date of Assessment: _____

**Note:  Both the counselor and the individual counseled should retain a record of the counseling.**

*REVERSE, DA FORM 4856, MAR 2006*                                    APD PE v2.01ES



**DEPARTMENT OF THE ARMY**
**UNITED STATES MILITARY ACADEMY**
Simon Center for the Professional Military Ethic
West Point, New York 10996

REPLY TO
ATTENTION OF

MACC-PME-SAH                                                    22 OCT 2010

MEMORANDUM THRU

Director, Simon Center for the Professional Military Ethic, United States Corps of Cadets, West
Point, New York 10996

MEMORANDUM FOR Bn Tactical Officer, United States Corps of Cadets, United States
Military Academy, West Point, New York 10996

SUBJECT: Recommendation to Process Honor Mentorship Program (HMP) Failure for CDT
Alan Spadone, CO B-1, Class of 2012

1. PURPOSE: To recommend whether CDT Spadone is successfully meeting the requirements
of the Honor Mentorship Program.

2. DISCUSSION: CDT Spadone was found to have violated the Honor Code on 8 March 2010,
was ruled a Full-Year Turnback to the Class of 2012, and was suspended from the Academy
from June to August 2010. Due to his Honor violation, he is on Suspended Separation Status
until graduation. Upon returning to the Academy for the Fall Academic Semester, he was
directed to begin active work on the Honor Mentorship (HMP) requirements. For the seven
weeks CDT Spadone is to have been actively working (2SEP10 to 22OCT10) in HMP, he has
neglected to submit any journals that meet the intent of reflection outlined in HMP, or has he
began work on any other HMP requirement. Furthermore, CDT Spadone's mentor, LTC John
Billie, believes that he has unresolved issues that will prevent him from being able to participate
in the program. Additionally, CDT Spadone's TAC reported that he was cleared by a
professional at behavioral health, who stated that CDT Spadone cannot contribute his actions to
any mental condition.

3. RECOMMENDATION: CDT Spadone appears to have no motivation to complete HMP,
despite support and direction from his mentor and his TAC. My recommendation is for BTD to
process a packet recommending the vacation of CDT Spadone's Suspended Separation Status
due to his failure to complete HMP requirements. Grounds for this type of vacation are outlined
in the Superintendent's Action Sheet for CDT Spadone.

4. POC for this memorandum is the undersigned at 938-7012.

JASON N. DAUGHERTY
MAJ, SC
Special Assistant to the Commandant
  For Honor Matters

## 2+2=4

### Essay 1

I think the purpose of this program is to look at why I had an honor violation and to examine the character flaw which led to that. I didn't really see any guidance behind these journals but it seems like they only deal with the specific incident itself. I'm going back a little further and will talk about what happened leading up to the honor violation and then discuss what happened after the honor violation. I think that if you simply look upon the honor violation itself it would be shortsighted and intellectually incomplete..

I do not know if I can describe for you an exact instance that was a defining life moment for me, where all of the sudden the light shown though and everything became clear. However, I can describe a defining life experience that has shaped me more than any one singular event. This experience was attending DeSmet Jesuit High School. I am not really that much of a religious person, yet I am eternally grateful for the lessons and values that the Jesuits imparted on me. These values have allowed me to see the world through a sharper lens. Three of the main values that I have embraced are the concepts of vocation, reflection, and selfless service.

The word "vocation" comes from the Latin *vocare,* meaning literally "to call." In a broader sense vocation means that individuals should follow their own path and not necessarily follow society's path in determining how they should live out their lives. People should use their own gifts and talents and do whatever they fell give them the most internal satisfaction and not really be tempted by "dollar signs" and what is considered "popular" when making a career decision. It is often the case that people go into fields because they think that that field will make them "successful," when in reality if you go into a field that you enjoy, success will follow. This concept is one of the things that cemented my desire to attend this institution.

Nearly every day at DeSmet we were reminded to examine what we have done, what we are doing and what we are going to do. This concept of reflection allowed me to truly take ownership of my own education. I have often found sense then that the best way to learn is not to be continually learning new information, but instead to reexamine current knowledge and be able to apply it to a broad range of issues. This concept of reflection applies to areas other than education as well. When you truly stop and think about your actions you realize the consequences as a result of those actions have a tremendous effect on your own life and the lives of those around you. By having this base self-awareness you are better able to relate to other people and to simply make better decisions. Many times at West Point I feel as though we are drinking out of a fire hose, only retaining the knowledge for the next paper or WPR. Only though the process of reflection have I feel I have retained the knowledge from merely being "speced and dumped."

The last, and perhaps the most important value, that the Jesuits imparted on me was the concept of selfless service. Every year we had a service requirement that we had to fulfill in order to graduate on time. With each progressing year the service requirement became more involved and more demanding. At first I resented this obligation thinking that it was just a waste of time, when in reality it was just because I was uncomfortable with the situation. With each passing service requirement I got pushed further outside of my comfort zone and each time I grew as a person. I realized how fortunate I was as a person and how it was really my obligation to give back to those who in society are less fortunate than myself. These were the values that I took to west point with me.

### Essay 2

During high school West Point for me was always kind of a far off idea. I really didn't think I'd have what it takes to get in. I worked really hard in high school, played varsity ice hockey, and was always really interested in current events in the news. I began to amass some pretty good grades and the goal of attending West Point came into picture around my sophomore year. Through the application process, I got nominated by all three sources, my congressman and my two senators.

I was elated; it was probably the best feeling in the world. When I graduated high school I came into West Point with a huge surge of momentum. During my first two years at West Point I excelled in all three pillars; I achieved a 3.9 GPA and took advantage of the numerous academic and training extracurricular activities. The thing I liked the most about West Point was that if you are reasonably intelligent and you worked hard anything was possible. I whole heartedly believed in that and along with the relationships you make and forge here I was having the time of my life.

Ever since I came to West Point I always wanted to have a unique semester abroad experience. That sounds a little weird but I honestly wanted to do something to bring the West Point image abroad, and present West Point in a positive light in a place that hadn't necessarily been exposed to it

During the summer of 2009, my assignments included preparation for a NATO conference on Afghanistan at NATO headquarters, and representing West Point at the American Institute on Political and Economic Systems in Prague, Czech Republic. These experiences enabled me to meet and interact with students and young professionals from various countries. Interestingly, several of these students confessed they had certain pre-conceived stereotypes of U.S. Military personnel. After establishing both a working and social relationship with me, they admitted their assumptions were totally incorrect. This was a very pleasant (although totally unexpected) aspect of my summer experience.

One of my best West Point memories is from the summer of 2009, when I took a political economy course in Prague. Mobin, a student from Iran via the Netherlands, came to the course with a mission to explain to everybody that Iran was not the angry world actor that had been portrayed. Mobin gave a tangible face to the crowds of frustrated protestors who were flooding the streets to protest the recent election. Mobin was ecstatic with my rudimentary Farsi language knowledge and my keen interest in what he said, especially because I am a future Army officer whose nation had been vilified in the Iranian press. His message: Iran's government does not represent its people.

### Essay 3

Going back a little bit, probably starting at the end of my plebe year and going into my Yuk year I started to research potential semester abroad possibilities. I was coordinating this all through the International Intellectual Development Division with Mr. Brent Matthews. Over the course of a year and a half before my Cow commissioning, I was working trying to get all the i's dotted and the t's crossed to go on this semester abroad. During the fall semester of my Yuk year I applied to Pembroke College at the University of Cambridge for a semester abroad.

There were only ten slots available to Pembroke College which I was applying to and I thought I would not get in. During the spring semester I was again working hard and thought I had got all the i's dotted and t's crossed back. I was talking to all the various departments,

everybody was signing off the program, and it seemed like it was 95 percent approved. The final step was getting the program approval slip signed by Mr. Matthews.

Over the summer I actually got the official call from Cambridge University saying that I had been admitted into their semester abroad program and I was extremely happy and I thought this would benefit the Academy and myself.

I felt extremely honored to be one of only ten students selected for the Spring, 2010 semester abroad study program offered through the University of Cambridge. I was very grateful that USMA faculty supported my application with their letters of recommendation and verbal and written encouragement. If permitted to take advantage of this semester abroad, I would have strived to excel in my coursework and represent the best possible character and academic qualities I gained up to that point through my training and study here at the USMA. Upon my return, I would then bring back with me the insights gained at Cambridge, and relay them to the fellow USMA community.

The opportunity to study for a semester at Cambridge University would have certainly enhanced my education, by providing the chance to gain further insight into global and academic issues through interaction with a broad base of international faculty and fellow students. More importantly, however, I feel there were many potential long lasting benefits to the USMA, and the US Military in general.

I realized that this study opportunity comes with associated costs, and that allocation of funds was a challenge. However, by that time become increasingly apparent to me that our military can only effectively operate in the global environment if we understand the economic, cultural, and political environments of the international community. The undergraduate student body at Cambridge includes some 3000 students from outside the United Kingdom. One might assume that this group of students represents the future political and economic leaders of their various home nations. As a future US Army Officer, I felt the opportunity to study and interact with these students would enable me to forge relationships that would carry on long past the semester of study. These relationships would likely have reaped rewards in the future as our governments and military forces interact.

I hoped to gain a global perspective by taking coursework in my academic major areas of Economics and Comparative Politics at Cambridge. I believed the ability to engage with fellow students and professors from diverse backgrounds and cultures would enhance my understanding of global issues, and enable me to be better able to relate these issues to those facing our own country and military. I believed there was no better way to gain this knowledge than by living and studying in an environment outside of the United States, where fellow students and faculty are likely to bring very diverse perspectives into the academic environment. I would have greatly appreciated the opportunity to study at University of Cambridge, and hoped that this study would reap rewards well into the future.

## Essay 4

Even with the acceptance letter and the backing of ORD and IIDD I was still unsure of whether West Point would allow me to go on this semester abroad emersion. While I was actually in Europe I was calling back to West Point probably everyday to try to get the final "yes" from the Dean. When I finally got back to the states, I had around two weeks of leave. I actually flew on my own dime, to come back to WestPoint to try to get the final go-ahead.

I talked to Colonel Jeb who the head of the Department of Social Sciences, and started working on a staff summary sheet. Everything was looking like it would go through. Throughout this process I was talking with Brent Matthews who works in International Intellectual Development Division. He had already signed the program approval form so I thought everything was pretty much good to go. Returning home after these three days that I at West Point I came to the conclusion that I would need 100 percent yes, or 100 percent no before going into my COW commitment. Once the first day of academic classes comes along you're locked in there for the next ten years of your life so I needed to have that 100 percent yes, 100 percent no. At that point it must be based that I think I deserved that much.

I was reassured by my parents that everything would work out. My thought process during this time was that if the program was denied I would take a year off, volunteer the first semester and then spend the second semester at the University of Cambridge. Following this I would have re-applied to West Point and come back as a Cow. I'm pretty sure West Point would have loved to have me come back and I would have loved to have done that.

As I was talking over this with my parents we went back and forth on my future options at the Academy. It should be noted at this point that my parents had never pushed me toward something or held me back from any goal that I had. This time I felt that things were a bit different. Their resistance to me taking a year off was palpable. They rehashed phrases as if they were reading from an admissions brochure. "Alan, West Point is a 47 month experience and it does not make sense to do this." This was followed with comments implying that this program was not a viable option and West Point might put a letter of reprimand in my folder if I left for a year. Although these comments seem reactionary the truth of the matter was that the program seemed to be already approved, so worrying about it seemed counterproductive.

## Essay 5

When I returned to West Point following week for ReOrgy week I basically spent the entire week visiting the different departments and the Dean's office trying to obtain the official 100 percent "yes." For all intents and purposes it seemed like the program was approved. I rearranged my entire schedule to accommodate the classes that I was going to take abroad. Additionally, everyone within the Dean's chain of command knew of this issue, including the Chief of Staff, ORD and IIDD. I had not spoken directly to the Dean but it seems a little farfetched that he had no idea what was going on.

Coming up to the day of the Cow commission I still had a feeling in my stomach that something was not being communicated to me. It was a sixth sense that I had. When I talked to my parents about that I experienced a lot of push back from them as I described earlier. So anyway, the Cow commitment comes along and I go to my first day of academic classes. Nothing could have prepared me for what happened next.

Around the end of the second week of classes I was notified that the Dean would like to meet with me on September 2nd. I was pretty excited because I would finally have the opportunity to meet with him. I went into his office and it was pretty short and I sensed a gruff tone in his voice. The first thing that he said was, "I'm going to deny your application." When I pressed him for a reason, I was merely told that this program did not meet the program goals of the semester abroad program. The only way to reconsider this was if outside funding was made available. I left the office and quite frankly I was pretty pissed off. Even though he knew about

the program why did the Dean wait until I committed to give me a decision? Was I not owed that respect merely by the fact that I am a person?

To this day I believe that there was something underhanded and frankly malicious in the way the decision came down. I believe Gen. Finnegan was not capable of making the hard decision and only made it after I was stuck here. I believe I was strung out and lied to and that is something that I have not gotten over to this day.

## Essay 6

Yet all was not lost. I still thought, hey, you know what, there's an opportunity to raise external funds and go back to the Dean. I do not think the Dean actually thought I could raise the funds but I have done some pretty incredible things in my life so I went for it. For the next four weeks the only thing I did was work through AOG and various parents' clubs to raise the money. At the end of the four weeks I had independently raised $25,000.00 for the program through independent donors.

I contacted the dean's office again, informing them that funding was available for this program. At this time I was notified through email that it's not a funding issue, it's that it just doesn't correspond to the program goals of the semester abroad program. Again, I was pretty angry.

Prior to this point I was told that an officer's word is his bond. Frankly, I felt like I was just lied to twice by the Dean. Over time this has lead to a deficit of trust between myself and West Point. Without trust there is no accountability and without accountability there is no leadership. Now I know that an Officer's bond is something that is in writing and is signed, initialed and dated.

At this point this particular feeling has not been rectified. When I talk to people today about this incident with Cambridge, they say, "Well why don't you just let go of what happened?" Truthfully I cannot do that at this point. Nearly every day here we are reminded of Duty, Honor, Country and the importance of being a leader of character. I was just lied to by a One Star General. This apparent blatant hypocrisy has tainted my view of West Point so badly that any mention of Duty, Honor, Country makes me nauseous. Honestly, I can say that's the real issue right there. I do not trust West Point right now and I honestly don't know if I want to be a part of an organization like that.

## Essay 7

Moving on, after the Dean denied me for the second time, I went to the Department Head of DFL Colonel McPeak to see if he would support the program. I figured if it went under his wing, they're the people who control the semester abroad program; the program could be supported in that direction. When I met with him the first time after the Dean denied me he originally seemed incredibly supportive of what I had to say and it seemed like he would write a letter of support for this and we could move on. Over the course of the next month he became increasingly hard to get a hold of. Finally after about four weeks I scheduled a meeting with his secretary in early October. When that day finally came to meet with him in his office I was pretty exhausted. As I was sitting in the waiting room I was told that Col McPeak had just sent me an email and that he could not speak with me today.

So I go out of his office and opened the email. It said, "Cadet Spadone, I appreciate your persistence and hard work but I cannot support this program." At that point, I really felt lost without a paddle. Why were so many of these officers who had been so supportive before now cowering in their offices like a bunch of plebes when it is time for laundry duties? My whole image of West Point was destroyed and frankly anytime I heard the words duty, honor, country or anything referring to the honor code I wanted to vomit. I just had a One Star General lie to me about being able to go on this program and now it seemed like I was stuck at West Point, in the Army for the next ten years of my life, and I was just being told to move on.

It is within this context that I committed and honor violation. On around October 27 I turned in an English paper that was not my own. I admit that was the wrong thing to do. At that time and still to this day I feel as though the contract between West Point and myself was broken. It was broken when I committed the next ten years of my life based upon a lie.

After that I was brought up on honor and I was prepared to face the consequences. Unfortunately the honor case dragged on for 275 days. At this point it should be noted that this is well outside the regulations of 15-1 and is in direct conflict with due process guaranteed by the US Constitution. I'm a person where a lot of my levels of happiness are driven by performance metrics. In short what makes me happy is performing well. With all that happened over the past year and a half, things started to go downhill pretty fast.

### Essay 8

Starting around second semester of my Cow year I started to experience some pretty severe suicidal thoughts and looking back at them it is still frightening. I remember one night in February, and I was on the top of the roof of the library. I do not even know how I got up there; all I know is that I was there. On top of the roof there is a terrace overlooking the plain. It's actually quit a beautiful view. I put my hands on the banister overlooking the edge and I don't even know what I was thinking but I remember feeling a primal fear of what I would do next. There is nothing quite like that fear and to this day it still haunts me.

I struggled through second semester and even with everything going on I actually got slotted to be the XO of all CLDT. I thought that it would have been a really good opportunity to put my boots back on and get back on track. I remember feeling a sense of accomplishment writing all of the OPORDs and I really thought that I was making a difference. Unfortunately, a week prior taking command of this responsibility, I was told that my whole summer was canceled out and that I would just sit at home all summer. I didn't really know what the guidance was on the summer, I just left just after Graduation.

The suicidal thoughts that kind of gripped hold of me second semester only grew stronger over the summer. I haven't been home in three years and frankly I didn't really know to relate to being back home. A day did not go by that I did not think of killing myself and they just grew worse and worse over the summer. I remember lying in bed for hours as these thoughts would lash on to me. On the Internet I could see that my friends in my class were all achieving and doing great things and I was just sitting there degrading.

When the academic year came around I returned to West Point, I talked with a good friend of mine who I had avoided all summer, Nate Webster. He is the company commander of A1 and I told him what was going on. He was pretty shocked about what I told him and that night he talked to my chain of command. Webster's actions that night not only set him apart

from his peers but also the majority of the officers on this post.  That next morning I went to CPD and they recommended that, if I agreed, I go to the psychiatric hospital, Four Winds.

### Essay 9

That same day I voluntarily went to the psychiatric hospital.  I didn't' think I'd ever really end up there but actually but you cannot predict these types of things.  When I went there, my TAC dropped me off, and I was in processed by the head psychiatrist there, Dr. Wang.  He stated that the average length of stay for a typical cadet (it's kind of strange that they have a "typical" cadet stay there) was 10 to 14 days.  At this point I was a little alarmed but I agreed to go through with it because at that time I really thought it would do some good.  Also there was a shortage of beds at West Point at the time so at least here I would have a place to sleep.

So, I signed the forms and admitted myself to the psychiatric hospital.  The first day, I was just lying in bed looking at my surroundings,  not believing that I was in a psychiatric hospital.  It was kind of weird because I started to notice noticing things about the room in which I was staying.  All the light fixtures were fixed to the ceiling, screwed down.  The door knobs were not door knobs; they more like levers turned upside down so that you couldn't hang yourself on anything.  I couldn't even have access to any of my toiletry items and all my clothes were inspected and delivered to me in a bag that was permeable to air.  This was universal for all the patients so it wasn't really that big of deal.

The first day I was just laying there being lethargic and wishing I was back at West Point.  My roommate came in the room and he said something to me that still resonates with me.  He said, "Hey man, you have to get out of the room, you have to start socializing with people.  I know you really don't fit in here but if you start talking to people it will help.  And also, they're taking notes about you every day and if you want to get out of here you're going to have show signs of improvement."

So at that moment, I had a flashback to the movie Shutter Island.  I was like gosh, I've got to get out of here.  So I actually did start interacting with people there and it's kind of strange because at first I didn't really fit in there.  Maybe there's some truth to that but you realize that at a base level everybody has the same wants and needs.  Even though I was in a psychiatric hospital, I would say only probably around 20 percent of the people there were actually mentally unstable.  Looking back I can honestly say I actually made some friends there.  It taught me some important life lessons.  While I was there I met this girl who was a beautiful girl, not physically beautiful, but she had great personal qualities about her.  She actually tired to kill herself twice while she was there.  This is a little bit surprising because if you have two attempts on your own life while you're there, that actually  takes some creative thought due to the limited resources.  My whole thought process was "You know what, ▮▮▮▮ you're a beautiful person and regardless of your life situation right now, there are things about you that are intrinsic to you just because you are human that makes your life precious."  That really struck home with me.

So after that I came back to West Point, and frankly right now if someone were to ask me "Do you want to be at WestPoint right now?"  I would probably respond no.  I had an honor violation, yes, but at this point I still cannot get over the fact that I signed ten years of my life away based on a lie.  Probably one of the most distressing aspects about West Point is that the Academy will never admit a mistake.  It is like dealing with the Papacy.  This is the one thing preventing me from moving on.  This trust deficit is a two way street and I will do all the work alone.  I'm an incredibly talented individual and I know I'd make a great officer, but at this point,

I don't even know if I want to do that.  I will walk around with my scarlet US brass and be your Hester Prynne but the ball is in your court USCC.

<u>**2+2=4**</u>

## ACTION

### Cadet Alan Spadone, Company B-1, Class of 2011

The following actions are taken with respect to the findings of the Honor Investigative Hearing in the case of Cadet Alan Spadone, Company B-1, Class of 2011:

a. The findings of the Honor Investigative Hearing that Cadet Spadone violated the Cadet Honor Code by cheating, on or about 27 October 2009 and 19 November 2009, are approved.

b. In accordance with the authority granted to me by the Secretary of the Army, I have determined that Cadet Spadone should be separated from the United States Military Academy. This decision, however, is suspended until Cadet Spadone's graduation in 2012, contingent upon his future exemplary conduct. Cadet Spadone will be turned back to the Class of 2012, but he will be allowed to finish the academic term 10-2. Additionally, Cadet Spadone will be assigned a mentor from the USMA staff or faculty and will complete several requirements under the USMA Honor Mentorship Program as deemed necessary and appropriate by his mentor and tactical officer. He will also be scrambled outside the 1st Regiment, and will not represent the Academy until he has completed the Honor Mentorship Program. The terms of the suspension will be considered to have been violated if Cadet Spadone:

(1) Is found at an Honor Investigative Hearing to have violated the Cadet Honor Code as a result of an act which occurred during the suspension period; or

(2) Fails to complete any requirement under the USMA Honor Mentorship Program; or

(3) Is found by an Investigating Officer appointed under the provisions of AR 210-26, paragraph 6-15, to have violated the provisions of AR 210-26, Chapter 6, as a result of an act which occurred during the suspension period; or

(4) Receives an individual award of 35 demerits as the result of an Article 10 for an act which occurred during the suspension period; or

(5) Exceeds his six-month demerit allowance for any six-month period ending during the suspension period; or

(6) Receives a failing grade in Military Development for any term beginning after the date of this action.

c. The suspended separation begins on the date that I sign this document and ends on the date indicated in paragraph b above. It is not necessary to take action under the provisions of AR 210-26, paragraph 7-3, in order to constitute a violation of either paragraph b(1) or b(3) above. If a violation of the terms of this suspended separation occurs during the suspension period, then the suspended separation will be vacated.

_3 May 2010_
DATE

F. L. HAGENBECK
Lieutenant General, U.S. Army
Superintendent



**DEPARTMENT OF THE ARMY**
**UNITED STATES MILITARY ACADEMY**
**646 SWIFT ROAD**
**WEST POINT, NY 10996-1905**

REPLY TO
ATTENTION OF

MAJA-MJ

2 7 APR 2010

MEMORANDUM THRU

Secretary of the General Staff, USMA, West Point, NY 10996
Chief of Staff, USMA, West Point, NY 10996

FOR Superintendent, USMA, West Point, NY 10996

SUBJECT: Honor Investigative Hearing (HIH) of Cadet Alan Spadone, Company B-1, Class of 2011 - Respondent's Submission

1. **DISCUSSION.** The enclosed documents have been provided to the Respondent for comment: the Commandant's recommendation (TAB B), the CoC and SAH recommendations (TAB C), the initial legal review (TAB L), and the record of the proceedings in the HIH pertaining to Cadet Alan Spadone, Company B-1, Class of 2011 (TAB R).

2. **RESPONDENT'S SUBMISSION.** The Respondent did not submit additional matters for your review. Other than his interview with you, if any, the case is ready for your action.

3. **COMMANDANT'S RECOMMENDATIONS.** The Commandant recommends that Cadet Spadone be placed on suspended separation, be turned back to the Class of 2012, and enroll in the Honor Mentorship Program. Additionally, the Commandant recommends that Cadet Spadone currently needs the supervision of Major Denehy, but that he be scrambled to another regiment after completion of the Honor Mentorship Program. He also recommends that Cadet Spadone be allowed to finish the academy term 10-2. (TAB B).

4. **STAFF JUDGE ADVOCATE'S RECOMMENDATION.**

   a. I concur with the Commandant's recommendations.

   b. If you concur after reviewing the entire file, the appropriate action documents are provided at TAB A. If you select an alternate disposition, action documents will be prepared after you initial the appropriate action.

Encls
as

STEVEN T. STRONG
COL, JA
Staff Judge Advocate



**HEADQUARTERS UNITED STATES MILITARY ACADEMY**
OFFICE OF THE COMMANDANT OF CADETS
WEST POINT, NEW YORK 10996

MACC                                                                                     20 April 2010

MEMORANDUM FOR Superintendent, United States Military Academy

SUBJECT: Recommendation on the Disposition of Cadet Alan Spaddone, 2011

1. The purpose of this memorandum is to provide information on my reasoning behind recommending 12-Month Turnback and Honor Mentorship Program for Cadet Alan Spaddone following his finding of guilty in an Honor Investigative Hearing and admitting to another incident of cheating.

2. Cadet Brown was found guilty of cheating through plagiarism on two essays written for EN 201 last fall. On the first, he turned in a 100% copied essay from the internet, while on the second he failed to correctly document any of the citations in his paper. While Spaddone admitted to the first incident in a CAB, he maintained that he had no intention of cheating in the second essay and was merely guilty of incorrect documentation. The Honor Investigative Hearing found him guilty of cheating in the second essay.

3. With the cadet chain of command, honor staff, and Tactical Officer, I went through the incidents thoroughly with Cadet Spaddone and feel that he still does not fully understand the difference between incorrect documentation and cheating. While he has accepted responsibility for the first incident of cheating, he continues to worry me as to whether or not he is resolved to make major changes in his behavior. Case in point- he was still wearing his rank instead of "US" up to the hour before coming to my office.

4. Cadet Spaddone is doing extremely well at West Point in all pillars and his Tactical Officer speaks highly of his potential. While I am not convinced that Cadet Spaddone will fully internalize his faults and make the changes we demand, I am recommending that we take the chance on him and make him a 12-month turnback to the Class of 2012 and put him into the Honor Mentorship Program. Because MAJ Dennehy (his Tactical Officer) knows him so well, I recommend that he be scrambled only after completing the HMP so that he can be personally supervised through that program and that Ms. Vetter <u>not</u> be allowed to be his mentor. I further recommend that Spaddone be allowed to finish the term and then go on administrative leave with return at the beginning of Reorgy Week.

WILLIAM E. RAPP
Brigadier General, USA
Commandant of Cadets

MACC

MEMORANDUM FOR Superintendent

SUBJECT: Commandant Recommendation in the Honor Case of Cadet Alan Spadone, Company B-1, Class of 2011

I have considered the transcript, finding and recommendations of the above titled Honor Investigative Hearing. My recommendation is below.

_____ I do not recommend Separation and recommend:

_____ Suspended Separation until graduation

_____ on time with current class

_____ as a December Graduate with current class

_____ with Class of 2012 (Turnback)

_____ To be immediately suspended from the Academy and to return in _____

_____ Enrollment in one of following Mentorship Programs:

_____ SLDP       _____ Respect      _____ Honor

_____ Other: NO REPRESENTATION UNTIL HMP COMPLETE _____

_____ withdrawal/reduction in rank: _____

_____ restriction to limits: _____

_____ deprivation of privileges: _____

_____ demerits: _____

_____ punishment/fatigue tours: _____

_____ I recommend Separation and will forward the case to the Superintendent for action.

If a First-Class or Second-Class cadet, one of the following apply:

_____ To be enlisted in the US Army

_____ With enrollment in Academy (Army) Mentorship Program.

_____ To be financially charged recoupment for time spent at USMA

_____ Other SCRAMBLE TO ANOTHER REGT AFTER HMP COMPLETION (NEEDS SUPERVISION OF BE ALLOWED TO FINISH ACAD TERM 10-2                                        MAJ DOHERTY )

19 APR 10
DATE

WILLIAM E. RAPP
BG, USA
Commandant of Cadets

MACC

MEMORANDUM FOR Cadet Alan Spadone, Company B-1, Class of 2011, USCC, West Point, New York 10996

SUBJECT: Recommendations and Legal Review of Honor Investigative Hearing Pertaining to Cadet Alan Spadone, Company B-1, Class of 2011.

1. The attached Commandant's recommendation, COC, SAH, honor staff and legal review regarding your honor investigation are provided to you for comment.

2. Should you desire to provide comment on the review, please do so by 1600 hours, 22 April 2010 (3 duty days).

3. Failure to provide comments by the above-stated time will be deemed a waiver of your right to submit comment. You may request an extension to submit your request to the Chief, Military Justice, Office of the Staff Judge Advocate; any such request should be in writing.

4. The Superintendent may consider matters from your personnel, disciplinary, and academic records without referral to you for comment; you may review these files upon request to the appropriate custodian at USCC and the office of the Dean.

Encl

MARK J. RICHARDS
MAJ, AV
XO, Office of the Commandant

I hereby acknowledge receipt of subject Commandant's recommendation, COC, SAH, honor staff, and legal review at 1700 hours, 19 April 2010.

_____(initial) I, Cadet _____, waive my
72-hour period to provide comment on these
recommendations to the Superintendent.
I request an expedited meeting with the
Superintendant.

Alan Spadone
Respondent
Company B-1, Class of 2011



DEPARTMENT OF THE ARMY
**UNITED STATES MILITARY ACADEMY**
Simon Center for the Professional Military Ethic
West Point, New York 10996



MACC-PME-H

MEMORANDUM THRU

Commandant, United States Corps of Cadets, West Point, New York 10996

FOR Superintendent, United States Military Academy, West Point, New York 10996

SUBJECT: Summary and Recommendation Regarding the Honor Investigative Hearing (HIH) and Cadet Advisory Board (CAB) for Cadet Alan Spadone, Company B-1, Class of 2011

1. **Purpose.** The purpose of this memorandum is to list the allegation against Cadet Spadone, provide a recommendation for the disposition of Cadet Spadone, and numerically summarize the Superintendent's Hearing Member Worksheets. The HIH and CAB convened on 8 March 2010, and Cadet Spadone was found in violation of the Cadet Honor Code for cheating by plagiarizing Essay #4 in EN302 and admitted to violating the Cadet Honor Code for cheating by plagiarizing Essay #3 in EN302.

2. **Allegations.**

   a.   The Honor Investigative Hearing members considered the following allegations:

   *FOUND-* Cadet Alan Spadone, Company B-1, Class of 2011, did, at or near West Point, New York, on or about 19 November 2009, violate the Cadet Honor Code by cheating, by plagiarizing all or part of his Advanced Composition (EN302) Essay #4, and submitting it as his own without proper documentation, and doing so with the intent to gain an unfair advantage or to deceive or mislead another person.

   *NOT FOUND-* ~~Cadet Alan Spadone, Company B-1, Class of 2011, did, at or near West Point, New York, on or about 4 December 2009, violate the Cadet Honor Code by lying, by stating to Doctor Terri Sabatos, Associate Professor, Department of English, that he did not accurately write down the authors or page numbers in his notebook, or words to that effect, knowing said statement was false at the time he presented it, or not then believing it to be true, and doing so with the intent to deceive or mislead another person.~~

   b.   The Cadet Advisory Board members considered the following allegations:

   Cadet Alan Spadone, Company B-1, Class of 2011, did, at or near West Point, New York, on or about 27 October 2009, violate the Cadet Honor Code by cheating, by plagiarizing all or part of his Advanced Composition (EN302) Essay #3, and submitting it as his own without proper documentation, and doing so with the intent to gain an unfair advantage or to deceive or mislead another person.

MACC-PME-H
SUBJECT: Summary and Recommendation Regarding the Honor Investigative Hearing (HIH) and Cadet Advisory Board (CAB) for Cadet Alan Spadone, Company B-1, Class of 2011

      Cadet Alan Spadone, Company B-1, Class of 2011, did, at or near West Point, New York, on or about 19 November 2009, violate the Cadet Honor Code by cheating, by plagiarizing all or part of his Advanced Composition (EN302) Essay #4, and submitting it as his own without proper documentation, and doing so with the intent to gain an unfair advantage or to deceive or mislead another person. ***NOTE: "Found" allegation from paragraph 2a above.***

### 3. **Facts of the Case.**

    a.  23 October 2009, Cadet Spadone goes to EN302 for a peer editing session. Cadet Spadone's paper was peer reviewed by Cadet Erik Tonfeldt and was identical to the paper that he would submit in his final submission.

    b.  27 October 2009, Cadet Spadone turns in his final submission to his EN302 instructor.

    c.  During the grading process Dr. Sabotos noticed a sophisticated writing style and vocabulary not typically used by undergraduates. This tipped her off that the essay may not be Cadet Spadone's work. Typing in a line from Cadet Spadone's essay into a web search engine revealed that his essay was identical to the review of the film Lost in Translation by Homay King that appeared in the journal Film Ouarterly.

    d.  This first matter was then brought to the attention of the Cadet Honor Committee.

    e.  On or about 19 November 2009, Cadet Spadone submitted an EN302 essay entitled "The Construction (sic) of an Image."

    f.  Cadet Spadone used information from Edwin Palmer Hoyt and Anne Tucker and provided citations including page numbers.

    g.  On or about 30 November 2009, Dr. Terri Sabatos reviewed Cadet Spadone's paper and noticed inconsistent sentences within the overall scheme of the paragraph the aforementioned sentence was placed.

    h.  Noticing that said sentences had accompanying citations, Dr. Sabatos reviewed the page numbers associated with those citations to gain a better understanding of what Cadet Spadone may have been trying to convey in his essay.

    i.  At this time, Dr. Sabatos noticed that the information provided in Cadet Spadone's citations were not found on the page number listed or within a reasonable range of said page number.

    j.  On 30 November 2009, Dr. Sabatos arranged for a meeting with Cadet Spadone to discuss his paper and to serve as an approach for clarification.

2

000038

MACC-PME-H
SUBJECT: Summary and Recommendation Regarding the Honor Investigative Hearing (HIH) and Cadet Advisory Board (CAB) for Cadet Alan Spadone, Company B-1, Class of 2011

k.  The approach for clarification occurred on 4 December 2009 with Cadet Spadone, Dr. Sabatos, Major Anthony George, the English Department Honor Officer, and Cadet Daniel Gray, the Cadet Departmental Honor Liaison in attendance.

l.  During the approach for clarification, Cadet Spadone stated that he may have inadvertently transferred his page citation notes from his notebook onto his paper.

m.  When asked by Dr. Sabatos if Cadet Spadone had the notebook in his possession at the time, he replied negatively.

n.  When asked by Cadet Gray if his page numbers were correct, but his authors were inaccurate, Cadet Spadone replied he would have to check his notebook.

o.  Cadet Spadone was released and on the recommendation of Major George and Cadet Gray, this second matter was forwarded to the Cadet Honor Committee for investigation.

4.  **Recommendation for Disposition.** I recommend the Superintendent separate Cadet Spadone, suspend the separation, *make him a Full Year Turnback to the Class of 2012*, suspend him from the Academy until August 2010, enroll him in the Honor Mentorship Program, and *allow him to serve as a member of the chain of command during 2nd semester of his repeated Cow Year (see paragraphs 4d and 5f)*.

a.  Cadet Spadone had lived under the Cadet Honor Code for over two years when he committed his multiple honor violations of cheating by intentionally plagiarizing two separate essays in the same class.  After reviewing the Board member recommendations, I agree with the seven Board members who believe that Cadet Spadone be granted discretion by the Superintendent, however I strongly disagree with the level of discretion most Board members recommended.  I somewhat agree with the vast majority of Board members *(8 out of 9)* that Cadet Spadone was under a certain level of duress at the time of his violation due to the Academy denying him approval to attend Cambridge University abroad for one semester. However, I cannot translate this duress to his second cheating offense which occurred nearly a month after his first cheating offense.

b.  All things considered, I do feel that Cadet Spadone has a great deal of potential and is resolved to live honorably.  The testimony from his SFC Robert Bright and Ms. Laura Vetter clearly describe an individual that was acting outside of his true character and should be given a second chance, however he will definitely need at least an additional year under the Code to prove that he is ready to be an Officer.  I agree with the vast majority of Board members *(7 out of 9)* that his honor violation was *not a true reflection of his character* and that Cadet Spadone *is resolved to live honorably in the future*.  I also agree with the *8 out of 9* Board members who feel that Cadet Spadone *demonstrates potential to serve as an Officer in the U.S. Army*.

3

MACC-PME-H
SUBJECT: Summary and Recommendation Regarding the Honor Investigative Hearing (HIH) and Cadet Advisory Board (CAB) for Cadet Alan Spadone, Company B-1, Class of 2011

c. Based on my observation and counseling with Cadet Spadone, I strongly recommend that Cadet Spadone be made a *Full Year Turnback and suspend him from the Academy until Reorgy Week in August 2010.* I do not believe allowing him to be a December Graduate will send the appropriate message to the Corps of Cadets. An extra year at the Academy will allow Cadet Spadone time to mature and develop into a true leader of character.

d. Despite 6 out of 9 Board members recommending that Cadet Spadone be allowed travel and compete with a Corps Squad Team or Club, I disagree with their recommendation and feel he should only practice with a team and attend Club meetings until successful completion of HMP. I do believe, however, that he should be allowed to serve in a leadership position during the 2nd semester of his repeated Cow Year.

5. **Cadet Board Member Recommendations.**

a. Do you believe this ethical failure is a true reflection of this Cadet's character?

Yes- 2    *No- 7*

b. Do you believe the respondent has resolved to live honorably in the future?

*Yes- 7*    No- 1
Unknown- 1

c. Was duress present?

*Yes- 8*    No- 1

d. Does this Cadet have potential to serve as an officer in the Army?

*Yes- 8*    No- 0
Unknown- 1

e. The maximum sanction is separation. Should the Superintendent grant discretion?

*Yes- 7*    No- 2

Graduate with Class     1
December Graduate     5
Full Year Turnback     1
Separate/AMP     2

f. If retained, should this cadet be granted an exception to policy to represent the Academy prior to successful completion of the Honor Mentorship Program?     *Yes- 8*    No- 1

*Compete and Travel with Corps Squad or Club Team- 6*
Allowed to participate in Public Relations Activities- 0
Represent USMA at Official Functions, AIADs, or Trip Sections- 4
*Allowed to serve as member of Chain of Command- 7*

4

000040

MACC-PME-H
SUBJECT: Summary and Recommendation Regarding the Honor Investigative Hearing (HIH) and Cadet Advisory Board (CAB) for Cadet Alan Spadone, Company B-1, Class of 2011

6. **Conclusion.** I recommend the Superintendent separate Cadet Spadone, suspend the separation, *make him a Full Year Turnback to the Class of 2012*, suspend him from the Academy until August 2010, enroll him in the Honor Mentorship Program, and *allow him to serve as a member of the chain of command during 2nd semester of his repeated Cow Year.*


MICHAEL B. BAKA
MAJ, IN
Special Assistant to the Commandant
for Honor Matters

000041



**DEPARTMENT OF THE ARMY**
UNITED STATES MILITARY ACADEMY
646 SWIFT ROAD
WEST POINT, NY 10996-1905

MAJA-MJ                                                                                    7 April 2010

MEMORANDUM THRU Special Assistant for Honor, USCC, West Point, NY 10996

FOR Commandant of Cadets, USCC, West Point, NY 10996

SUBJECT: Initial Legal Review of the Preliminary Session/Providence Inquiry, Recommendations of the Cadet Advisory Board (CAB) and the Honor Investigative Hearing (HIH) pertaining to Cadet Alan Spadone, Company B-1, Class of 2011

1. **PURPOSE.** To review the proceedings of the honor case of Cadet Alan Spadone (Respondent), Company B-1, Class of 2011. The record of the preliminary hearing is at TAB R. The CAB recommendations memorandum is at TAB P.

2. **DISCUSSION.**

   a. The preliminary hearing was convened under the provisions of AR 210-26 and USCC Pamphlets 15-1 and 632-1, dated 1 February 2007, and USCC Pamphlet 15-1, dated 11 November 2009, to investigate and submit a finding as to whether the Respondent violated the Cadet Honor Code by cheating on 27 October 2009 and 19 November 2009, and lying on or about 4 December 2009, and to provide input from the board members on the issue of his retention in the Corps of Cadets.

   b. The Hearing Advisor conducted a thorough providence inquiry and accepted the Respondent's admission to the violation of the Honor Code as follows:

   Cadet Alan Spadone, Company B-1, Class of 2011, did, at or near West Point, New York, on or about 27 October 2009, violate the Cadet Honor Code by cheating, by plagiarizing all or part of his Advanced Composition (EN302) Essay #3, and submitting it as his own without proper documentation, and doing so with the intent to gain an unfair advantage or to deceive or mislead another person.

   c. The preliminary hearing/providence inquiry was held on 5 March 2010 and the HIH and CAB were held on 8 March 2010.

   d. The HIH found that the Respondent violated the Cadet Honor Code as follows:

   Cadet Alan Spadone, Company B-1, Class of 2011, did, at or near West Point, New York, on or about 19 November 2009, violate the Cadet Honor Code by cheating, by plagiarizing all or part of his Advanced Composition (EN302) Essay #4, and submitting it as his own without proper documentation, and doing so with the intent to gain an unfair advantage or to deceive or mislead another person.

000042

MAJA-MJ
SUBJECT: Legal Review of the Honor Investigative Hearing pertaining to Cadet Alan Spadone, Company B-1, Class of 2011

d. Cadet Joshua Young, Company B-1, Class of 2011, accompanied the Respondent as his Cadet Advisor during the HIH.

e. Board Exhibits 1 through 12 and Respondent Exhibits 1 through 2 were admitted into evidence. The HIH heard sworn testimony from eight witnesses (R193 through 257 and R304 through 339) and the Respondent (R113 through 128 and R260 through 274).

f. Seven of nine HIH/CAB members recommended that Cadet Spadone be granted discretion and partake in the Honor Mentorship Program. One member recommended graduation with his current class, one member recommended a one-year turn back and five out of nine members recommended December graduation. Two of the nine board members recommended Cadet Spadone be separated with the option of participating in the Army Mentorship Program.

g. A summarized record of the proceedings has been prepared. Proceedings before the CAB are not recorded, in accordance with established standard operating procedures. Evidence presented at the preliminary hearing will not be reflected in this review, except as may be required for the purpose of the review. In order to consider the evidence before the HIH and CAB, the record of the proceedings must be reviewed.

## 3. **LEGAL OPINION.**

a. The proceedings were conducted in accordance with law and regulation and complied with legal requirements.

b. The Hearing Advisor accepted and found the Respondent's admission provident.

c. There was no error that had a material adverse effect on a substantial right of the Respondent.

d. The finding of the HIH is supported by a greater weight of evidence than supports a contrary conclusion.

## 4. **COMMANDANT'S RESPONSIBILITIES.**

a. You are not bound by this determination. You must reach your conclusions based upon your evaluation of the record. You must review the entire record of proceedings in this case and the initial Staff Judge Advocate's review. You may also meet with the Cadet regarding the outcome of this hearing. At that time you may review any matters offered by the Respondent and then provide a recommendation to the Superintendent.

b. You may recommend that the Superintendent approve a finding of a violation if you determine that it is supported by a greater weight of evidence than supports a contrary conclusion. You may recommend that the Superintendent disapprove a finding of a violation for any reason you deem appropriate. In making these decisions concerning findings and in determining what recommendation to make in the case, you may consider any relevant information as long as the material is provided to the Respondent for consideration and rebuttal.

000043

MAJA-MJ
SUBJECT: Legal Review of the Honor Investigative Hearing pertaining to Cadet Alan Spadone, Company B-1, Class of 2011

c. Army Regulation 210-26, paragraph 6-16, provides that a Cadet who is found to have violated the Cadet Honor Code shall normally be separated from the Military Academy. However, the Superintendent has been granted authority to retain a Cadet who has violated the Cadet Honor Code. Accordingly, if you recommend that he approve the finding in this case, you must also decide whether to recommend that the Superintendent exercise his authority to retain the Respondent in the Corps of Cadets.

d. You may also recommend that the Superintendent impose punishment upon the Respondent under provisions of AR 210-26, paragraphs 6-4 and 6-16; this punishment can be imposed regardless of whether the Respondent is retained or not. Such punishment may include admonition, reprimand, restriction to limits, deprivation of privileges, reduction in
or withdrawal of Cadet officer or noncommissioned officer rank, demerits, punishment tours, fatigue tours, loss of leave, turn back to the next lower class, suspended separation, and suspension from the Military Academy.

e. If you recommend the Superintendent approve the findings and decide not to retain the Respondent, the Superintendent has the authority to separate the Respondent in accordance with the Limited Delegation of Separation and Discharge Authority Memorandum, dated 28 September 2005. Therefore, you should make a recommendation as to the character of the Respondent's discharge – either an Honorable Discharge or a General Discharge (under honorable conditions).

5. **SUBMISSION BY RESPONDENT.** A copy of the record of proceedings in this case, a copy of this review, and a copy of your recommendation will be provided to the Respondent.

6. **RECOMMENDATIONS.**

a. Review the record of proceedings (TAB R); and

b. Provide recommendations to the Superintendent regarding the appropriate disposition of this case. If you recommend that the Superintendent approve the findings and separate the Respondent from the Academy, you should make a recommendation as to characterization of discharge the Respondent should receive. If you recommend that the Superintendent exercise his discretion to retain the Respondent, you should provide recommendations as to the appropriate punishment in this case.

FOR THE STAFF JUDGE ADVOCATE:

Encls
as

DANIEL MAZZONE
CPT, JA
Chief, Military Justice

3

**000044**

HEADQUARTERS, UNITED STATES MILITARY ACADEMY
OFFICE OF THE COMMANDANT OF CADETS
WEST POINT, NEW YORK 10996

MACC-CPME-H

08 March 2010

MEMORANDUM FOR: Superintendent, United States Military Academy

SUBJECT: Cadet Advisory Board Recommendation for Cadet Alan Spadone, Company B-1, Class of 2011.

The purpose of this memorandum is to outline the recommendations of the Cadet Advisory Board in the case of Cadet Alan Spadone, Company B-1, Class of 2011.

It is important to note that these recommendations are made based on an admission of guilt on one allegation and a finding of an honor violation in a second. The two allegations were not differentiated for the purposes of the recommendation questionnaire but they were differentiated for the purpose of the board.

The Cadet Advisory Board recommends that Cadet Spadone be retained as a cadet at the United States Military Academy, with 7 out of 9 board members recommending that he be granted discretion and given the opportunity to stay here at the academy. The Cadet Advisory Board recommends with 1 out of 9 that CDT Spadone graduate on time with his class, 1 out of 9 recommend a one year turn back and 5 out of 9 recommend December Grad. 2 out of 9 board members recommend that CDT Spadone be separated with the option of participating in the Army Mentorship Program.

CDT Spadone demonstrated remorse and we believe he has resolved to live honorably in the future. He realizes that he had made a mistake and will work to rectify the situation. In fact, CDT Spadone already has, by attending confession, apologizing to his sprint football team coach, and talking with individuals on his team to whom he let down by cheating. The board believes CDT Spadone displayed genuine honesty in self-admitting his honor violation. The board also believes the mistake does not reflect his true character. His violation of the honor code by lying to his teammates demonstrates a lack of maturity and will need time to further develop. Given time under the mentorship program and the rest of his time at the academy, the board feels that he will be able to internalize the code and live honorably in the future. Having sat on multiple CABs and HIHs, CDT Spadone has shown to be one of the more committed and selfless respondents I have seen.

Testimonies and statements from Cadet Spadone's TAC Officer, MAJ Mahoney, his TAC NCO, SFC Bright, his Company Commander, CDT Krause, Company B-1, Class of 2010, his instructors, LTC Billie, MAJ Didier, and Ms. Vetter, exhibited to the board a general understanding of Cadet Spadone's character. They were able to comment on character and

MACC-PME-H
SUBJECT: Cadet Advisory Board Recommendation for Cadet Alan Spadone, Company B-1, Class of 2011.

provide examples that demonstrated his commitment and loyalty to the corps. He was portrayed as a hard worker and a model cadet that many people liked.

The CAB believes that Cadet Spadone's case is easy to decide. The board trusts in his ability and the probability of CDT Spadone's continued development into a satisfactory cadet and officer.

This memorandum was prepared by the President of the Cadet Advisory Board, Cadet Graves, Company H-4, Class of 2010.

All board members undersigned agree to the above memorandum prepared by the Cadet Board President.

Cadet Donald Graves, H-4, '10
Cadet Board President

Cadet Katherine Taylor, B-4, '10
Honor Representative

Cadet Christopher Cox, G-3, '11
Honor Representative

Cadet Nicholas LaPlante, B-4, '11
Honor Representative

Cadet Brandon Wright, B-2, '10

Cadet You Li, F-2, '11

Cadet Andrew Schumaker, G-2, '11

Cadet Logan Lee, H-3, '12

Cadet Cole Holland, G-2, '13

2

## UNITED STATES MILITARY ACADEMY
### WEST POINT, NEW YORK

### I. Oath of Allegiance

I, ALAN MATTHEW SPADONE,        do solemnly swear that I will support the Constitution of the United States, and bear true allegiance to the National Government; that I will maintain and defend the sovereignty of the United States, paramount to any and all allegiance, sovereignty, or fealty I may owe to any State or Country whatsoever; and that I will at all times obey the legal orders of my superior officers, and the Uniform Code of Military Justice.

### II. Agreement to Serve

I, having been appointed a cadet of the United States Military Academy, do hereby agree, with the consent of my parents or guardian if I am a minor:

a. To complete the course of instruction at the United States Military Academy;

b. If tendered an appointment as a commissioned officer in one of the armed services upon graduation from the United States Military Academy, to accept such appointment and to serve under such appointment on active duty for at least five consecutive years immediately after such appointment; if my initial appointment hereunder is in a Reserve Component, to accept a commission in a Regular Component if subsequently tendered during the five consecutive years immediately after my initial appointment, and to serve on active duty for the remainder of such period under such appointment.

c. If I am permitted to resign my commission in a Regular Component of one of the Armed Services prior to the eighth anniversary of my graduation, to accept an appointment as a commissioned officer in a Reserve Component of one of the Armed Services and remain therein until such eighth anniversary.

d. To serve a total of eight (8) years from graduation from the United States Military Academy. Any part of that service not completed on active duty must be served in a Reserve Component (not on active duty), unless I am discharged from the Reserve Component by proper military authority.

e. That if I fail to complete the course of instruction of the United States Military Academy, breach my service agreement as defined in paragraph 1.g.(4), Statement of Policies on the next page, or decline to accept an appointment as a commissioned officer, I will serve on active duty as specified in paragraphs 1.b. through 1.f., which are contained in the Statement of Policies on the next page;

f. That if I voluntarily fail, or because of misconduct fail, to complete the period of active duty specified in paragraphs II.b., c., d. or e. above, I will reimburse the United States in an amount that bears the same ratio to the total cost of advanced education provided me as the unserved portion of active duty bears to the total period of active duty I have agreed to serve;

g. If I am obligated to reimburse the United States for the cost of my advanced education, any subsequent enlistment in an Armed Service will not relieve me of this debt.

h. Further, that if I am separated from the United States Military Academy for breach of this service agreement, as defined in paragraph 1.g. (4), Statement of Policies on the next page, and the Army decides that I should not be ordered to active duty because such service would not be in the best interests of the Army, I shall be considered to have either voluntarily or because of misconduct failed to complete the period of active duty and may be required to reimburse the United States as described above;

i. For the purpose of this paragraph:

(1) The term "voluntarily fail" includes, but is not limited to, failure to complete the period of active duty because of conscientious objection, because of resignation from the United States Military Academy or United States Army, and marriage while a cadet.

(2) The term "because of misconduct" includes, but is not limited to, termination by the United States Army of my service because of homosexual conduct, criminal conduct, conduct violating the Cadet Honor Code, conduct deficiency under the Cadet Disciplinary System, and conduct violating regulations for the discipline of the Corps of Cadets.

(3) The term "course of instruction" is synonymous with the term "educational requirements" as the term is used in 10 USC 2005.

### III. Marital Status

I am unmarried, do not presently have custody of a child, do not have a legal obligation of support from a prior marriage, and have no legal obligation to support a child or a former spouse. Furthermore, I understand that a cadet who marries, has custody of a child, incurs a legal obligation of support from a prior marriage, or incurs a legal obligation to support a child or former spouse while a United States Military Academy cadet will be separated from the United States Military Academy. Divorce, annulment, or other dissolution of a cadet's marriage does not affect or preclude separation under this provision.

My signature constitutes the taking of the Oath of Allegiance, execution of the agreement to serve, my affirmation as to my marital status, the absence of child custody or a court-ordered child support obligation and my acknowledgment that I have read, understand, and agree to abide by the statement of policies on the next page. For all male cadets, signing this form also constitutes registration with the Selective Service System in accordance with the Military Selective Service Act. Incident thereto the Department of Defense may transmit my name, permanent address, Social Security Number, and birth date to the Selective Service System for recording as evidence of the registration.

(sign your full name as it appears in paragraph I above)

*Sworn to and subscribed before me at West Point, New York, this 2nd day of July, two thousand and seven.*

### *Statement of Policies*

1.     Department of Defense Directive 1332.23, dated 19 February 1988, as implemented by Army regulations, provides the following direction concerning separation of cadets prior to the completion of the course of instruction or subsequent to graduation on refusal to accept an appointment as a commissioned officer.

a. A cadet who enters the United States Military Academy (USMA) directly from civilian status assumes a military service obligation of eight years (10 USC 651).

b. A cadet who is separated from the USMA because of demonstrated unsuitability, unfitness, or physical disqualification for military service will be discharged in accordance with the applicable Army regulations. Where such a discharge is caused by voluntary action or misconduct on the part of a cadet subject to an active duty obligation, the reimbursement provision of paragraph II.f. of the Agreement to Serve will apply.

c. A cadet who enters the USMA directly from a civilian status and resigns or is separated from the USMA prior to the commencement of the Second Class academic year will be discharged from the U.S. Army. A resignation tendered by a Fourth or Third Class cadet will be accepted when found to be in the best interest of the service. A cadet who tenders a resignation will be required to state a specific reason for the action.

d. A cadet who enters the Military Academy from the Regular or Reserve Component of any military service and who resigns or is separated from the USMA prior to the commencement of the Second Class academic year will revert to his or her former status for the completion of any prior service obligation. As an exception, Invitational Reservists (cadets who entered the United States Military Academy Preparatory School from a civilian status) who resign or are separated from the USMA prior to commencement of his or her second class academic year will be discharged from the Army. A cadet who entered the USMA from the Regular Army or any Reserve Component of the Army and who has at the time of separation a remaining prior service obligation of less than one year, may, upon the approval of the Secretary of the Army or his designee, be discharged with waiver of any prior service obligation. All service as a cadet is counted in computing the unexpired portion of the enlistment or period of obligated service.

e. A cadet who has commenced his or her Second Class academic year and who resigns or is separated prior to completing the course of instruction, except for physical disqualification, unfitness, or unsuitability, will normally be transferred to a Reserve Component in an enlisted status and, if deemed to have breached his or her service agreement, may be ordered to active duty for not less than two years (10 USC 4348(b)) but no more than four years. The Secretary of the Army or his/her designee will retain final authority to order the individuals to active duty. Completion or partial completion of service obligation acquired by prior enlistment in no way exempts a separated cadet from being transferred to a Reserve Component and ordered to active duty under these provisions.

f. Any First Class cadet who completes the course of instruction and declines to accept an appointment as a commissioned officer will be transferred to a Reserve Component in an enlisted status and ordered to active duty for four (4) years (10 USC 4348(b)).

g. The foregoing provisions will be applied in accordance with the following guidance:

(1) The Second Class academic year shall be deemed to have commenced at noon on the first day of regularly scheduled academic classes following the summer training period. As an exception, the Second Class year for a cadet who is designated a potential mid-year graduate will commence at noon on the first day of regularly scheduled classes in the term following the advancement of that cadet into the second class.

(2) In cases where it is necessary to determine whether a cadet resigned prior to or following the commencement of the Second Class year, the critical date is the date the resignation action is initiated by the cadet.

(3) In cases in which the Academy discovers an incident giving rise to separation in one academic year, but separation is not initiated (or a resignation in lieu of the same is not forwarded by the chain of command) until the following year, the separation action will be deemed to have "started" on the date of discovery for purposes of computing the service obligation and pay grade under AR 612-205, table 3.

(4) "Breach of service agreement" includes separation resulting from resignation, from any of the bases for separation listed in AR 210-26, **Table 7-1**, including all additions to **Table 7-1** subsequent to the date of this agreement or from other willful acts or omissions (AR 210-26, paragraph 7-9).

2. Normally, all graduates of the USMA will be appointed by the President as commissioned second lieutenants on active duty in the United States Army. However, cadets may state a preference for appointment, upon graduation, as a commissioned officer in either the U.S. Navy, U.S. Air Force, or U.S. Marine Corps (10 U.S.C. 541 (a)). Such appointment will be contingent upon the approval of both the Secretary of the Army and the Service Secretary of the gaining military department.

3. Any First Class cadet, including potential mid-year graduates, in either of the two terms prior to their anticipated graduation, who resigns or is separated, if fully qualified, may be recommended by the Superintendent and approved by the Secretary of the Army, and may be commissioned in a Reserve component. Such action may be appropriate in cases of administrative resignations, including cases of separation for marriage, or child support or similar circumstances. The effective date of rank in the Reserve component will be no earlier than the graduation date of the individual's class at the time of resignation or separation. These cadets may:

(a) Be commissioned in the USAR for service with a Reserve Component unit. There will be an eight-year military service obligation associated with this appointment; or

(b) After receipt of a baccalaureate degree, be commissioned in the USAR and compete with Reserve Officer Training Corps graduates for active duty or active duty for training. The military service obligation for those selected for active duty under this provision will be eight years, three of which will be on active duty.

000048