# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **ALAN MATTHEW SPADONE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 1:11-cv-01601 (RWR)** |
| | ) | |
| **JOHN M. McHUGH,** | ) | |
| **Secretary of the Army,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

### Table of Contents

I.  Statement of the Case ................................................................................................. 1

II.  Facts ............................................................................................................................ 1

III.  Standard of Review..................................................................................................... 2

  A.  Dismissal Pursuant to 12(b)(1) for Lack of Subject Matter Jurisdiction ................ 2

  B.  Summary Judgment is the Appropriate Mechanism for Review of Claims Arising Under the APA. ............................................................................................................................. 3

IV.  Argument ..................................................................................................................... 4

  A.  The Plaintiff Did Not Raise Claims II Through VII to the ASA(M&RA) for Consideration and Those Claims Are Waived............................................................................................. 4

  B.  The ASA(M&RA)'s Decision that Plaintiff Lacks the Integrity to Serve as a West Point Cadet is a Non-Justiciable Military Personnel Decision.  (Count 1).................................... 10

  C.  The ASA(M&RA)'s Decision to Separate Plaintiff from West Point Complied with Applicable Regulations and Was Based on Substantial Evidence. ...................................... 17

    1.  Plaintiff is not entitled to due process in the revocation of his suspended separation. (Count 2)........................................................................................................................... 20

    2.  Plaintiff's Notice and Opportunity to be Heard Prior to Separation Provided Sufficient Due Process. ...................................................................................................................... 24

    3.  There is no binding timeline for processing honor cases that is addressable under the APA. ................................................................................................................................. 29

    4.  USMA Officials provided plaintiff correct advice about his military service obligation. ......................................................................................................................................... 31

5.  USMA Officials properly advised plaintiff of his Article 31 rights throughout the investigations into his honor code violations. ................................................................. 34

D.  Plaintiff Has Not Pled a Jurisdictional Basis for his Unjust Enrichment Claim.................. 36

E.  The Plaintiff Lacks Standing to Assert an Establishment Clause Claim. ............................ 38

V.  Conclusion ...................................................................................................................... 41

# I.  <u>Statement of the Case</u>

Alan Spadone, Plaintiff, is a former West Point cadet who was separated from the United States Military Academy (USMA) for cheating.  The central issue presented by Plaintiff's complaint is whether the Assistant Secretary of the Army for Manpower and Reserve Affairs ("ASA(M&RA)" or "ASA") properly separated him.  While Plaintiff raises a number of related claims, the gravamen of his complaint is that the ASA improperly determined that Plaintiff failed a required remedial honor code education requirement called the Honor Mentorship Program ("HMP").  Also, the Plaintiff asserts he was entitled to more due process than the notice and opportunity to respond that he received before separation.  Plaintiff's other claims amount to allegations that military officials acted arbitrarily or capriciously in adjudicating his case through various procedural defaults.

None of Plaintiff's claims are meritorious.  The ASA's determination that the Plaintiff failed to meet the standards of the required Honor Mentorship Program is a military personnel decision that is accorded deference upon judicial review.  In any event, the decision is supported by substantial evidence.  Likewise, Plaintiff had notice of his proposed separation and an opportunity to respond, which was sufficient due process to revoke his suspended separation from USMA.  Finally, USMA officials acted properly while processing Plaintiff's investigation, hearing, suspended separation, and separation actions.  The ASA's decision, therefore, should be upheld.

# II.  <u>Facts</u>

Defendant respectfully refers the Court to Defendant's Statement of Facts with references to the administrative record which is filed simultaneously herewith.  <u>See</u> LCvR 7(a)(2).

### III.  **Standard of Review**

A.      Dismissal Pursuant to 12(b)(1) for Lack of Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction and must dismiss claims over which they

lack subject matter jurisdiction.  Runkle v. Gonzales, 391 F. Supp. 2d 210, 219-20 (D.D.C.

2005).  The party seeking to invoke the jurisdiction of a federal court bears the burden of

establishing the court's subject matter jurisdiction.  Id. at 220; see U.S. Ecology, Inc. v. Dep't of

the Interior, 231 F.3d 20, 24 (D.C. Cir. 2000).  Thus, Federal Rule of Civil Procedure 12(b)(1)

requires dismissal of claims where the Court "lack[s] jurisdiction over the subject matter." Fed.

R. Civ. P. 12(b)(1).

A Rule 12(b)(1) motion to dismiss for lack of jurisdiction may be presented as a facial or

factual challenge.  "A facial challenge attacks the factual allegations of the complaint that are

contained on the face of the complaint, while a factual challenge is addressed to the underlying

facts contained in the complaint." Al-Owhali v. Ashcroft, 279 F. Supp. 2d 13, 20 (D.D.C. 2003)

(internal quotations and citations omitted).

When a defendant makes a facial challenge, the district court must accept the allegations

contained in the complaint as true and consider the factual allegations in the light most favorable

to the non-moving party.  Erby v. United States, 424 F. Supp. 2d 180, 182 (D.D.C. 2006); see

Hohri v. United States, 782 F.2d 227, 241 (D.C. Cir. 1986), vacated on other grounds, 482 U.S.

64 (1987).

With respect to a factual challenge, the district court may consider materials outside of

the pleadings to determine whether it has subject matter jurisdiction over the claims.  Jerome

Stevens Pharmacy, Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005); Herbert v. Nat'l

Academy of Sciences, 974 F.2d 192, 197 (D.C. Cir. 1992); Scolaro v. D.C. Bd. of Elections &

Ethics, 104 F. Supp. 2d 18, 22 (D.D.C. 2000).  The Plaintiff bears the responsibility of establishing the factual predicates of jurisdiction by a preponderance of evidence.  Erby, 424 F. Supp. 2d at 182.  The Court need not accept factual inferences drawn by the Plaintiff if those inferences are not supported by facts alleged in the complaint, nor must the Court accept the plaintiff's legal conclusions.  See Nat'l Treasury Employees Union v. United States, 101 F.3d 1423, 1430 (D.C. Cir. 1996); Kowal v. MCI Communications Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994).

  B. Summary Judgment is the Appropriate Mechanism for Review of Claims Arising Under the APA.

  When a party seeks review of agency action under the APA "[t]he entire case on review is a question of law, and only a question of law," and can be resolved on the administrative record in the context of a motion for summary judgment.  Marshall County Health Care Authority v. Shalala, 988 F.2d 1221, 1226 (D.C. Cir. 1993); see American Bioscience, Inc. v. Thompson, 269 F.3d 1077, 1083-84 (D.C. Cir. 2001); University Medical Center v. Shalala, 173 F.3d 438, 440 n.3 (D.C.Cir. 1999).  In such record review cases, the district court generally does not resolve factual issues or duplicate agency fact-finding efforts, but instead functions as an appellate court addressing a legal issue.  See, e.g., James Madison Ltd. bv Hecht v. Ludwig, 82 F.3d 1085, 1096 (D.C. Cir. 1996).  For this reason, the normal standard of review for a summary judgment motion, which requires a district court to decide whether there is any "genuine issue of material fact," see Fed. R. Civ. P. 56(c), does not apply.  Sierra Club v. Mainella, 459 F. Supp. 2d 76, 89-90 (D.D.C. 2006); see LCvR 7(h)(2) (statement of undisputed material facts not required for cases "in which judicial review is based solely on the administrative record").  To the contrary, "the focal point for judicial review should be the administrative record already in

existence, not some new record made initially in the reviewing court." <u>Camp v. Pitts</u>, 411 U.S.

138, 142 (1973).  Summary judgment, therefore, is "the mechanism for deciding whether as a

matter of law the agency action [under review] is supported by the administrative record and is

otherwise consistent with the APA standard of review." <u>Southeast Conference v. Vilsack</u>, 684

F.Supp. 2d 135, 142 (D.D.C. 2010); <u>see</u> <u>Florida Power & Light Co. v. Lorion</u>, 470 U.S. 729,

743-44 (1985) ("The task of the reviewing court is to apply the appropriate APA standard of

review . . . to the agency decision based on the record the agency presents to the reviewing

court.").

## IV.  <u>Argument</u>

A.     <u>Because The Plaintiff Did Not Raise Claims II Through VIII to the ASA(M&RA) for
Consideration, Those Claims Are Waived.</u>

All of Plaintiff's claims except Count I, should be dismissed because he waived judicial

review.  By failing to present his claims in Counts II though VIII to the Superintendent and ASA

(M&RA) at the time he requested relief concerning the vacation of his suspended separation due

to failing the HMP requirements, Plaintiff deprived the agency of the ability to address his

issues.  As a general rule in administrative law, rooted in simple fairness, issues not raised before

an agency are waived and will not be considered by a court on review.  <u>Nuclear Energy Institute,</u>

<u>Inc.  v.  Environmental Protection Agency</u>, 373 F.3d 1251, 1297-98, (D.C. Cir.  2004) (citing

<u>United States v.  L.A.  Tucker Truck Lines, Inc.</u>, 344 U.S. 33, 37 (1952) ("Simple fairness to

those who are engaged in the tasks of administration, and to litigants, requires as a general rule

that courts should not topple over administrative decisions unless the administrative body not

only has erred but has erred against objection made at the time appropriate under its practice.").

This rule acts as "'a near absolute bar against raising new issues - factual or legal - on appeal in

the administrative context.'" Id. at 1298 (citing Nat'l Wildlife Fed'n v. EPA, 286 F.3d 554, 562 (D.C. Cir. 2002); see also Nat'l Ass'n of Manufactures v. Dep't of Interior, 134 F.3d 1095, 1111 (D.C. Cir. 1998)("'Our cases ...  require complainants, before coming to court, to give the [agency] a fair opportunity to pass on a legal or factual argument.'" (quoting Wash. Ass'n for Television & Children, 712 F.2d at 681 (alteration and emphasis in original))).

"Generally, under the waiver doctrine, issues and arguments not made before the relevant military correction board or administrative agency are deemed waived and could not be raised in a judicial tribunal." Christian v. United States, 46 Fed. Cl. 794 (2000).  In fact, in jurisdictions where military correction boards are a permissive remedy the Courts have correctly held, "once a party has availed himself of this administrative process he is bound by it."  See Doyle v. United States, 599 F.2d 984, 1000 (Ct. Cl. 1979), cert. denied 466 U.S. 982 (1980); see e.g. Spehr v. United States, 51 Fed. Cl. 69, 85 (2001) (issues not raised to the corrections board are waived); Weaver v. United States, 46 Fed. Cl. 69, 80 (2000)(same); Allen v. United States, 46 Fed. Cl. 677, 682 (2000)(same); Laningham v. United States, 30 Fed. Cl. 296, 315 (1994)(same); Frecht v. United States, 25 Cl. Ct. 121, 131 (1992)(same); Walden v. United States, 22 Cl. Ct. 532, 538 (1991)(same).

The Plaintiff never presented his claims, save one, to the ASA(M&RA) for him to consider prior to making his decision.  Plaintiff's submission to the Superintendent contained no reference to the violations he alleges nor do they suggest any procedural violation in connection with his underlying honor case.  For nearly all his claims, the first and only time the Plaintiff asserted an error was in this complaint.  Contrary to the Plaintiff's assertions in this complaint, Plaintiff's requested relief before the Superintendent and ASA (M&RA) related only to whether Plaintiff had submitted journal entries in accordance with the requirements of the regulation.

(AR 12)  Because Plaintiff did not raise any other claims to the agency for consideration, Plaintiff has waived all such other claims.

Plaintiff received an Honor Investigative Hearing ("HIH") on March 8, 2010.  (AR 55-229)  Prior to the hearing, Plaintiff objected to two issues.  First, Plaintiff objected to three exhibits, on the basis that the he should have had his rights read to him.  (AR 505-06)  Second, Plaintiff objected that the hearing processing of his case violated his right to a speedy trial.[1]  The Hearing Advisor for Plaintiff's HIH held a preliminary hearing and noted that Plaintiff had no objection to any evidence used regarding the allegation to which he pled guilty.  (AR 119-20)  Of the Exhibits contested, the Hearing Advisor excluded several.  (AR 133-34, 184-85)  However, he admitted two as proper approaches for clarification because rights warnings were not required.  (AR 197-98)  Also, the Hearing Advisor noted Plaintiff's speedy trial objection and the fact that Plaintiff requested multiple delays.  (AR 128-30)

Additionally, at a preliminary hearing, Plaintiff pled guilty to one allegation of cheating.  (AR 167-82)  The HIH then proceeded on two additional allegations, one based on cheating and the other on lying.  (AR 230 (noting the beginning of the HIH))  At the HIH, all evidence related to the cheating allegation to which Plaintiff pled guilty was excluded.  (AR 121-28; 133-34)  Further, Plaintiff presented evidence on his behalf and testified after being warned of his right to remain silent.  (AR 134-38, 153-61, 167-82)  Ultimately, the HIH "found" Plaintiff had

---

[1] Notably, Plaintiff only lists the time period guidelines contained in USCC Pam 15-1 in support of his "speedy trial" objection.  He asserts no actual speedy trial right that is available at an administrative, as opposed to a criminal, proceeding.  Additionally, Plaintiff does not explain how the manner in which he calculated the delay complies with the processing guidelines in the regulation, nor can he.  His calculations do not comport with the manner in which processing is calculated. (USCC Pam 15-1 ¶ 507)  Furthermore, Plaintiff offers no explanation on how a violation of "goals" contained in the regulation affords Plaintiff any actual rights to hearing within a specific time period.  Finally, Plaintiff fails to mention the fact that part of the delay was due to his request and other delays resulted from his owns actions, additional honor violations that consumed more West Point resources.

committed the offense of cheating but did not find that he committed the offense of lying. (AR 352-53, 513-14)

Having determined that Plaintiff committed two separate acts of cheating, the HIH/Cadet Advisory Board ("CAB")[2] considered what recommendations to make to the Superintendent regarding Plaintiff's fate. (AR 45)  Plaintiff received the HIH/CAB file, the recommendations from the chain of command, and the legal review of his case and was given until April 22, 2010, "to provide comment on the review." (AR 36)  Plaintiff "did not submit additional matters" for the Superintendent's review prior to his decision. (AR 33).

After reviewing the hearing, the evidence, and the recommendations, including the legal reviews of the proceedings, the Superintendent exercised his discretion and "determined that Cadet Spadone should be separated from the United States Military Academy." (AR 32)  As a matter of clemency, however, the Superintendent determined that

> [t]his decision, however, is suspended until Cadet Spadone's graduation in 2012, contingent upon his future exemplary conduct.  Cadet Spadone will be turned back to the Class of 2012, but he will be allowed to finish the academic term 10-2. Additionally, Cadet Spadone will be assigned a mentor from the USMA staff or faculty and will complete several requirements under the USMA Honor Mentorship Program as deemed necessary and appropriate by his mentor and tactical officer."

(AR 32)  Because Plaintiff did not raise any error in the underlying proceedings, it is reasonable to assume that the Superintendent believed, when making his favorable decision concerning

---

[2] A CAB is a "modified version of an HIH designed for cadets who admit allegations(s) referred against them. . . . The sole purpose of the CAB is to provide a recommendation to the Superintendent on the final disposition of a case." (USCC Pam 15-1 ¶ 407)

Plaintiff, that Plaintiff either had no issues related to the hearing process or he wavied those issues.  In fact, he had waived review by failing to appeal any concerns.[3]

On October 26, 2010, Plaintiff's tactical officer counseled him on the fact that he failed the HMP program, a term of his suspension.  (AR 21-22)  Plaintiff agreed with the counseling and provided no remarks in response.  (AR 22)  However, prior to a final decision, Plaintiff's counsel raised one issue for the Superintendent to consider.  Specifically, he objected to the standards used and the factual basis for determining that Plaintiff failed the HMP program.  (AR 12-15)  Notably, his counsel did not raise any issues related to the processing timelines in Plaintiff's case; he did not raise any issues related to Plaintiff's Establishment Clause claims; nor did he raise any issues regarding Plaintiff's claim of unjust enrichment.  Whether a tactical decision or a failure on the part of his counsel, his objection did not comment on these claims.

Based on the counseling and input from the chain of command and after considering comments from Plaintiff's counsel, the Superintendent determined that "Cadet Spadone has violated the terms of his suspended separation by his failure to complete the requirements of the USMA Honor Mentorship Program."  (AR 6)  Accordingly, the Superintendent forwarded

---

[3]  Interestingly, the Hearing Advisor ("HA") informed Plaintiff of his rights including the right to consult with an attorney, his right to remain silent, the right to appear personally and be present during all open sessions, the right to present evidence and have witnesses testify, the right to examine witnesses, the right to object to evidence, the right to challenge members of the Honor Investigative Hearing and the Cadet Advisory Board, the right to bring to the HA's attention any matter that the Plaintiff believed made the hearings unfair, and the right to have a Cadet Advisor assist him during the hearing.  (AR 61-65)  Plaintiff acknowledged he understood these rights and had no questions.  (AR 65)  Plaintiff stated he had consulted with counsel and he was satisfied with his counsel's advice.  (AR 61) As part of these rights the HA stated, "if you believe at any time during any of the Honor proceedings something is unfair, you have the right to bring the matter to my immediate attention.  A failure to immediately speak up about an issue of fairness may result in your giving up, or waiving, your right to raise the issue at a later time.  I cannot overemphasize this point.  If you have any questions about procedures or think that something is unfair, please tell me immediately.  I will do everything I can to ensure the fairness of this proceeding."  (AR 63)  Plaintiff's never raised his initial issues again.

Plaintiff's file to the ASA (M&RA) who approved the recommendation to separate Plaintiff from the Academy.  (AR 3)

Plaintiff offers nothing to demonstrate that he raised the issues to the agency he now asserts in his complaint.  Yet, he insists he was wronged, attempting to raise issues unknown to the agency at the time the ASA (M&RA) took final action on Plaintiff's case.  As such, the Plaintiff waived his right to now ask this Court to set aside the decision to revoke his suspension on grounds not previously considered by the agency.

Plaintiff's failure to address these errors in his submission to the Superintendent and ASA (M&RA) is inexcusable.  In Doyle, the plaintiffs were found to have waived their right to assert certain procedural errors when such errors were known to plaintiff but not asserted at the time of the AFBCMR proceedings.  Id. at 312.  The Court held that "plaintiffs are required to voice their objections in such a way that the Secretary or Correction Boards is aware of problems, well known to plaintiffs, in the manner a remedy is effectuated before it is effectuated."  Id.  At the time of the Plaintiff's objection to the Superintendent, he should have been well aware of the issues he now claims.  Here, Plaintiff seeks an end run around the agency's ability to make an informed decision regarding the basis of his claims.  The appropriate time and forum for the Plaintiff to address any perceived errors were in his submission to the Superintendent and ASA (M&RA).  He did not.

Plaintiff's actions prevented the decision-makers from reviewing all alleged errors and providing a complete remedy.  Because Plaintiff's failure to do so has waived the issue; he may not assert these alleged errors in this Court for the first time and the Court should dismiss Claims II through VIII.  Revocation of Plaintiff's suspended separation involves a discretionary personnel and disciplinary decision made by the Plaintiff's military chain of command.  This

Court's role is not to substitute its judgment for that of the agency.  Pierce v. Underwood,

487 U.S. 552, 564 (1988).  Without an administrative record to assist in its review, this Court

would essentially be functioning as the Secretary of the Army or a super military corrections

board, a role that the courts have repeatedly rejected.  Walker v. Shannon, 848 F. Supp. 250, 255

(D.D.C. 1994); see also  Florida Power & Light Co. v. Lorion, 470 U.S. 729, 743 (1985), quoted

in  Came v. Pitts, 411 U.S. 138, 142 (1973) ("The focal point for judicial review should be the

administrative record already in existence, not some new record made initially in the reviewing

court.")

The decision to set aside the ASA (M&RA)'s decision is one with significant

consequences.  As in Bois v. Marsh, the Plaintiff's request to set aside his Article 15 punishment

poses "a substantial threat to military discipline essential to the effective functioning of the

armed forces."  801 F.2d at 467.  Setting aside the final decision to separate Plaintiff will

effectively eliminate the sanctions imposed for Plaintiff's conduct, portions of which the Plaintiff

admits he committed.  Return of Plaintiff to West Point will send a strong message about

discipline and the consequences for failing to live up to the conditions of the HMP.  West Point

should not be forced into this untenable situation when Plaintiff did not afford it the opportunity

to address his complaints.

B.     The ASA(M&RA)'s Decision that Plaintiff Lacks the Integrity to Serve as a West Point
       Cadet is a Non-Justiciable Military Personnel Decision.  (Count 1)

Military personnel decisions are afforded discretion by federal courts.  "Judges are not

given the task of running the Army.  [. . .]  Orderly government requires that the judiciary be as

scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to

intervene in judicial matters."  Orloff v. Willoughby, 345 U.S. 83, 93 (1953).  "The complex

10

subtle, and professional decisions as to the composition, training, equipping, and control of a military force are essentially professional military judgments, subject always to civilian control of the Legislative and Executive Branches." Gilligan v. Morgan, 413 U.S. 1, 10 (1973). The ASA(M&RA)'s decision to separate Plaintiff from West Point and order him to serve as an enlisted soldier is the type of personnel decision that falls squarely within the military's discretion on personnel matters.

The USMA Superintendent twice considered Plaintiff's conduct before recommending that the ASA separate him. First, after having been found to have cheated, the Superintendent determined "that [Plaintiff] should be separated from the United States Military academy." (AR 32) However, the Superintendent suspended the separation "contingent upon [Plaintiff's] future exemplary conduct" and enrolled Plaintiff in the Honor Mentorship Program. (AR 32) The Superintendent directed that the Plaintiff be assigned a mentor and that he complete requirements under the program "as deemed necessary and appropriate by his mentor and tactical officer." (AR 32) The Superintendent informed Plaintiff that Plaintiff would violate the terms of the suspension if, among other things, he failed to complete "any requirement under the USMA Honor Mentorship Program." (AR 32)

Despite the Superintendent's clear warning, Plaintiff failed to complete several program requirements. (USCC Pam 15-1, Chapter 6 (listing the requirements for completion of the HMP)) He never submitted a required character development plan to his mentor. (USCC Pam 15-1 ¶ 605.a.) Additionally, under the terms of the program, Plaintiff was required to submit two journal entries a week. (USCC Pam 15-1 ¶ 605.c.) Despite having started the program in August, plaintiff did not submit a single journal entry until October 6, 2010. (AR 11) Any of these failures could have individually served as a basis for vacating the suspended separation.

11

Plaintiff's tactical officer, the Army officer responsible for Plaintiff's day-to-day supervision, counseled him on October 26, 2010 concerning Plaintiff's unwillingness to participate in the HMP.  He cited four reasons he considered plaintiff to have failed the program: 1) Plaintiff failed to start the HMP before he left West Point for the summer in May 2010; 2) Plaintiff refused to wear "US" insignia as rank, which would have signified that he had been turned back a class; 3) Plaintiff failed to start the HMP for over a month upon returning to USMA from the summer; and 4) Plaintiff's journal entries focused on others rather than taking responsibility for his own actions.   (AR 21)  On November 30, 2010 the Superintendent initiated action to suspend Plaintiff from USMA and to recommend to the ASA that he separate Plaintiff. (AR 16)

Plaintiff's mentor subsequently submitted a memorandum to the Superintendent that explained his view of Plaintiff's performance in the Honor Mentorship Program and potential for performance as a cadet.  (AR 11)  After reading Plaintiff's journals he wrote, "I no longer felt [Plaintiff] was capable of successfully completing the HMP."  (AR 11)  He continued,

> [Plaintiff] is an intellectually bright person, but I do not feel he will ever adhere to either the code or the spirit of the code here at West Point.  My opinion is based on being a former cadet honor representative, five years as an assistant professor here at the Academy and over twenty-five years of service in the Army."

(AR 11)

In addition to this assessment from Plaintiff's mentor, the Superintendent had the benefit of an assessment from Plaintiff's tactical officer.  On the issue of Plaintiff's violation of the terms of the suspended separation he stated that Plaintiff "failed to comply with orders by refusing to begin the HMP until several months after being enrolled, failing to wear the rank assigned to him while in the HMP, and failing to submit HMP requirements until several months

12

overdue."[4]  (AR 9)  Plaintiff's tactical officer felt that plaintiff had no potential for future service and, in fact, could be a detriment to his command:  "My interaction with [Plaintiff] over the last year and [a] half lead me to distrust him and his judgment.  I feel that [] [Plaintiff] would be a potentially hazardous liability to his future chain of command."  (AR 9)  The senior military officers in Plaintiff's chain of command, including the regimental tactical officer, the brigade tactical officer, and the commandant concurred with the tactical officer's recommendation that the Superintendent vacate plaintiff's suspended separation.  (AR 9)

The Superintendent concurred with plaintiff's chain of command and recommended that the ASA separate Plaintiff based on the "entire case file" and Plaintiff's violation of the Honor Mentorship Program.  (AR 4.)  The ASA concurred and separated plaintiff.  (AR 3.)

Plaintiff's military chain of command determined that he should be separated from USMA because he cheated in violation of the Cadet Honor Code.  Despite having been granted discretion – a second chance at graduating from West Point and becoming an Army officer – plaintiff failed to satisfy the terms of the Superintendent's suspended separation.  Based on this failure, and the chain of command's recommendations about his performance and potential, the Superintendent recommended separation.

To readmit Plaintiff to USMA would require the court to "second-guess the Secretary's decision about how best to allocate military personnel in order to serve the needs of the nation." Kreis v. Secretary of Air Force, 866 F.2d 1508, 1511 (D.C. Cir. 1989.) (holding a claim for

---

[4] In addition to the order concerning the HMP, Plaintiff's tactical officer, "gave him [Plaintiff] orders not to return to West Point which he disobeyed."  (AR 9)  Plaintiff's actions illustrate contempt towards Academy officials and a failure of the HMP program.  Additionally, Plaintiff's actions arguably escalated to criminal misconduct.  10 U.S.C § 890 ("Any person subject to this chapter [such as a cadet] who – willfully disobeys a lawful command of his superior commissioned officer; shall be punished, . . . by such punishment, other than death, as a court-martial may direct.")

retroactive promotion is nonjusticiable).  The task of determining who should serve as a cadet at West Point is a task that is "inherently unsuitable to the judicial branch . . . ."  Id.  By way of example, "Cadets at the academy shall be appointed by the President alone."  10 U.S.C. § 4341a. Further, Congress has empowered military officials alone the authority to determine whether a separated cadet may be readmitted to West Point.  "A cadet who is reported as deficient in conduct or studies and recommended to be discharged from the Academy may not, unless recommended by the Academic Board, be returned or reappointed to the Academy."  10 U.S.C.A. § 4351.  Finally, only the Secretary of the Army, acting through his designee – the ASA – may separate cadets such as Plaintiff.  (AR 210-26 ¶ 1-10a, table 7-2 rule 5.)  In light of this framework the question of whether an individual such as the Plaintiff should serve at West Point is beyond the province of the court.

Plaintiff contends that USMA officials "failed to apply any standard at all in adjudicating [Plaintiff's] case."  (Compl. ¶ 104.)  In support of this notion plaintiff notes that officials determined his journal entries "violated the intent" (Compl. ¶ 100) of the HMP regulation and that officials indicated he had "unresolved issues" (Compl. ¶ 101) that would prevent him from completing the program.  Plaintiff complains that there is no ascertainable standard against which to measure these assessments.

Plaintiff fails to appreciate that the structure of the HMP contemplates military officials' subjective assessment of whether a cadet who is at USMA on a suspended separation for an honor code violation can make "the changes [in himself] necessary for moral-ethical growth and development."  (USCC Pam 15-1 ¶ 601b.)  In plaintiff's case, his honor mentor determined that he could not.  This is the type of subjective military personnel decision that courts have carefully avoided intruding upon in the past.  Chappell v. Wallace, 462 U.S. 296 (1983).

Nonetheless, even an individual who has no experience as a cadet at West Point can understand how some of plaintiff's writings seem incompatible with service at USMA:

> "Prior to this point I was told that an officer's word is his bond. Frankly, I felt like I was just lied to twice by the Dean.  Over time this has lead to a deficit of trust between myself and West Point. Without trust there is no accountability and without accountability there is no leadership.  Now I know that an Officer's bond is something that is in writing and is signed, initialed and dated." (AR 28)

> "Nearly every day here we are reminded of Duty, Honor, Country and the importance of being a leader of character.  I was just lied to by a One Star General. This apparent blatant hypocrisy has tainted my view of West Point so badly that any mention of Duty, Honor, Country makes me nauseous.  Honestly, I can say that's the real issue right there. I do not trust West Point right now and I honestly don't know if I want to be a part of an organization like that."  (AR 28)

> "My whole image of West Point was destroyed and frankly anytime I heard the words duty, honor, country or anything referring to the honor code I wanted to vomit.  I just had a One Star General lie to me about being able to go on this program and now it seemed like I was stuck at West Point, in the Army for the next ten years of my life, and I was just being told to move on." (AR 29)

> "It is within this context that I committed and honor violation.  On around October 27 I turned in an English paper that was not my own. I admit that was the wrong thing to do.  At that time and still to this day I feel as though the contract between West Point and myself was broken.  It was broken when I committed the next ten years of my life based upon a lie."  (AR 29)

> "So after that I came back to West Point, and frankly right now if someone were to ask me "Do you want to be at WestPoint right now?" I would probably respond no.  I had an honor violation, yes, but at this point I still cannot get over the fact that I signed ten years of my life away based on a lie.  Probably one of the most distressing aspects about West Point is that the Academy will never admit a mistake.  It is like dealing with the Papacy.  This is the one thing preventing me from moving on.  This trust deficit is a two way street and I will do all the work alone.  I'm an incredibly

15

> talented individual and I know I'd make a great officer, but at this point, I don't even know if I want to do that.  I will walk around with my scarlet US brass and be your Hester Prynne but the ball is in your court USCC." (AR 30-31)

These are some of the statements USMA officials were reviewing as they tried to determine whether Plaintiff was successfully participating in the HMP.  Based on these entries it is understandable that his mentor, based on his long military experience, would write that "[Plaintiff] showed neither the ability to identify any shortcomings he had that led to his violation nor the desire to remediate any of his integrity and / or decision making skills to complete the HMP."  (AR 11.)

The regulation describes the expected content of the journal entries:

> The mentored cadet should write down brief descriptions of events that stimulated or challenged the sense of morality.  The mentored cadet should record what confronted him/her, what action(s) taken, *and what the cadet was thinking at the time.*  The issues do not need to be tremendously significant.  A small argument with a roommate can provide many opportunities for reflection upon one's values and leadership dimensions.  As time progresses, the mentored cadet should record efforts to alter his/her behavior to break "bad" habits.  This will serve to heighten awareness during normal experiences and increase the likelihood that the cadet will try to modify behavior in the future.  The goal is to REFLECT upon events that involve the mentored cadet's moral bearings.  This should not just be a description of the mentored cadet's daily events.

(USCC Pam 15-1 ¶ 605c(3).)  The regulation also states that "Successful remediation is an objective[5] evaluation and is not based solely on completion of requirements.  If a cadet is clearly not remediating, the program may be terminated early at the request of the mentor."  (USCC Pam 15-1¶ 603g.)  Here, Plaintiff's tactical officer noted that Plaintiff's journal entries "seem intent

---

[5]  The regulation misuses the term "objective."  In context, the regulation unequivocally calls for a subjective assessment of a cadet's progress in the HMP.

on ensuring others receive blame" rather than reflecting upon plaintiff's own morality.  (AR 21)

To the extent the entries did encompass Plaintiff's reflection on his morality, the entries evinced

a moral character that Plaintiff's chain of command determined was inconsistent with successful

HMP completion.  Their discretionary assessment of plaintiff's moral fitness to serve as a cadet

is not amenable to judicial review.

C.    The ASA(M&RA)'s Decision to Separate Plaintiff from West Point Complied with
Applicable Regulations and Was Based on Substantial Evidence.

A brief discussion of the decisions actually at issue in this case is warranted.  First the

Superintendent, acting on the findings of an Honor Investigative Hearing and the

recommendations of Plaintiff's chain of command, decided, on May 3, 2010, to separate Plaintiff

from USMA.  The Superintendent, however, suspended the separation and turned Plaintiff back a

year to graduate with the class of 2012.  The Superintendent also directed that Plaintiff enroll in

and complete the Honor Mentorship Program.  Before issuing his May 3 order the

Superintendent was obligated by USMA policy to review the entire record of Plaintiff's case and

to make an independent determination that the allegations of cheating were supported by a

greater weight of evidence than supported a contrary conclusion.  (USCC Pam 15-1 ¶ 506)

Additionally, the Superintendent had an obligation to note any errors in the proceeding and to

take action to redress those errors as appropriate, including convening a new HIH if required.

(USCC Pam 15-1 ¶ 506)

Second, the ASA(M&RA) decided, on August 23, 2011, to separate Plaintiff from West

Point.  The ASA based his decision on the Superintendent's recommendation and his

independent review of the case.  This is the final agency decision that Plaintiff challenges as

arbitrary and capricious.

17

When a military member seeks to overturn the final decision of a military correction board, or in this case the Secretary of the Army's representative, the Court has a very limited scope of review.  Under the APA, the Court will overturn an agency decision only if it is "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A); Wolfe v. Marsh, 835 F.2d 354, 358 (D.C. Cir. 1987).  In considering a military personnel decision "this circuit recognized that the military is a specialized community in which the balance between freedom and discipline differs from that of civilian society.  Only when the denial of freedoms is arbitrary, capricious, and irrational should the federal courts intervene in military matters."  Gutierrez v. Laird, 346 F. Supp. 289, 290 (1972).  "This deferential standard is calculated to ensure that the courts do not become a forum for appeals by every soldier dissatisfied with his or her ratings, a result that would destabilize military command and take the judiciary far afield of its area of competence."  Cone v. Caldera, 223 F.3d 789, 793 (D.C. Cir. 2000) (citing Orloff v. Willoughby, 345 U.S. 83, 94 (1953)).

An agency action is arbitrary and capricious if the agency has failed to follow procedure as required by law (5 U.S.C. §706(2)(D)), or has entirely failed to consider an important aspect of the problem.  See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29 (1983).  Review of the agency's decision is not de novo, it is limited to the administrative record that was before the agency.  See Florida Power & Light Co. v. Lorion, 470 U.S. 729, 743 (1985); McDougall v. Widnall, 20 F. Supp.2d 78, 82 (D.D.C. 1998) (citations omitted).

To prevail in this Court, the Plaintiff must "overcome the 'strong, but rebuttable, presumption that administrators of the military, like other public officers, discharge their duties correctly, lawfully, and in good faith.'"  Frizelle v. Slater, 111 F.3d 172, 177 (D.C. Cir. 1997) (citation omitted).  It is well-settled that to rebut this presumption, a Plaintiff must establish

18

through "cogent and clearly convincing evidence" that the Agency's findings were arbitrary, capricious, unsupported by substantial evidence, or contrary to law or regulations. Wronke v. Marsh, 787 F.2d 1569, 1576 (Fed. Cir. 1986) (citation omitted); McDougall, 20 F. Supp.2d at 82; Walker v. Shannon, 848 F. Supp. 250, 254 (D.D.C. 1994).  Only the most egregious agency decisions do not satisfy this very deferential standard of review.  Kreis v. Sec'y of the Air Force, 866 F.2d 1508, 1515 (D.C. Cir. 1989).

"[T]he function of this Court is not to serve as a super correction board that reweighs the evidence." Charette v. Walker, 996 F. Supp 43, 50 (D.D.C. 1998).  In reviewing agency action under the APA's arbitrary and capricious standard, a Court "will not disturb the decision of an agency that has 'examined the relevant data and articulated a satisfactory explanation for its action including a rational connection between the facts found and the choice made.'" MD Pharm., Inc. v. Drug Enforcement Admin., 133 F.3d 8, 16 (D.C. Cir. 1998) (quoting Motor Vehicle Mfrs. Ass'n., 463 U.S. at 43).  The requirement that an agency provide a rational explanation for its action "does not mean that an agency's decision must be a model of analytic precision to survive a challenge.  A reviewing court will 'uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned.'" Dickson v. Sec'y of Defense, 68 F.3d 1396, 1404 (D.C. Cir. 1995) (citation omitted).  Indeed, "while the broad grant of discretion implicated here does not entirely foreclose review of the Secretary's action, the way in which the statute frames the issue for review does substantially restrict the authority of the reviewing court to upset the Secretary's determination." Kreis, 866 F.2d at 1514.

Applying this unusually deferential standard to the military decision to vacate Plaintiff's suspended separation leads to only one conclusion:  the decisions are supported by substantial evidence and are not close to the types of decisions considered by this Court as arbitrary and

capricious.  As stated, Plaintiff failed the objective and subjective components of the HMP.

Plaintiff failed to begin the HMP process in the Spring 2010 term; refused to wear the

appropriate cadet rank; and failed to begin the HMP program for over a month in the Fall 2010

term, including the failure to submit a character development plan and the failure to properly

submit journals.  (AR 21)  Moreover, rather than reflect, Plaintiff submitted essays exhibiting

contempt and disdain for the institution which gave him another chance.  (AR 24-31)  Nowhere

did Plaintiff attempt to resolve his integrity issues in a manner consistent with the character

required of a future leader of the U.S. Army.  When confronted Plaintiff agreed and did not

provide any statement in response.  (AR 22)  Presented with this overwhelming evidence, the

Superintendent and ASA (M&RA) rightfully concluded Plaintiff failed the HMP.

      1.    <u>Plaintiff is not entitled to due process in the revocation of his suspended</u>
<u>separation.  (Count 2)</u>

The Fifth Amendment to the United States Constitution provides that "No person shall . .

. be deprived of life, liberty, or property, without due process of law."  <u>See</u> U.S. Const. amend.

V.  Courts engage in a two-step process in examining procedural due process claims.  <u>See, e.g.,</u>

<u>Kentucky Dept. Of Corr. v. Thompson</u>, 490 U.S. 454, 460 (1989).  "The first inquiry in every

due process challenge is whether the plaintiff has been deprived of a protected interest in

'liberty' or 'property.'  Only after finding the deprivation of a protected interest do we look to

see if the [government's] procedures comport with due process."  <u>General Electric v. Jackson</u>,

610 F.3d 110, 117 (D.C. Cir. 2010) (quoting <u>Amer. Mfrs. Mut. Ins. v. Sullivan</u>, 526 U.S. 40, 59

(1999)).

Not all deprivations of liberty or property are protected by the Constitution.  <u>See, e.g.,</u>

<u>Regents of State Colleges v. Roth</u>, 408 U.S. 564, 570 (1972) (noting that "the range of interests

protected by procedural due process is not infinite."); <u>CNG Transmission Corp. v. FERC</u>, 40

F.3d 1289, 1295 (D.C. Cir. 1994) ("Not every economic interest of unilateral expectation of

economic gain rises to the level of a protectable property right for purposes of due process

analysis.").  "By its terms, the Due Process Clause does not apply unless an individual can show

that the government action at issue deprives [it] of an actual interest in life, liberty, or property."

<u>Fried v. Hinson</u>, 78 F.3d 688, 691-92 (D.C. Cir. 1996).

     A liberty or property interest entitled to procedural due process may arise from the

Constitution itself or from an interest created by state laws or policies.  <u>See</u> <u>Wilkinson v. Austin</u>,

545 U.S. 209, 221 (1980).  Defendant recognizes that at one point Plaintiff had a property or

liberty interest in maintaining his status as a cadet at West Point. <u>See generally</u>, <u>e.g.</u>, <u>Andrews v.</u>

<u>Knowlton</u>, 509 F.2d 989 (2d Cir. 1975).  However, that interest was extinguished on May 3,

2010, when the Superintendent determined Plaintiff should be separated but suspended his

separation as a matter of clemency.

     As previously recounted, on March 8, 2010, Plaintiff received a HIH that served as the

basis for the Superintendent's decision to separate Plaintiff from USMA and his associated

decision to suspend the separation until Plaintiff's new 2012 graduation date.  The

Superintendent affirmatively stated that "the terms of the suspension will be considered to have

been violated if Cadet Spadone: . . . (2) Fails to complete any requirement under the USMA

Honor Mentorship Program."  (AR 32)  In conclusion the Superintendent stated, "If a violation

of the terms of this suspended separation occurs during the suspension period, then the

suspended separation will be vacated."  (AR 32)

     Plaintiff did not object to these terms and reluctantly continued under the terms of this

suspension.  (AR 11)  On October 26, 2010, Plaintiff's tactical officer counseled him on the fact

that he failed the HMP program, a term of his suspension.  (AR 21-22)  Plaintiff agreed with the

counseling and provided no remarks in response.  (AR 22)  Based on the counseling and input

from the chain of command and after considering comments from Plaintiff's counsel, the

Superintendent determined that "Cadet Spadone has violated the terms of his suspended

separation by his failure to complete the requirements of the USMA Honor Mentorship

Program."  (AR 6)  He forward Plaintiff's file to the ASA (M&RA) who approved the

recommendation to separate Plaintiff from the Academy.  (AR 3)

      Following this timeline, it is evident that Plaintiff, after being afforded a hearing with

personal presence and the right to present evidence in his defense, was separated from the

Academy.  Thus, Plaintiff's protected liberty or property interest in his status as a cadet was

terminated after receiving a full and fair hearing.  From there, Plaintiff remained at West Point at

the discretion of the Superintendent as a matter of clemency.  Because any liberty or property

interest he had in remaining a cadet was extinguished, no further process was required.

      Courts have repeatedly held that no protected interest is created when the interest is

subject to the unfettered discretion of the government.  See, e.g., Washington Legal Clinic for the

Homeless v. Barry, 107 F.3d 32, 3638 (D.C. Cir. 1997) ("To determine whether a particular

statute creates a constitutionally protected property interest, we ask whether the statute or

implementing regulations place substantive limitations on official discretion."); Kentucky Dept.

Of Corr. v. Thompson, 490 U.S. 454, 462 (1989) ("a State creates a protected liberty interest by

placing substantive limitations of official discretion.").  Here, there is no substantive limitation

on the Superintendent's ability to vacate Plaintiff's suspension.  The Superintendent exercised

his discretion and allowed Plaintiff to remain a cadet, subject to certain conditions.  Those

conditions included successful completion of the HMP.  "Failure to successfully complete the

Honor Mentorship Program results in the Superintendent vacating the suspension and separating the cadet immediately." (USCC Pam 15-1 ¶ 603.a.) The determination that Plaintiff failed the HMP is discretionary in nature and nonjusticiable. Because the Superintendent had the discretion to make that determination there is no basis for finding that Plaintiff has a constitutionally protected interest.

Plaintiff may claim that the Superintendent's decision to revoke his suspension adversely affected his liberty interest in his "reputation." While this cannot be the case since Plaintiff was already separated, it is well-settled that harming a person's reputation may be a "tort actionable under the laws of most States, but [it is] not a constitutional deprivation." Siegert v. Gilley, 500 U.S. 226, 233 (1991). In Paul v. Davis, 424 U.S. 693, 701 (1976), for example, the plaintiff alleged that police officers violated his due process rights by including his name on a flyer of "active shoplifters." Id. In rejecting the plaintiff's due process claim, the Supreme Court held that "[t]he words 'liberty' and 'property' as used in the [Constitution] do not in terms single out reputation as a candidate for special protection over and above other interests that may be protected by state law." Id. Thus, the plaintiff's due process claim failed. Id.

Similarly, in Siegert a federal employee alleged that his former supervisor defamed him by providing a negative reference. See 500 U.S. at 226-229. The employee filed suit against the former supervisor, alleging that the defamatory statements violated his constitutional rights. Id. at 229-230. The Supreme Court recognized that the allegedly defamatory statements "would undoubtedly damage [the plaintiff's] reputation," but the Court held that his claim failed because there is no "constitutional protection for the interest in reputation." Id. at 233-35.

There is an exception to this rule where the harm to the plaintiff's reputation effectively deprives him of a protected property or liberty interest. See, e.g., Nat'l Council of Resistance to

23

Iran v. Dept. of State, 251 F.3d 192, 203-04 (D.C. Cir. 2001) (due process claim cognizable when allegedly stigmatizing posting also denied plaintiff right to have a bank account); Kartseva v. Dept. of State, 37 F.3d 1524, 1528-29 (D.C. Cir. 1994) (due process claim available when allegedly stigmatizing action effectively denied plaintiff right to pursue work as translator). As the District of Columbia Circuit has explained,

> Loss of present or future government employment, however, satisfies that required additional interest. . . . [Also, a] government discharge does not by itself constitute an injury to an employee's liberty interest in reputation; a plaintiff must allege that the government has actually stigmatized his or her reputation by, for example, charging the employee with dishonesty, and that the stigma has hampered future employment prospects.

Doe v. DOJ, 753 F.2d 1092, 1111 (D.C. Cir. 1985).

Neither of these aspects are at issue here. First, Plaintiff has not lost present or future government employment. While he contests his contractual obligations, the Army has decided that he shall serve, pursuant to his contract, as an enlisted Soldier. (AR 3) Furthermore, while disenrolled as a cadet, Plaintiff is not discharged from the Army. Therefore, Plaintiff does not have an adverse characterization of service or adverse discharge in his military records. In other words, no constitutionally cognizable stigma attaches to his changed status from cadet to Soldier. Accordingly, Plaintiff has no due process right in the decision to vacate his suspended separation and the order to serve as an enlisted Soldier. Therefore, his claim fails.

    2.    Plaintiff's Notice and Opportunity to be Heard Prior to Separation Provided Sufficient Due Process. (Count 2)

To the extent Plaintiff had a protected interest prior to vacation of his suspended separation, his due process rights were adequately protected by giving him notice of the Superintendent's decision and an opportunity to respond. The due process component of the

24

Fifth Amendment "is not a technical conception with a fixed content unrelated to time, place, and circumstances." Cafeteria & Rest. Wrkrs. v. McElroy, 367 U.S. 886, 895 (1961). Rather, "due process is flexible and calls for such procedural protections as the particular situation demands." Morrissey v. Brewer, 408 U.S. 471, 481 (1972). The "fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." Matthews, 424 U.S. at 333.

This Court recognizes that "service academies are subject to the Fifth Amendment and that cadets and midshipmen must be accorded due process before separation." Lebrun v. England, 212 F. Supp. 2d 5, 16 (D.D.C. 2002) (quoting Andrews v. Knowlton, 509 F.2d 898, 904 (2d Cir. 1975)). This Court has found that a service academy cadet facing involuntary separation "must have a hearing, be apprised of the specific charges against him, and be given an adequate opportunity to present his defense both from the point of view of time and the use of witnesses and other evidence." Lebrun, 212 F. Supp. 2d at 16 (quoting Andrews, 509 F.2d at 904-05). "However, "[w]hat process is due is not [always] so clear ... [and] except in certain standard situations, 'due process is flexible and calls for such procedural protections as the particular situation demands.'" Lebrun, 212 F. Supp. 2d at 16 (quoting Wimmer v. Lehman, 705 F.2d 1402, 1404 (4th Cir.1983)).

Plaintiff, received a full hearing with all associated procedural protections before the Superintendent recommended separating him from USMA. However, in the context of cadets like Plaintiff, facing revocation of a suspended separation imposed after a full administrative hearing, notice of the Superintendent's decision and an opportunity to respond satisfies any arguable due process requirements.

25

Prior to his HIH in March 2010, the cadet secretary of the USMA honor committee informed Plaintiff in writing of his pending hearing and the specific allegations the board would consider.  (AR 483-86)  Also, the secretary informed Plaintiff of his substantial rights at the hearing, including the right to remain silent, the right to consult with counsel before all proceedings, the right to call witnesses and present evidence, the right to object to evidence, the right to appear personally, and the right to challenge board members, among others.  (AR 483-86)  Plaintiff understood these rights and he exercised them before and during the hearing.  In a pre-hearing session he chose to admit to cheating on one of the two essays at issue in his case.  (AR 158)  He indicated to the board that he had sufficient time to prepare for the hearing.  (AR 231)  He challenged evidence (AR 505-507), questioned the key witness at the hearing (AR 263-283), and testified on his own behalf after waiving his right to remain silent.  (AR 258-259).  The board found that Plaintiff cheated on both essays.

At this point in the process, the Plaintiff had the opportunity to present evidence to the board pertaining to his retention as a cadet.  (USCC Pam 15-1 ¶ 406.l.)  He had the option of making a statement to the board or presenting general character statements to help the board assess his resolve to live honorably.  (USCC Pam 15-1 ¶ 406.l.)  Again, Plaintiff exercised his rights.  He called character witnesses including Major Denehy, his tactical officer (AR 356-63); Lieutenant Colonel Scott Billie, his former instructor (AR 365-69); Sergeant First Class Robert Bright, his Tactical non-commissioned officer, (AR 370-73); and Major Hannon Didier, his former instructor (AR 380-83).  Plaintiff also called a member of his company, Cadet Matthew Krause (AR 374-79), to give a fellow cadet's view of his character and resolve to live honorably.  Finally, Plaintiff called Laura Vetter, his former professor who also worked closely with him on his application to go to Cambridge for a semester, who presented strong testimony about his

26

character.  (AR 384-93)   Plaintiff then addressed the board again on his own behalf.  The board

members forwarded their recommendations to the Superintendent for his consideration and seven

of the nine members recommended the Superintendent grant discretion in Plaintiff's case that

would allow him to stay at USMA.  (AR 45)

Even after the substantial procedural protections enforced at the HIH, the Superintendent

was not bound by the results and had the obligation to review the entire record, including post-

hearing recommendations from the special assistant for honor matters, Plaintiff's chain of

command, and the staff judge advocate.  (USCC Pam 15-1 ¶ 506)  Plaintiff had the right to

submit rebuttal matters for the Superintendent's consideration, but did not exercise that right.

(AR 33.)   The Superintendent could only find that Plaintiff violated the honor code if he

determined, based on his review, that a "greater weight of evidence . . . exist[s] than supports a

contrary conclusion."  (USCC Pam ¶ 506b.)  The Superintendent found that Plaintiff violated the

honor code and approved the HIH findings.  (AR 32)

The applicable West Point regulation explicitly states that "Cadets who are found to have

violated the Cadet Honor Code will normally be separated from the Military Academy," but

allows the Superintendent discretion to retain a cadet at USMA.  (AR 210-26 ¶ 6-16.c.)  The

Superintendent may also award "punishments under paragraph 6-4 of this regulation."  (AR 210-

26 ¶ 6-16.c.)  Paragraph 6-4 states, "The Superintendent may, at his or her discretion, under such

terms and conditions as deemed appropriate, suspend his or her recommendation for separation,

or other punishments awarded by him . . . ."  (AR 210-26 ¶ 6-4)  Thus, the applicable regulation

authorizes the Superintendent to exercise discretion over the terms of the suspended separation.

In Plaintiff's case the Superintendent exercised that discretion by informing Plaintiff that if he

failed "to complete any requirement under the USMA Honor Mentorship Program … then the

suspended separation will be vacated." (AR 32)  The USMA regulation also supports vacating a

cadet's suspended separation without another administrative hearing.  It states, "Failure to

successfully complete the Honor Mentorship Program results in the Superintendent vacating the

suspension and separating the cadet immediately." (USCC Pam 15-1 ¶ 603.a.)

    This procedure, whereby the Superintendent may revoke a suspended separation,

comports with due process.  In Codd v. Velger the Supreme Court held that when the elements of

a stigmatizing discharge are present, "the remedy mandated by the Due Process Clause of the

Fourteenth Amendment is 'an opportunity to refute the charge.' " Holley v. U.S., 124 F.3d 1462

(Ct. Cl. 1997) (quoting Codd v. Velger, 429 U.S. 624, 627 (1977) (internal citations omitted)).

The Supreme Court stated, "When we consider the nature of the interest sought to be protected,

we believe the absence of any such allegation or finding [that the derogatory information was

substantially false] is fatal to respondent's claim under the Due Process Clause that he should

have been given a hearing." Codd, 429 U.S. at 627.  The Court of Federal Claims applied this

standard to a case involving an Army officer who was separated after having received notice of

his impending separation and an opportunity to respond, but no hearing.  Holley, 124 F.3d at

1470.  The court stated that Holley's "termination did not violate due process, for he received

notice of the charges and an opportunity to respond before the termination was implemented, as

required by Egan, and it is conceded that the [derogatory] information was not false, as discussed

in Codd." Id.  Likewise, Plaintiff in this case received notice and an opportunity to respond and

the underlying basis for his separation is not false.

    Thus, the procedures applicable in this case satisfied due process.  Before deciding to

separate Plaintiff, the Superintendent ensured Plaintiff had notice of the allegations against him,

a full administrative hearing, and a meaningful opportunity to present his defense, including

adequate time to prepare along with the ability to call witnesses and present evidence.  After deciding to separate Plaintiff, but also to allow him to remain a West Point in a suspended separation status, the Superintendent had the discretion to determine whether to vacate the suspension and, if so, under what terms.  Because Plaintiff failed to satisfy the terms of the Honor Mentorship Program, and based on recommendations from relevant officials in the chain of command, the Superintendent vacated the suspended separation under the terms of his notice to Plaintiff in the May 3, 2010 order, and the relevant USMA regulations.  (AR 18)  Nonetheless, the superintendent provided Plaintiff notice and an opportunity to respond prior to forwarding his recommendation to the ASA.  (AR 4-15)  The Superintendent considered Plaintiff's rebuttal before making his final recommendation to the ASA and the ASA, likewise, had the benefit of Plaintiff's rebuttal prior to making his decision to separate Plaintiff.  (AR 4-6)

        3.    <u>There is no binding timeline for processing honor cases that is addressable under the APA.</u>  (Counts 3 and 4)

Plaintiff contends that USMA officials took too long to process his case prior to his Honor Investigative Hearing in March 2010.  (Compl. ¶ 118.)  However, the APA enables claimants to challenge agency action unlawfully withheld or challenge agency action that is arbitrary and capricious.  Specifically, the APA authorizes a reviewing court to "compel agency action unlawfully withheld or unreasonably delayed" or to "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law [or]  contrary to constitutional right, power, privilege, or immunity . . . ."  5 U.S.C. § 706.  Here, Plaintiff cannot contend that the agency decision has been unlawfully withheld since the ASA has made a decision to separate Plaintiff from USMA.  Instead, Plaintiff contends that the process in arriving at the decision to separate Plaintiff took

too long and deprived him of his constitutional right to due process.  He is incorrect because there is no requirement that USMA process honor violation cases within any particular time.

The applicable USMA pamphlet says, "The Secretary of the Army recommended to the Superintendent that the United States Military Academy process all cadet honor investigations within 60 duty days.  However, the Academy goal is to process honor cases in 40 duty days commencing with the inception date through the Superintendent's decision."  (USCC Pam 15-1 ¶ 507a.)  West Point, therefore, has established procedures – which it largely satisfied in this case – to process cases within the Secretary's recommended 60 days.[6]  In fact, from Plaintiff's notification concerning his second honor violation, academy officials processed his case in 62 days under the regulation.[7]  In any event, the 60 day recommended processing timeline and West Point's internal 40 day "goal" do not amount to enforceable regulatory provisions and are, instead, non-binding.

The D.C. Circuit Court of Appeals has said,

> A non-binding but valid policy statement or interpretive rule may seem a contradiction in terms, but our cases make clear that such statements can affect an agency's decisionmaking.  See Brock v. Cathedral Bluffs Shale Oil Co., 796 F.2d at 537 (a policy may have "'some substantive impact,' as long as it leave[s] the administrator free to exercise his informed discretion") (quoting Guardian Fed. Sav. & Loan Ass'n v. Federal Sav. & Loan Ins. Corp., 589 F.2d 658, 666, 668 (D.C.Cir.1978)).  But the agency remains free in any particular case to diverge from whatever outcome the policy statement or interpretive rule might suggest.  See, e.g. Jolly v.

---

[6]  The regulation excludes certain days from the processing timeline.  For example, weekends are excluded.  (15 USCC Pam 15-1 ¶ 507.c.)  The relevant academic calendars are attached to Mr. Dalton's declaration.

[7]  Instead of conducting two separate honor investigative hearings, the commandant delayed referring the first alleged honor violation to a hearing until the investigation of the second allegation was complete.  Both allegations were referred to a single HIH.  (AR 481)  The pamphlet is silent about processing under these circumstances.  Movever, it is disingenuous for Plaintiff to claim his due process rights were infringed upon regarding the first cheating allegation given that he admitted to this allegation at the HIH.

> Listerman, 672 F.2d 935, 940-41 (D.C.Cir.1982) (agency did not have to follow Personnel Manual as the relevant provision was "intended to be something less than a binding rule.... [Its] impact ... is clearly informative, perhaps precatory, but certainly not directive or mandatory."). In such a case, any affected private party is free to appeal to the agency for such a divergent result. See McLouth, 838 F.2d at 1324-25."

Vietnam Veterans of America v. Secretary of the Navy, 843 F.2d 528, 537-538 (D.C. Cir.1988).

Notably, the regulation governing West Point policy and procedure does not refer to the Secretary's 60-day processing recommendation or West Point's internal 40-day processing goal. Instead, the regulation says simply that "[t]he Superintendent will establish and maintain a system to administer the Cadet Honor Code." (AR 210-26 ¶ 6-16.a.) The Superintendent has exercised the discretion he has in administering the cadet honor code by setting a 40-day processing goal; however, that goal is not a binding timeline that gives rise to legal actions from dissatisfied former cadets under the APA. Instead, Plaintiff had the opportunity to raise the issue to the Superintendent for his consideration.[8] Further, plaintiff has made no effort to show how he was prejudiced by the processing time in his case.

        4.    USMA Officials provided plaintiff correct advice about his military service obligation. (Count 5 and Count 8)

Plaintiff contends advice he received about his military service obligation is actionable under the APA. (Compl. ¶ 131.) In essence, Plaintiff seeks to estop Defendant from enforcing plaintiff's service obligation agreement due to Plaintiff's detrimental reliance on the allegedly

---

[8] In the only case Defendant has indentified directly considering the 60-day processing recommendation, the court refused to reach the merits due to plaintiff's failure to exhaust administrative remedies: "As to matters raised by Phillips in this Court regarding procedural irregularities . . . stages in the administrative review process remain in which such alleged procedural irregularities may be addressed. This is especially true as to the asserted violation of the '60–day rule,' which is imposed by the Secretary of the Army on the Academy." Phillips v. U.S., 910 F.Supp. 101, 107 (E.D.N.Y. 1996).

incorrect advice he relieved from USMA officials.  When he entered USMA plaintiff signed a

contract wherein he agreed:

> That if I fail to complete the course of instruction of the United
> States Military Academy, breach my service agreement as defined
> in paragraph 1.g.(4), Statement of Policies on the next page, or
> decline to accept an appointment as a commissioned officer, I will
> serve on active duty as specified in paragraphs 1.b. through l.f.,
> which are contained in the Statement of Policies on the next page.

(AR 47.)  Because he entered USMA from a civilian status with no prior service obligation,

paragraph 1.e. of the Statement of Policies applies to plaintiff:

> A cadet who has commenced his or her Second Class academic
> year and who resigns or is separated prior to completing the course
> of instruction, except for physical disqualification, unfitness, or
> unsuitability, will normally be transferred to a Reserve Component
> in an enlisted status and, if deemed to have breached his or her
> service agreement, may be ordered to active duty for not less than
> two years (10 USC 4348(b)) but no more than four years.  The
> Secretary of the Army or his/her designee will retain final authority
> to order the individuals to active duty.

(AR 48.)  Plaintiff avers that because the Superintendent turned him back a class to graduate

with the class of 2012 instead of the class of 2011 that he had not incurred a service obligation.

Further, he states that he received improper advice from two West Point officials – one of whom

was his legal assistance attorney (Compl. ¶ 56; AR 503) – who both told him that he incurred a

service obligation when he started his second class year.   Plaintiff states that he would have left

West Point had he been able to do so after his Honor Investigative Hearing and that he did not

because of the advice he received about his service obligation.

   As an initial matter, "The Supreme Court has explained that 'equitable estoppel will not

lie against the Government as it lies against private litigants.'" <u>International Union v. Clark</u>,

2006 WL 2598046, 11 (D.D.C. 2006) (quoting <u>Office of Personnel Management v. Richmond</u>,

496 U.S. 421 (1999)).   While the Supreme Court has not resolved whether an equitable estoppel

claim can ever be had against the government, "It is clear . . . that even if equitable estoppel does

apply to the Government, any such application "must be rigid and sparing" and that the case for

estoppel "must be compelling."" U.S. v. Philip Morris Inc., 300 F. Supp. 2d 61, 70 (D.D.C.

2004) (quoting ATC Petroleum, Inc. v. Sanders, 860 F.2d 1104, 1111 (D.C. Cir. 1988)).   The

elements necessary to satisfy an equitable estoppel claim include:  (1) false representation, (2) a

purpose to invite action by the party to whom the representation was made, (3) ignorance of the

true facts by that party and (4) reliance.  U.S. v. Philip Morris Inc., 300 F. Supp. 2d at 71.

Plaintiff's claim, to the extent he can bring it against the government, fails on the first element.

Here, there was no false representation.  The language of Plaintiff's service obligation

agreement is clear and unequivocal:  "A cadet who has commenced his or her Second Class

academic year and who resigns or is separated prior to completing the course of instruction"

incurs a service obligation as described in the agreement.  The agreement is supported by Army

regulation, which states that "[a] cadet who has commenced his or her Second Class academic

year and who resigns or is separated prior to completing the course of instruction."  (AR 210-26

¶ 7-1b(1)(b))

Thus, once a cadet starts his or her third year, the obligation attaches, regardless of the

cadet's status at the end of the year.  Not only is the language plain, but the unsupported view

held by Plaintiff defies common sense.  If an obligated third year cadet was no longer obligated

upon being turned back to a lower class then presumably turned-back third year students would

simply leave the academy, which is exactly what Plaintiff says he would have done had he been

able.  Plaintiff started the first term of his Second Class academic year in August 2009 and by

doing so incurred a service obligation as described in his signed agreement and Army regulation.

33

Moreover, assuming Plaintiff's claim has merit, cadet could merely commit an honor violation or

misconduct in an effort to get turned back and escape their commitment to the nation. This is not

sound policy or a logical argument. Finally, even if he had received improper advice on this

point, such advice would not support estopping the government from enforcing his service

obligation. See Boulez v. C.I.R., 810 F.2d 209, 219 n.68 (D.C. Cir. 1987) ("those who deal with

the Government are charged with knowledge of applicable statutes and regulations."); Merrill v.

Federal Crop Ins. Corp., 332 U.S. 380, 384 (1947); OPM v. Richmond, 496 U.S. 414, 421

(1990).

     5.     USMA Officials properly advised plaintiff of his Article 31 rights
throughout the investigations into his honor code violations.

The USMA pamphlet detailing honor investigation procedures mandates that USMA

officials read a cadet his or her rights under Article 31[9] of the Uniform Code of Military Justice

when the officials "know or suspect an honor violation has occurred." (USCC Pam 15-1 ¶ 202)

Conversely, officials may question cadets without first informing them of their rights if the

officials are "not sure whether a violation has occurred." (USCC Pam 15-1 ¶ 202) The intent is

to allow officials the flexibility to seek clarification on ambiguous situations without resorting to

a full investigation. (USCC Pam 15-1 ¶ 202)

Plaintiff asserts that he was asked questions and that he gave statements without the

benefit of having been warned of his right to remain silent. (Compl. ¶ 138) However, as noted

---

[9] Article 31 of the Uniform Code of Military Justice states in relevant part:

> No person subject to this chapter may interrogate, or request any statement from an
> accused or a person suspected of an offense without first informing him of the nature of
> the accusation and advising him that he does not have to make any statement regarding
> the offense of which he is accused or suspected and that any statement made by him may
> be used as evidence against him in a trial by court-martial.

10 U.S.C. § 831. While applicable to courts-martial, Article 31's exclusionary rule by its express
terms does not apply to administrative hearings, such as an HIH.

above, such questioning is permissible under the regulation.  In this case plaintiff challenged the

admission of certain statements (AR 505 -506) and the hearing officer fully explored the issue on

the record.  (AR 71-99.)  The hearing advisor summarized the basis for his decision that Dr.

Sabatos had properly followed the procedures in the pamphlet for questioning Plaintiff:

> After reviewing the statements for the fourth time and then
> listening to her testimony, I concluded that it was an appropriate
> approach for clarification because she vehemently stood upon the
> ground that she legitimately thought that there could have been a
> reasonable explanation for the improper citations concerning your
> second allegation. And that's why she did an approach for
> clarification.

(AR 197)

The regulation allows officials to approach cadets for clarification and the contested

statements involved such an approach.  Plaintiff's professor adamantly maintained that she

approached plaintiff in the hope of identifying a reasonable explanation for the citation

discrepancies in Essay # 4.  (AR 70-106)  The professor's decision not to read plaintiff his

Article 31 rights before discussing Essay # 4 was neither arbitrary nor capricious, nor was the

decision to admit the statements made by the hearing advisor.  (AR 196-98)

Likewise, her decision did not violate Plaintiff's due process rights.  The hearing advisor

thoroughly examined the professor concerning her motives in questioning plaintiff and

concluded she properly approached him for clarification without warning him under Article 31.

(AR 197)  Therefore, the hearing advisor allowed the contested statements to go before the

Honor Investigative Hearing.

In any event, the exclusionary rule does not apply to Honor Investigative Hearings.  The

honor procedures pamphlet states in relevant part:

> (e) Involuntary Admissions. The exclusionary aspects of Article
> 31, by its terms, does not apply to administrative proceedings such
> as an HIH or CAB.  The HA will ensure that the HIH will not
> accept a Respondent's statement obtained by unlawful coercion, or
> inducement likely to affect its truthfulness, or in situations where
> the admission of the subject evidence would be contrary to fairness
> and fundamental due process.  However, the fact that a Respondent
> was not advised of his/her Article 31 rights does not, of itself,
> prevent acceptance of the confession or its admission as evidence.

(USCC 15-1 ¶ 406.g.(4)(e))  Here, the hearing advisor satisfied himself that Dr. Sabatos properly

approached Plaintiff for clarification and therefore was not required by regulation to read

Plaintiff his Article 31 rights.  However, even if he had come to the opposite conclusion the

challenged statements would still have been admissible under the regulation.[10]

The ultimate question is whether the Superintendent's decision to approve the HIH

findings and to place Plaintiff in a suspended separation status was arbitrary and capricious under

the APA.  It was not.  The Superintendent was able to review the statements in question, Dr.

Sabatos's testimony concerning her adherence to the regulation, and the hearing advisor's

findings concerning the issue.  Under the circumstances presented, his decision to approve the

HIH was not arbitrary or capricious.

D.    Plaintiff Has Not Pled a Jurisdictional Basis for his Unjust Enrichment Claim.

"[T]he United States, as sovereign, is immune from suit save as it consents to be sued ...

and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the

suit. " Hercules Inc. v. U.S., 516 U.S. 417, 422-423 (1996) (quoting United States v. Testan, 424

U.S. 392, 399 (1976) (internal quotations omitted)).  The Tucker Act serves as the jurisdictional

basis for plaintiffs to sue the United States for claims arising in contract.  28 U.S.C. § 1491(a).

---

[10]  Had officials obtained statements from Plaintiff in violation of his Article 31 rights, those statements would not
be admissible against Plaintiff at a court-martial.  Moreover, any error, if one exists, is harmless given the fact that
Plaintiff chose to testify at the HIH.  (AR 312-28)

"The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded . . . upon . . . any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." Id. The Little Tucker Act provides jurisdiction for district courts to hear claims on the same basis for damages of less than $10,000.   28 U.S.C. § 1346(a)(2).

However, these provisions empower the federal courts to hear "only actions for money judgments and not suits for equitable relief against the United States." Richardson v. Morris, 409 U.S. 464, 465 (1973).  The Supreme Court held "that § 1346(a)(2) 'empowers district courts to award damages but not to grant injunctive or declaratory relief.'" Wright v. Foreign Service Grievance Bd., 503 F.Supp.2d 163, 178 (D.D.C. 2007) (quoting Lee v. Thornton, 420 U.S. 139, 140 (1975)).

Further, "We have repeatedly held that this jurisdiction extends only to contracts either express or implied in fact, and not to claims on contracts implied in law." Hercules Inc., 516 U.S. at 423.  The court described the difference:

> "An agreement implied in fact is founded upon a meeting of minds, which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding.  By contrast, an agreement implied in law is a fiction of law where a promise is imputed to perform a legal duty, as to repay money obtained by fraud or duress."

Id. at 424 (internal quotations and citations omitted).  The Court, therefore, lacks jurisdiction to entertain Plaintiff's unjust enrichment claim both because he asserts a contract implied in law and because he seeks equitable relief in the form of an injunction.

Here there was no express agreement between the parties concerning plaintiff's study abroad opportunity.  Plaintiff acknowledges as much in his complaint:  "[Plaintiff] reasonably

inferred from West Point's actions a promise that he would be allowed to participate in the Study Abroad Program." (Compl. ¶ 147.) Therefore, the only contract Plaintiff could possibly be suing on is a contract implied in law, which is not actionable. Further, Plaintiff has not pled Tucker Act jurisdiction in this case and has not cited a basis for the equitable relief he seeks related to this claim.

### E.    The Plaintiff Lacks Standing to Assert an Establishment Clause Claim.

Article III of the Constitution limits the jurisdiction of the federal courts to cases or controversies. U.S. Const. Art. III, § 2, cl. 1. As a consequence, "a showing of standing 'is an essential and unchanging' predicate to any exercise of a court's jurisdiction." Fla. Audubon Soc'y v. Bentsen, 94 F.3d 658, 663 (D.C.Cir. 1996) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)). Indeed, a Plaintiff's standing must be determined to establish the court's jurisdiction before the court may hear the case and reach the merits. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 101 (1998); The Grand Council of the Crees of Quebec v. FERC, 198 F.3d 950, 954 (D.C. Cir. 2000). Standing "focuses on the complaining party to determine 'whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues.'" Am. Legal Found. v. FCC, 808 F.2d 84, 88 (D.C. Cir. 1987)) (quoting Warth v. Seldin, 422 U.S. at 498). To withstand a motion to dismiss for lack of standing, a plaintiff must allege facts "demonstrating that he is a proper party to invoke judicial resolution of the dispute." FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 231 (1990). Moreover, "[s]tanding is not dispensed in gross. Rather, a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." Davis v. FEC, 128 S. Ct. 2759, 2769 (2008) (internal quotation marks and citations omitted).

38

To have Article III standing, a plaintiff must establish: "(1) [he] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., 528 U.S. 167, 180-181 (2000) (citing Lujan, 504 U.S. at 560-561) ("A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." Hein v. Freedom From Religion foundation, Inc., 551 U.S. 587, 588 (2007) (quoting Allen v. Wright, 468 U.S. 737, 751 (1984))). The injury alleged cannot be remote, speculative, or abstract; it must have occurred or be certainly impending. NTEU v. United States, 101 F.3d 1423, 1427 (D.C. Cir. 1996).

At bottom, to satisfy the "irreducible constitutional minimum" of standing the Plaintiff must show that the injury at issue in the case is "fairly traceable to the challenged action of the defendant." Lujan, 504 U.S. at 560.  Here, the injury the Plaintiff has asked the court to redress is his alleged unlawful dismissal from USMA.  While he asserts an Establishment Clause violation in his complaint, the claim is not logically tied to the underlying issue in the case.

After his HIH/CAB, Plaintiff was required to undergo an interview with the Commandant. (USCC Pam 15-1 ¶ 505.f.)  After this interview, the Commandant makes his recommendation to the Superintendent.  (USCC Pam 15-1 ¶ 505.f.)  From there the Plaintiff is provided the recommendation and is allowed to submit matters in rebuttal.  (USCC Pam 15-1 ¶ 505.g.)

Plaintiff claims that during this interview with the Commandant, he was forced to read the "Cadet Prayer."  (Compl. ¶ 47)  According to Plaintiff, this was required based on an order

39

from the Commandant.  Plaintiff further claims that the order suggested that Plaintiff "was requird for religious reasons to admit to his purported dishonesty."  (Compl. ¶ 48)  There is not indiction in the administrative record this occurred.  Furthermore, the Plaintiff had the opportunity to raise this issue immediately afterwards and chose not to submit any information to the Superintendent.   Plaintiff claims this alleged violation warrants his readmission to West Point.[11]

Plaintiff states that the alleged requirement to read a prayer caused Plaintiff to "choose between engaging in religious activity or risking an even stiffer punishment for his purported Honor Code violation."  (Compl. ¶ 143)  However, Plaintiff's interview with the commandant occurred in April 2010, almost a year before the Superintendent signed his recommendation to the ASA in March 2011, and the Superintendent's recommendation to separate plaintiff from USMA for HMP failure was not based on the commandant's memorandum.  Instead, the Superintendent's recommendation to the ASA was based on memoranda from the Special Assistant for Honor, Major Daugherty; Plaintiff's tactical officer, Major Denehy; and Plaintiff's HMP mentor, Lieutenant Colonel Billie, among others.

In short, while the Plaintiff asserts that he was forced to read the Cadet Prayer, he does not contend that reading the Cadet Prayer contributed to the HIH finding that he violated the honor code, the Superintendent's recommendation concerning disposition after plaintiff's HMP failure, or the ASA (M&RA)'s decision to separate him from the Academy.  Plaintiff, therefore, has failed to satisfy the second element of standing by alleging "personal injury fairly traceable to the defendant's allegedly unlawful conduct" even if he was forced to read the Cadet Prayer almost a year earlier.  Hein, 551 U.S. at 588.

---

[11]  Notably, Plaintiff has only sued the Secretary of the Army in his official capacity.

Plaintiff also fails to satisfy the third requirement of constitutional standing that any injury resulting from being forced to read the Cadet Prayer is "likely to be redressed by the requested relief." Hein, 587 U.S. at 588. Plaintiff's requested relief, in substance, is that he either be readmitted to West Point or be discharged without being required to serve as an enlisted soldier. (Compl. ¶ 150.) Assuming the court grants Plaintiff's requested relief in this case, such relief will not redress the injury Plaintiff claims to have suffered by being forced to "choose between engaging in religious activity or risking an even stiffer punishment . . . ." (Compl. ¶ 143) Instead, to the extent Plaintiff seeks relief for government action that forces him to engage in religious activity in violation of the establishment clause, the proper remedy is an injunction precluding the government action. See Anderson v. Laird, 466 F.2d 283 (D.C. Cir. 1972). Therefore, Plaintiff lacks standing to assert his Establishment Clause claim and the court should dismiss the claim.

## V.  Conclusion

Plaintiff's case revolves around two decisions:  the USMA Superintendent's May 3, 2010 decision to separate him from West Point and the Assistant Secretary of the Army's decision to approve the Superintendent's separation recommendation.  These decisions comported with relevant regulations, were supported by substantial evidence, and were not arbitrary or capricious.  Plaintiff was afforded substantial procedural protections throughout the Army's processing of his case and had multiple opportunities protect his interests.  Having received an unfavorable result, he now challenges the Army's decision to separate him and order him to active duty as an enlisted soldier.  However, because the decisions complied with regulations and were not arbitrary or capricious, he cannot meet the high standard for revisiting these decisions under the APA.

Respectfully submitted,

RONALD D. MACHEN, JR., D.C. Bar # 447889
United States Attorney

RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

By: _____/s_____
DANIEL J. EVERETT
Special Assistant United States Attorney
Civil Division
555 Fourth Street, N.W.
Washington, D.C. 20530
daniel.everett@usdoj.gov
(202) 353-9895 / fax (202) 616-5200

Of Counsel:
Major Jacob Wolf
Litigation Attorney
U.S. Army Litigation Division
9275 Gunston Road
Fort Belvoir, Virginia 22060-5546
(703) 693-1014