# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ) | | |
| ALAN MATTHEW SPADONE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **Civil Action No. 11-1601 (RWR)** |
| v. | ) | |
| | ) | |
| JOHN M. McHUGH, | ) | |
| | ) | |
| Defendants | ) | |
| _____ | ) | |

## MEMORANDUM IN REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

Defendant filed a Motion to Dismiss, or, in the alternative, Motion for Summary Judgment under Fed. R. Civ. P. 12 and 56.  Plaintiff responded, opposing Defendant's motion, reiterating his tale of a coerced commitment and contrite cadet.  While novel, Plaintiff's creative storytelling exists only outside the administrative record.  As such, the agency's decision should be upheld because it is not arbitrary, capricious, or contrary to law.

## INTRODUCTION

Plaintiff's response fails to focus on the final agency decision at issue in this case.  While his suit challenges the Superintendent's and Assistant Secretary of the Army's final decision to separate Plaintiff from the United States Military Academy, Plaintiff nonetheless raises issues in his complaint and cross motion that have no bearing on that decision and which are not actionable under the Administrative Procedure Act ("APA").  The question before the Court is whether the Assistant Secretary's decision, as encompassed by the administrative record before the decision maker, was arbitrary and capricious under the standard of review applicable to

1

military personnel decisions.  Because the decision was reasonable and lawful the Court should grant judgment in favor of the defendant and dismiss Plaintiff's suit with prejudice.

**ANALYSIS**

**I.     PLAINTIFF MISUNDERSTANDS THE APA STANDARD OF REVIEW**

     **A.     Military Decisions Receive a Deferential Standard to Review under the APA Because of the Special Nature of the Military**

Plaintiff's cause of action arises under the APA, which enables the courts to enjoin a defendant from enforcing a decision the court determines is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).  District courts analyze military personnel decisions under a particularly deferential application of the APA standard.  "Only when the denial of freedoms is arbitrary, capricious, and irrational should the federal courts intervene in military matters." Gutierrez v. Laird, 346 F. Supp. 289, 290 (1972).

Without citation to any authority, Plaintiff suggests that because he did not pursue an administrative remedy before filing suit that the deferential APA standard of review for military personnel decisions is not applicable to this case.  (ECF No. 15 [hereinafter Pl. Opp.] at 6) Plaintiff merely concludes that "[s]ince Cadet Spadone has not presented his case to an administrative agency to review Defendant's decision, the Court should not be bound by the construct of acting as an 'appellate court' and the summary judgment standard normally assigned thereto."  (Pl. Opp. at 6) From there, Plaintiff turns administrative law on its head, citing the standard for granting summary judgment in typical cases.  He states, "[i]f reasonable minds could differ as the import of the evidence, however, a verdict should not be directed."  (Pl. Opp. at 6) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-251 (1986)).  In essence Plaintiff argues that because he did not first seek administrative relief from the agency, but

2

instead filed suit in district court, that a less deferential standard of review applies.  Such is not

the case.  Moreover, Plaintiff seeks to treat this case differently than the review of a typical case

under the APA.

The Supreme Court has determined that military personnel decisions are entitled to

judicial deference because,

> [J]udges are not given the task of running the Army.  [. . .]  The military
> constitutes a specialized community governed by a separate discipline from that
> of the civilian.  Orderly government requires that the judiciary be as scrupulous
> not to interfere with legitimate Army matters as the Army must be scrupulous not
> to intervene in judicial matters.

Orloff v. Willoughby, 345 U.S. 83, 93-94 (1953).  This is due to the fact that

> [I]t is difficult to conceive of an area of governmental activity in which the courts
> have less competence. The complex subtle, and professional decisions as to the
> composition, training, equipping, and control of a military force are essentially
> professional military judgments, subject always to civilian control of the
> Legislative and Executive Branches.

Gilligan v. Morgan, 413 U.S. 1, 10 (1973).

Regardless of the underlying basis for the cause of action, some military decisions are

unreviewable while others are granted extreme deference.  Importantly, the Court's analysis in

these cases is not dependent on whether a particular plaintiff had exercised available

administrative remedies.  Rather, the Court has recognized that military personnel decisions rest

on factors, such as military discipline, that are outside the area of the judiciary's expertise.  Thus,

the fact that Plaintiff chose not to redress his grievances through additional military

administrative processes does not change the deferential standard of review applicable to

military personnel decisions.  In fact, as a matter of policy, Plaintiff's argument makes no sense.

If correct, there is never an incentive to seek review at a correction board because the Plaintiff

can sue and obtain judicial review under a more favorable standard of review.  The rule of law

seeks justice and consistency, not a procedural escape hatch the Plaintiff prefers.

This balance regarding how to review military decisions was the very issue in <u>Kreis v.</u>

<u>Secretary of the Air Force</u>, 866 F.2d 1508 (D.C. Cir. 1989).  After looking to the principles

established by the Supreme Court in <u>Orloff</u> and <u>Gilligan</u>, this Circuit denied Plaintiff's request

for retroactive promotion.  <u>Id.</u> at 393.  However, the Court looked further.  The Court stated,

> There is also a more modest request in appellant's complaint, however. While all
> his efforts are aimed ultimately at securing his promotion to lieutenant colonel,
> his alternative claims require the district court merely to evaluate, in light of
> familiar principles of administrative law, the reasonableness of the Secretary's
> decision not to take certain corrective action with respect to appellant's record.
> Adjudication of these claims requires the district court to determine only whether
> the Secretary's decision making process was deficient, not whether his decision
> was correct.

<u>Id.</u> at 393.  This is because, at best, Plaintiff can only hope to receive a remand for the Secretary

to better explain the rationale behind his decision.  <u>Id.</u> at 394.  From there, the Court concluded

that the Secretary's decisions regarding a Soldier's military record correction were "reviewable

under he APA, albeit by an unusually deferential application of the 'arbitrary and capricious'

standard."  <u>Id.</u> at 396.  This unusual deference balanced the general noreviewability of

discretionary military decisions with the Court's ability to determine the reasonableness of

agency decisionmaking under the APA in most cases.

Accordingly, this court should, therefore, grant judgment to the Defendant.  "[J]udicial

review . . . is limited to determining whether there has been substantial compliance with statutes

and regulations, whether the agency acted arbitrarily and capriciously, and whether there is

substantial evidence to support the agency's decision."  <u>Id.</u> (citing <u>Kreis v. Secretary of the Air</u>

<u>Force</u>, 866 F.2d 1508, 1512 (D.C. Cir. 1989)).  The Secretary's decision should be upheld if it

"minimally contain[s] a rational connection between the facts found and the choice made."

Frizelle v. Slater, 111 F.3d 172, 176-77 (D.C. Cir. 1997).  The Secretary's decision meets that

"unusually deferential" standard in this case.

### B.      The Court's Review Is Confined to the Administrative Record

Plaintiff also misunderstands the mechanics of APA litigation.  Under the APA, the

Court's review of the Secretary's decision is based on the administrative record.  This is because

"[t]he task of the reviewing court is to apply the appropriate APA standard of review . . . to the

agency decision based on the record the agency presents to the reviewing court."  Florida Power

and Light Co. v. Lorion, 470 U.S. 729, 743-44 (1985).  Thus, in APA actions the summary

judgment standard does not apply "because of the limited role of a court in reviewing the

administrative record."  Calloway v. Harvey, 590 F. Supp. 2d 29, 35 (D.D.C. 2008).

Specifically,

> Under the APA, it is the role of the agency to resolve factual issues to arrive at a
> decision that is supported by the administrative record, whereas the function of
> the district court is to determine whether or not as a matter of law the evidence is
> the administrative record permitted the agency to make the decision it did.

Calloway, 590 F. Supp. 2d at 36 (internal quotes and citations omitted) (quoting Sierra Club v.

Mainella, 459 F. Supp. 2d 76 89-90 (D.D.C. 2006)).  "[T]he function of this Court is not to serve

as a super correction board that reweighs the evidence."  Charette v. Walker, 996 F. Supp 43, 50

(D.D.C. 1998).  The Court, though, may use "summary judgment to decid[e], as a matter of law,

whether the agency action is supported by the administrative record and otherwise consistent

with the APA standard of review."  Calloway, 590 F. Supp. 2d at 36 (citing Sierra Club v.

Mainella, 459 F. Supp. 2d 76, 89-90 (D.D.C. 2006)).

Despite Plaintiff's contention that discovery is appropriate,[1] the parties agree on the operative facts giving rise to Plaintiff's separation from USMA as described in the administrative record.  The Plaintiff has not moved this Court to supplement the administrative record or suggested that this Court should consider additional evidence beyond the record.[2]  Nor would it be appropriate to do so.  The function of the APA is to allow the court to evaluate the sufficiency of the agency's decision in light of applicable law and regulation based on the information that was actually before the decision maker as reflected in the administrative record.[3]  The administrative record reflects the information before the Superintendent and the Assistant Secretary of the Army at the time they made the decision to separate Plaintiff from USMA and accordingly, the case may be decided on summary judgment, without discovery, based on the existing administrative record.

## II.    THE AGENCY'S DECISION TO SEPARATE PLAINTIFF WAS REASONABLE AND LAWFUL

The Army followed the regulations applicable to Plaintiff's separation from USMA and

---

[1]  He states, "[T]he court should allow pre-trial discovery to more fully investigate this serious allegation [concerning the Establishment Clause]."  (Pl. Opp. at 28)

[2]  In fact, Plaintiff offers no factual basis for his arguments.  Plaintiff cites almost exclusively to his complaint offering no evidence in support.  (ECF No. 15-1 ¶¶ 1–6; 8–11; 13; 15–17; 19–20; 23; 25) In fact, in some cases Plaintiff proffers facts with no support whatsoever.  (ECF No. 15-1 ¶¶ 3a; 17; 18b) Accordingly, Plaintiff fails to satisfy even the standard of review for a typical motion for summary judgment by essentially conceding as true and unrebutted Defendant's Statement of Material Facts.

[3]  This is further supported by the Local Civil Rule 7(h)(2) which applies to cases "in which judicial review is based solely on the administrative record."  LCvR 7(h)(2).  In such cases, "motions for summary judgment and oppositions thereto shall include a statement of facts with references to the administrative record."  LCvR 7(h)(2).  Plaintiff, citing primarily to his Complaint, failed to comply with this rule.

Plaintiff received all the process to which he was entitled.  Likewise, the ASA's discretionary decision to order plaintiff to serve two years on active duty as an enlisted soldier was in accordance with law and regulation.

### A.   Defendants Followed the Statutory and Regulatory Framework Applicable to Processing Plaintiff's Separation from West Point

The decision at issue in this case is the Superintendent's recommendation and the ASA's August 23, 2011 decision to separate Plaintiff from USMA and order him to serve on active duty as an enlisted soldier in the U.S. Army.  Cadets are statutorily required to agree to complete the course of instruction at the Academy.  The same statute authorizes the Secretary to prescribe regulations to describe the cadet conduct that constitutes a breach of the agreement.  Pursuant to this authority, the Secretary has determined that a violation of the cadet honor code constitutes a breach of the agreement to complete the course of instruction and that honor code violations will normally result in the cadet's separation from USMA.[4]  Further, the statute provides that the Secretary may transfer the cadet into the Army Reserve at the appropriate enlisted rank and order the cadet to serve on active duty as an enlisted soldier for a term not to exceed four years.  10 U.S.C. § 4348(b)(1).  Plaintiff was aware of this statutory and regulatory framework and its application to him.  He does not challenge the framework itself; rather, he disagrees with the way USMA officials applied it in his case.  Nonetheless, his chain of command scrupulously followed the applicable law and regulations and the final decision to separate Plaintiff and order him to active duty was reasonable.

### 1)   The Statute

_____

[4] There is no question Plaintiff violated the West Point Honor Code because he admitted to cheating.  (AR 167-82)

West Point cadets are statutorily required to agree to "complete the course of instruction at the Academy." 10 U.S.C. § 4348(a)(1). Cadets who successfully complete the course of instruction are required to "accept an appointment, if tendered, as a commissioned officer" and to "serve on active duty for at least five years immediately after such appointment." 10 U.S.C. § 4348(a)(2). However, the statute authorizes the Secretary to "transfer to the army Reserve, and … order to active duty for such period of time as the Secretary prescribes . . . a cadet who breaches [the agreement]." 10 U.S.C. § 4348(b)(1). The statute states that "a cadet shall be considered to have breached [the agreement] if the cadet is separated from the Academy under circumstances which the Secretary determines constitute a breach by the cadet of the cadet's agreement to complete the course of instruction at the Academy . . . ." 10 U.S.C. § 4348(b)(3). Finally, the statute requires the Secretary to prescribe regulations that include standards for "determining what constitutes a breach . . . [and] procedures for determining whether such a breach has occurred . . . ." 10 U.S.C. § 4348(c). All cadets who enter West Point are aware of these basic provisions because they must agree to them.

### 2)   Plaintiff's Agreement to Serve

Plaintiff acknowledged these tenants and committed to serve on active duty by executing the required agreement when he entered West Point. (AR On July 2, 2007 plaintiff agreed, among other things, to "complete the course of instruction at the United States Military Academy." (AR 47-48) He also specifically acknowledged

> [t]hat if I fail to complete the course of instruction of the United States Military Academy [or] breach my service agreement as defined in paragraph 1.g.(4) . . . I will serve on active duty as specified in paragraphs 1.b. through 1.f., which are contained in the Statement of Policies . . . .

(AR 47) The Statement of Policies specifies that "'[b]reach of service agreement' includes

separation resulting . . . from any of the bases for separation listed in [Army Regulation ("AR")] 210-26, Table 7-1 . . . ."  (AR 48)  Table 7-1, titled "Separations deemed to be a breach of service contract," specifically lists separations based on honor violations as among those that constitute a breach of the service agreement.   AR 210-26, Table 7-1 at 25 (Appendix at A187). The procedures applicable to such separations are specified as being delineated in "local regulations" - in this case United States Corps of Cadets Pamphlet 15-1 - and two paragraphs of AR 210-26, discussed below.  Id.

### 3)    The Regulations Governing Honor Investigations and Disposition

The Superintendent is authorized by regulation to "establish and maintain a system to administer the Cadet Honor Code," which states simply, "A cadet will not lie, cheat, or steal, or tolerate those who do."  AR 210-26, ¶ 6-16a at 18 (App. at A 180).  The Superintendent is responsible for convening honor investigative hearings under procedures described in local regulations to evaluate allegations that a cadet violated the honor code.  AR 210-26, ¶ 6-16b at 18 (App. at 180).  Upon completion of the record of the investigative hearing, the staff judge advocate reviews the record and forwards the record to the Commandant for recommendation. Id.  Once the Commandant has provided his recommendation, the affected cadet has the opportunity to review the record and recommendations and provide any rebuttal or comments he deems warranted.  Id.  Only after these procedures does the Superintendent take action on a finding that a cadet violated the honor code.  Id.

Cadets who have violated the honor code "will normally be separated from the Military Academy."  AR 210-26, ¶ 6-16c at 18 (App. at 180).  However, the Superintendent may, at his discretion, retain a cadet and return that cadet in the next lower academic class and award

punishments described in the regulations.  Id.  Included in this authority the Superintendent "may, at his or her discretion, under such terms and conditions as deemed appropriate, suspend his or her recommendation for separation . . . ."  AR 210-26, ¶ 6-4b at 16 (App at 178).

As discussed in detail in Defendant's motion for summary judgment, USMA officials complied with these provisions.  Plaintiff does not allege that USMA failed to follow these regulatory provisions.  Instead, he contends that despite these robust protections he was entitled to another full administrative board when the Superintendent, who had suspended plaintiff's separation from USMA under specified terms, revoked the suspended separation when plaintiff failed to adhere to those terms.  However, the applicable regulation does not require an additional administrative board; nor does due process.

### 4) Revoking a Suspended Separation Does Not Require an Administrative Board

After deciding Plaintiff should be separated for honor violations, the Superintendent decided to conditionally suspend Plaintiff's separation from West Point, effectively giving him a second chance to pursue graduating.  The Plaintiff did not challenge that decision.  However, the Superintendent specified that Plaintiff would violate the terms of the suspension by, among other things, failing to complete "any requirement under the USMA Honor Mentorship Program." (AR 32)  The Superintendent also stated that "[i]f a violation of the terms of this suspended separation occurs during the suspension period, then the suspended separation will be vacated." (AR 32)  This clear statement is supported by the applicable regulation, which states, "Failure to successfully complete the Honor Mentorship Program results in the Superintendent vacating the suspension and separating the cadet immediately."  USCC Pam 15-1, para 603a (App. at A71). The regulation does not require a hearing prior to separation for failing to complete the

mentorship program.

After the Plaintiff failed to meet the requirements of the Honor Mentorship Program the chain of command began the process of revoking Plaintiff's suspended separation by providing Plaintiff notice of his intended action in the form of a counseling statement.  (AR 21-22) Plaintiff initially agreed.  (AR 22) However, after facing an adverse decision from the Superintendent, Plaintiff submitted matters for the Superintendent's consideration.  (AR 16-18 (1st Action by the Superintendent); 12-15 (Submission for reconsideration by Plaintiff's civilian counsel))  The Superintendent then considered the matters that Plaintiff raised in rebuttal to the proposed action. (AR 4)  Plaintiff's contention that he did not have "an opportunity to provide a meaningful response on review of the entire record" is contradicted by the administrative record.  (Pl. Opp. at 17).  Plaintiff had the full record, notice of the Superintendent's intent to revoke plaintiff's suspended separation, and an opportunity to respond, which, Plaintiff took with assistance of civilian counsel.  (AR 12-15)

Further, Plaintiff contends that the Superintendent's separation recommendation and the ASA's separation decision were "taken without applying any ascertainable standard . . . ."  (Pl. Opp. at 17)  As support for this proposition Plaintiff focuses on language in the record that his essays "violated the intent" of the program and that he had "unresolved issues."  (Pl. Opp. at 16) Plaintiff completely ignores the substantive components of the Honor Mentorship Program that he failed to meet.  Moreover, he fails to consider that the regulation specifically calls for USMA officials to exercise professional judgment in making subjective assessments of a cadet's compliance with the program and overall remediation.

The record establishes that Plaintiff repeatedly failed to meet objective program

requirements.  His mentor noted that plaintiff did not schedule a timely program in-brief, did not

complete the required character development plan, and did not turn in journal entries on the

required schedule.  (AR 11)  Any of these failures could have served as an independent basis to

terminate Plaintiff's participation in the program.

Nonetheless, even in the absence of these objective failures, the regulation requires

USMA officials to make assessments of a cadet's remediation under the Honor Mentorship

Program.  The regulation specifically states that a cadet cannot satisfy the program simply by

turning in the specified projects.  USCC Pam 15-1, ¶ 603g (App. at A73).  "Successful

remediation . . . is not based solely on completion of requirements.  If a cadet is clearly not

remediating, the program may be terminated early at the request of the mentor."  Id.  This is

exactly what happened in Plaintiff's case.  Plaintiff's mentor stated,

> In [Plaintiff's] journal essay, on the fifth page, he finally admits to knowingly
> committing an honor code violation.  He states that based on his perception, he no
> longer had to adhere to the West Point code.  At that point, I no longer felt Alan
> was capable of successfully completing the HMP.

(AR 11)  Plaintiff's mentor continued, "Alan is an intellectually bright person, but I do not feel

he will ever adhere to either the code or the spirit of the code here at West Point."  (AR 11)  It is

important to note that this same official spoke on Plaintiff's behalf during the Honor

Investigative Hearing.  (AR 366-69)  However, during the time in which he served as Plaintiff's

mentor he formed a reasonable opinion that Plaintiff could not adhere to the Cadet Honor Code –

an issue he was required to determine by regulation.

Thus, Plaintiff's complaint that USMA officials "failed to apply any standard at all" in

determining that he had failed the Honor Mentorship Program is simply incorrect.  His mentor

specified that Plaintiff had failed to submit various requirements, grounds alone to revoke

Plaintiff's suspended separation.  Likewise, Plaintiff's mentor made the reasonable assessment that Plaintiff was not remediating.  Under these circumstances the regulation is clear:  "Failure to successfully complete the Honor Mentorship Program results in the Superintendent vacating the suspension and separating the cadet immediately."  USCC Pam 15-1, para 603a (App. at A71). The ASA's decision to separate Plaintiff based on the Superintendent's recommendation was reasonable under these facts.

**5)      Plaintiff Received All the Process That Was Required by Law or Regulation Prior to Separation**

As discussed above and in detail in Defendant's motion for summary judgment on the record, Plaintiff received a full administrative hearing to determine whether he violated the cadet honor code and, if so, the appropriate disposition of his case.  Though Plaintiff admitted to violating the code by cheating in one instance, and was found by the administrative board to have cheated in a second instance, the Superintendent decided to suspend the standard sanction and permit Plaintiff to participate in a remedial program with the goal of graduating.  (AR 32; 167-82; 513-14)  Plaintiff did not challenge the adequacy of the administrative procedures or the lawfulness of the Superintendent's decision at the time it was rendered.  Nor did he raise such issues in his rebuttal to the Superintendent's recommendation to revoke his suspended separation.  Nonetheless, he now claims that errors related to processing "delay" (Pl. Opp. at 17-20) and improper rights advisement (Pl. Opp. at 22-24) deprived him of due process.  He is incorrect.

As an initial matter, Plaintiff has not put forward a reasonable explanation about why these claims are not waived.  Given that the Court's analysis consists of the application of the appropriate APA standard of review to the administrative record, the ultimate issues Plaintiff

complains of must be before the agency in order to review the reasonableness of the agency's

action or decision. The agency cannot violate the requirements of the APA if it never had the

opportunity to address the issue in the first instance. <u>Sims v. Apfel</u>, 530 U.S. 103, 109-10 (2000)

(citing <u>United States v. L.A. Tucker Truck Lines</u>, 344 U.S. 33, 36 (1952)).[5] The United States

Supreme Court has held that courts "should not topple over administrative decisions unless the

administrative body not only has erred but has erred against objection made at the time

appropriate under its practice."  <u>L.A. Tucker Truck Lines</u>, 344 U.S. at 37.  In fact, requiring issue

exhaustion at the administrative level is the"general rule." <u>Sims</u>, 530 U.S. at 109 (citing <u>L.A.

Tucker Truck Lines</u>, 344 U.S. at 36-37).

 Here, the administrative hearing (the Honor Investigative Hearing) was adversarial in

nature and Plaintiff was represented by counsel in asserting a defense.  (AR 49-558)  As

important, Plaintiff was represented again by counsel at the time he challenged the decision to

disenroll him as a result of his Honor Mentorship Program ("HMP") failure.  (AR 12-15)

"Where [as here] the parties are expected to develop the issues in an adversarial administrative

proceeding . . . the rationale for requiring issue exhaustion is at its greatest." <u>Sims</u>, 530 U.S. at

110.  The Plaintiff had the opportunity to submit multiple briefs in support of his position.  When

presented with a favorable recommendation and the opportunity for a second chance, Plaintiff

---

[5] In essence, Plaintiff's opposition confuses the concepts of waiver/issue exhaustion and the requirement to exhaust all required avenues of appeal at the agency level prior to filing suit. Defendants are not claiming that Plaintiff was required to seek consideration of his case by the ABCMR prior to filing suit.  However, by choosing to file suit immediately, Plaintiff is limited based on the concepts of waiver and issue exhaustion, to the issues raised and considered by the agency prior to final agency action at issue.  To hold otherwise would defeat the entire manner in which APA cases are reviewed and decided.  In fact, Plaintiff never once argues that he presented any of the arguments he advances in his Complaint to the Army.  This is because, save one, he did not.

chose not to assert any error in the underlying HIH proceedings.  Only after he was informed of the Superintendent's intent to revoke his suspended separation did Plaintiff rebut the procedures used.

With the assistance of legal counsel he did challenge the basis of the recommendation that he had failed the Honor Mentorship Program.  (AR 12-15) That challenge was limited to the issues of whether there was any standard used in making this decision and the reasonableness of that decision.  (AR 12-15) Nothing more.

By limiting the issues he raised to the agency, Plaintiff limited his opportunity to argue additional claims of error in this Court because it is impossible for the Court to appropriately apply the APA standard to issues not raised to the agency for consideration and which have no basis in law or regulation and which do not appear in the administrative record.  This is because "in most circumstances a reviewing court should not adjudicate issues not raised in the administrative proceedings below, so that the agency has an opportunity to consider and resolve the objections prior to judicial review, and the reviewing court has the benefit of a full record." Hinson v. National Transp. Bd., 57 F.3d 1144, 1149 (D.C. Cir. 1995); Salt Lake Comm. Action Program v. Shalala, 11 F.3d 1084, 1088 (D.C.Cir.1993) ("We start from the well-settled premise that objections to agency proceedings must be presented to the agency 'in order to raise issues reviewable by the courts.'").  In essence, this is merely another example of the premise that de novo review is not the standard in cases arising under the APA.  By choosing the APA as the basis for the relief requested, Plaintiff must accept its limited review and the fact that many of his issues are waived.

Nonetheless, to the extent the court considers these issues, Plaintiff has failed to

demonstrate any errors in the processing timeline or his rights advisement under Article 31, UCMJ.  Plaintiff mistakenly contends that the Secretary of the Army has imposed a mandatory 60 day honor case processing timeline on USMA.  (Pl. Opp. at 17)  In support of this position Plaintiff cites neither law nor regulation.  Instead, he refers to a 1987 law review article which, in turn, cites a 1979 letter from the Secretary of the Army to the West Point Superintendent.  (Pl. Opp. at 18)  Assuming arguendo that there was ever a mandatory 60 day processing requirement, it is not required by current law or regulation.[6]

The regulation that governs honor investigations clearly states, "The Secretary of the Army recommended to the Superintendent that the United States Military Academy process all cadet honor investigations within 60 duty days.  However, the Academy goal is to process honor cases in 40 duty days commencing with the inception date through the Superintendent's decision." (USCC Pam 15-1 ¶ 507a.)  This regulation is clearly aspirational and does not mandate a timeline for processing cases.[7]  Moreover, as explained in our opening brief, the delay

---

[6]  On December 9, 2009, the Secretary of the Army published Army Regulation 210-26 which, "provides policy and procedure for the general governance and operation of the United States Military Academy."  (A 158, 163 ¶ 1-1) The regulation sets honor code violations as a basis for separation but does not mandate any processing guidelines.  (A 180 ¶ 6-16, 185 ¶ 7-3) Also, the regulation allows for the Superintendent to issue regulations governing the Academy.  (A 165 ¶ 1-13, 166-67 ¶ 1-18) Because this regulation was promulgated by the Secretary of the Army after the letter in 1979 and the Court can take judicial notice that several persons have held the position of Secretary of the Army since 1979, clearly the incomplete letter referenced was a personal standard of the Honorable Clifford Alexander which is no longer binding.  Accordingly, Plaintiff's argument fails on this basis alone.

[7]  Plaintiff claims paragraph 204 of USCC Pam 15-1 establishes a binding timeline for processing honor investigations.  Plaintiff quotes from the paragraph but fails to quote from the Figure referenced.  On the same page Figure one, which illustrates the process, states, "Goal = 40 duty/processing days." (A 34 ¶ 204, Figure 1) Plaintiff continues to move through the regulation with his eyes shut to the continued reference to processing goal.  First, at each paragraph explaining the process the word goal precedes the number of duty days that step

inured to Plaintiff's benefit, not detriment, in this case.[8]

Plaintiff also alleges that Defendant failed to follows its regulations by not informing him of his right to remain silent under Article 31, UCMJ, earlier in the investigative process.[9] However, the regulation does not require a rights warning when academic departments seek to clarify citation issues.  Instead, the regulation states that officials may seek clarification from a cadet concerning a potential honor violation without informing the cadet of his right to remain silent when the officials are "not sure whether a violation has occurred."  USCC Pam 15-1 ¶ 202. Plaintiff ignores the fact that the regulation specifically contemplates giving cadets and West Point officials the flexibility necessary to discuss ambiguous situations before initiating an honor investigation.

---

should take (See A 35 ¶ 304, 36 ¶ 305, 37 ¶ 306, 38 ¶ 307, 39 ¶¶ 308, 309, 310, 42 ¶¶ 402, 403, 43 ¶ 404, 44 ¶ 405, 63 ¶ 505) The regulation reflects that any processing timelines are goals, nothing more.

[8]  Of note, Plaintiff correctly quotes that 40 days is the goal for processing a case "under normal circumstances."  (A 34 ¶ 204; ECF No. 15 at 18)  Plaintiff then boldly suggests this was an ordinary case.  Common sense dictates that this is not an ordinary case.  Here, Plaintiff engaged in numerous honor violations over extended periods of time, given that there were multiple violations, justice and economy dictated consolidated hearings if the investigations substantiated a potential violation, and that the serious continued nature of Plaintiff's conduct resulted in a need for proper contemplation of the just decision under the circumstances.

[9]  Article 31 of the Uniform Code of Military Justice states, "[n]o person subject to this chapter may interrogate, or request any statement from an accused or a person suspected of an offense without first informing his of the nature of the accusation and advising him that he does not have to make any statement."  10 U.S.C. § 831(b).  Plaintiff was not suspected of a crime or offense under the UCMJ.  Additionally, the remedy for an Article 31 violation is exclusion of the evidence.  10 U.S.C. § 831(d).  Plaintiff candidly admits that the regulation prevents the application of the exclusionary rule, dismissing this as "beside the point."  (ECF No. 15 at 24) This is exactly the point, however.  The exclusionary rule is the remedy for a violation of someone's rights warning.  Here, Plaintiff litigated this issue at his Honor Hearing and the hearing officer's decision was calculated and reasonable, not an abuse of discretion or arbitrary and capricious. Moreover, consideration of the evidence at the HIH was appropriate and in conformance with law and regulation, in any event.

Plaintiff also ignores the requirement that USMA officials report known or suspected honor code violations to the honor committee for action.  Id.  In this case, Plaintiff's professor explained her thought process in detail.  She asserted that she was not sure whether Plaintiff had violated the honor code at the time she approached him about his second essay and that she, therefore, followed the regulation and did not inform him of his right to remain silent.  (See AR 71-99)  Plaintiff's professor was not required to warn him of his right to remain silent under these circumstances.

Plaintiff notes that Dr. Sabatos brought "two honor representatives with her to confront [Plaintiff]" and argues that this is evidence that she knew Plaintiff had violated the honor code by cheating when she approached him.  (Pl. Opp. at 24)  However, this procedure is mandated by the regulation, which informs faculty members who are approaching a cadet for clarification that "[t]he respective Department's Cadet Honor Liaison and Department's Officer Honor Liaison should be present during the approach for clarification."  USCC Pam 15-1 ¶ 202(d)(4).   Further, "Academic faculty members are reminded to terminate all questioning after the possibility of a misunderstanding is eliminated."  Here, Dr. Sabatos simply followed the applicable procedures. She had questions about Plaintiff's essay and approached him for clarification along with the appropriate honor representatives.  (AR 403-05)  She was not satisfied with Plaintiff's answers and recommended referring the case to the honor committee for investigation, but did not pursue questioning Plaintiff.  She followed all applicable procedures during her questioning and Plaintiff received all the due process to which he was entitled.

## III.    PLAINTIFF'S REMAINING CLAIMS ARE NOT ACTIONABLE UNDER THE APA

Finally, Plaintiff seeks review of several claims unrelated to this APA cause of action.

18

He complains that he was required to recite the cadet prayer in violation of the Establishment Clause of the First Amendment (Compl. ¶ 144), that he received incorrect advice concerning his service obligation that influenced his decision to stay at West Point (Compl. ¶ 134), and that the Army is unjustly enriched by requiring him to serve two years on active duty as an enlisted soldier.  (Compl. ¶ 149)  Here, Plaintiff invokes the APA seeking review of a final agency action.  Review of these three claims is not warranted because they do not relate to the ASA's decision to separate Plaintiff from West Point or to the relief sought, Plaintiff's reinstatement.

The allegation that the Commandant required Plaintiff to recite the Cadet Prayer during a meeting after Plaintiff's Honor Investigative Hearing is not reflected in the administrative record and was not considered by the final decision maker.  To the extent it was an issue before recommending officials, the Commandant recommended retaining Plaintiff at West Point after this incident.  (AR 34)  As discussed above, "The task of the reviewing court is to apply the appropriate APA standard of review . . . to the agency decision based on the record the agency presents to the reviewing court."  Florida Power and Light Co. v. Lorion, 470 U.S. 729, 743-44 (1985).  "Relief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability requirement."  Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 106-107 (1998) (citations omitted).  To the extent Plaintiff has a cause of action related to his allegation that he was required to read the Cadet Prayer it does not relate in any way to the agency's decision to separate Plaintiff from West Point.  As such, he lacks standing to raise it, a concept Plaintiff fails to address.

Likewise, Plaintiff's contention that he received improper advice from Academy officials concerning his service obligation is irrelevant to this APA cause of action.  As an initial matter,

consistent with the advice he received, Plaintiff incurred a service obligation by the time of his

Honor Investigative Hearing because he had commenced his second class year.  The regulation

clearly states that cadets who enter the Academy from a civilian status, like Plaintiff,

> Have an equivalent [service obligation] to the period for which they are ordered
> to serve on active duty or in a Reserve component in an enlisted status, if they
> resign or are separated after the commencement of term 1 of their second class
> year, but before completing the [course of instruction].  They may be ordered to
> active duty for a period of not less than 2 years, but no more than 4 years.

AR 210-26 ¶ 7-1b(1)(c).  In his Complaint Plaintiff asserts that he "likely would have resigned

from West Point prior to the start of the 2010-2011 academic year, thus avoiding any military

service obligation" had he received "accurate guidance."  (Compl. ¶ 133)  The fact is that

Plaintiff did receive accurate guidance that he had incurred a service obligation by starting his

second class year during the 2009-2010 academic year.[10]

However, even if Plaintiff received inaccurate guidance, that guidance does not

undermine the reasonableness or lawfulness of the decision to separate him.  The issue

concerning the guidance that Plaintiff received is not reflected in the record and did not in any

way influence the Superintendent or ASA's decision to separate Plaintiff.

Lastly, Plaintiff has failed to articulate how his unjust enrichment claim is actionable

under the APA.  Plaintiff's states that he "inferred a promise" that USMA officials would

ultimately approve his request to participate in a study abroad program.  (Compl. ¶ 147)  The

---

[10]  Interestingly, even if Plaintiff's claim is accurate that being turned back reset the clock, Plaintiff still is obligated to serve.  Plaintiff returned from leave over the summer and began classes again in the Fall of the 2010-2011 academic year.  Doing so resulted in Plaintiff beginning his second class year, a second time.  Thus, if Plaintiff truly believed the advice was erroneous he should have sued prior to beginning this term.  By doing so, Plaintiff effectively mooted his own argument.

fact that there is no factual support for an "inferred" promise to allow Plaintiff to participate in a study abroad program is immaterial. Even, if there were such a promise it would have no bearing on Plaintiff's separation from USMA for violating the Honor Code and then failing to adhere to the terms of his suspended separation. Plaintiff's argument is simply that he stayed at West Point because he believed he would be permitted to study abroad. When his study abroad program was disapproved, plaintiff stated that he felt "the Contract between West Point and [him] was broken" and it was in this context that he lied. (AR 29) He now asserts that it is unfair that he faces the prospect of two years of enlisted service in the Army based on his "reliance on West Point's Inferred promise . . . ." (Pl. Opp. at 25) As discussed in Defendant's motion for judgment, the Plaintiff has requested equitable relief based on his assertion of a contract implied in law. He has failed, though, to describe any jurisdictional basis for such a claim. Additionally, he has failed to explain why relief is appropriate given that he signed a contract obligating military service if he was disenrolled for a violation of the cadet honor code.

In the final analysis Plaintiff's opposition misses the mark. Plaintiff fails to cite the administrative record, instead relying on speculation and conclusions found in his complaint. Moreover, he fails to cite legal authority for nearly all of his arguments. In essence, he seeks relief without legal or factual support for his claims. In all, Plaintiff received more process than was actually due, he received thoughtful consideration by high ranking Army officials on how to handle his honor code violation, and he received every protection required by law and regulation. As such, the Court should grant summary judgment for Defendants and allow Plaintiff to begin paying his debt of service to the United States.

## **CONCLUSION**

21

For the foregoing reasons, Defendant McHugh requests the Court to grant Defendant's

Motion for Summary Judgment.

Respectfully submitted,

RONALD D. MACHEN, JR., D.C. Bar # 447889
United States Attorney

RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

By: _____/s_____
DANIEL J. EVERETT
Special Assistant United States Attorney
Civil Division
555 Fourth Street, N.W.
Washington, D.C. 20530
daniel.everett@usdoj.gov
(202) 353-9895 / fax (202) 616-5200

Of Counsel:
Major Jacob Wolf
Litigation Attorney
U.S. Army Litigation Division
9275 Gunston Road
Fort Belvoir, Virginia 22060-5546