UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                )
ALAN MATTHEW SPADONE,           )
                                )
          Plaintiff,            )
                                )
     v.                         )     Civil Action No. 11-1601 (RWR)
                                )
JOHN M. MCHUGH,                 )
                                )
          Defendant.            )
_____ )

MEMORANDUM OPINION AND ORDER

Plaintiff Alan Spadone filed this complaint against
Secretary of the Army John McHugh, alleging that the Secretary's
actions, including his order disenrolling Spadone from the United
States Military Academy ("West Point") and directing Spadone to
serve as an enlisted solider in the Army, violated the
Administrative Procedures Act ("APA"), 5 U.S.C. § 702 et seq.,
the Due Process Clause of the Fifth Amendment, and the
Establishment Clause of the First Amendment, and unjustly
enriched the Army.  Spadone has moved for a preliminary
injunction directing the Secretary to re-enroll Spadone in West
Point to give Spadone the opportunity to earn a degree and an
officer's commission in the Army by May 2012.  (Pl.'s Mem. in
Supp. of Mot. for Preliminary Injunction ("Pl.'s Mem.") at 4.)
The Secretary opposes.[1]  Because Spadone has not shown

_____
[1] The Secretary has separately moved to dismiss the
complaint.  His opposition to Spadone's motion for a preliminary
injunction incorporates portions of submissions accompanying the

irreparable harm or a likelihood of success on the merits, his
motion will be denied.[2]

BACKGROUND

In July 2007, Spadone enrolled at West Point.  (Compl.
¶ 13.)  In February 2009, a West Point faculty member granted
Spadone permission to apply to study abroad at Pembroke College
at the University of Cambridge.  In July 2009, Spadone learned
that he had been accepted by the study abroad program.  (Id.
¶¶ 16-17.)  Spadone asked West Point's Dean to allow him to
enroll in the program, but Spadone knew he would resign before
starting his third year of study if the Dean denied the request.
Beginning a third year of study triggers a cadet's obligation to
provide five years of active duty military service and three
years of service in the reserves.  (Id. ¶¶ 19-24, 92.)

The Dean denied Spadone's request in September 2009.
However, the Dean told Spadone that the decision could be
reconsidered if outside funds were available to pay for the
program.  (Id. ¶¶ 27, 29.)  On October 1, 2009, the Dean was

---

motion to dismiss.

[2] The parties do not present the type of factual disputes
that would require a hearing.  A court may deny a plaintiff's
application for a preliminary injunction without first providing
a hearing on the merits when the record demonstrates a lack of
right to relief.  Cornish v. Dudas, 540 F. Supp. 2d 61, 64
(D.D.C. 2008) (citing Smith v. Harvey, Civil Action No. 06-1117
(RWR), 2006 WL 2025026, at *2 (D.D.C. July 17, 2006)); Local
Civil Rule 65.1(d) (a court may decide a motion for preliminary
injunction on the papers without first holding a hearing).

-3-

informed that Spadone raised $25,000 from private donors, enough to fund his enrollment in the program.  However, the next day, the Dean still denied Spadone's request to enroll in the program despite the funding.  (Id. ¶¶ 30-32.)  By then, Spadone, having anticipated enrollment approval, had started his third year of study at West Point.  (Id. ¶¶ 23-24, 26.)

Spadone was enrolled at that time in a course titled EN 302, Advanced Composition.  He submitted an essay in that course in late October that West Point's honor committee investigated on suspicion of plagiarism, which is a violation the West Point honor code.  (Compl. ¶ 33; Def.'s Stmt. of Facts in Supp. of Mot. to Dismiss or in the Alternative for Summ. J. ("Def.'s Stmt.") ¶¶ 6, 13.)  On November 18, 2009, Spadone admitted that he plagiarized in violation of the honor code.  (Def.'s Stmt. ¶ 13.) On November 19, 2009, Spadone submitted another essay for EN 302 that the course's professor suspected involved dishonorable documentation.  Spadone told her he had been merely careless, and he later signed two statements denying that his November 19 essay violated the honor code.  (Def.'s Stmt. ¶¶ 15-16, 20; A.R. 403-404.)

In February 2010, West Point's Commandant for Honor Matters referred Spadone to an Honor Investigative Hearing for three charges of violating the honor code: one charge of plagiarizing in the October paper, one charge of plagiarizing in the

-4-

November 19th paper, and one charge of lying to his professor about the November 19th paper. (Def.'s Stmt. ¶ 25.) At an Honors Investigative Board hearing held on March 8, 2010, Spadone pled guilty to plagiarizing in the October essay. In addition, the Honors Investigative Board determined that the allegations of plagiarizing in the November 19th essay were supported by a preponderance of the evidence but the allegation of lying was not. (Compl. ¶¶ 42, 44; Def.'s Stmt. ¶¶ 31-32.)

In April 2010, Spadone was questioned about his honor code violations by a panel composed of the Commandant of Cadets, a Command Sergeant Major, five cadets from the Cadet Honor Committee, and Spadone's Tactical Officer. (Compl. ¶ 46.) According to Spadone, the Commandant of Cadets indicated during the hearing that Spadone had not properly shown contrition or accepted responsibility for the Honor Code violations, and ordered Spadone to stand with his body rigid in a military posture and to read aloud the "Cadet's Prayer."[3] (Id. ¶¶ 47-48.) In May 2010, West Point's Superintendent decided to disenroll Spadone from West Point for the summer of 2010, delay his graduation by one year, place Spadone in a "suspended separation status" until graduation, and enroll Spadone in the Honor

---

[3] The prayer says in part, "O God, our Father, Thou Searcher of human hearts, help us to draw near to Thee in sincerity and truth. May our religion be filled with gladness and may our worship of Thee be natural. . . . Help us . . . in doing our duty to Thee[.]" (Compl. ¶ 47.)

-5-

Mentorship Program ("HMP") under specific conditions.  (Compl.
¶ 51; Def.'s Stmt. ¶ 41.)

According to Spadone, he was required to draft two written
journal entries each week as part of the HMP.  (Compl. ¶¶ 59-61.)
In October 2010, the Special Assistant to the Commandant for
Honor Matters recommended vacating the suspension of Spadone's
separation from West Point because Spadone had not submitted
journals that met the requirements of the HMP.  (Id. ¶ 65.)  In
November 2010, West Point's Superintendent issued a memorandum
recommending separating Spadone from West Point for failing to
successfully complete his HMP.  (Id. ¶ 71.)  In December 2010,
Spadone was suspended from West Point and placed on an authorized
leave of absence without pay pending the Army's final decision on
his disenrollment.  (Id. ¶ 75.)  In August 2011, Spadone learned
that the Secretary signed orders disenrolling Spadone from West
Point and ordering Spadone to report in October 2011 for two
years on active duty as an enlisted soldier.  (Id. ¶¶ 82, 86.)

Spadone filed the complaint in this action in September 2011
challenging the Secretary's actions as arbitrary, capricious and
in violation of due process.  He also alleged that ordering him
to read aloud the Cadet's Prayer violated the Establishment
Clause of the First Amendment, and that the delay in denying his
study abroad enrollment unjustly enriched the Army by triggering
his military service obligation.  In addition to back pay, his

-6-

complaint seeks full reinstatement at West Point and expungement of all records of his HMP failure, or, in the alternative, an order requiring the Secretary to discharge Spadone from West Point without requiring a period of enlisted military service. (Compl. ¶ 150.)[4]

Spadone has now moved for a preliminary injunction ordering the Secretary to re-enroll him at West Point pending the outcome of this case.  The Secretary opposes Spadone's motion,[5] but Spadone has not filed any reply.

## DISCUSSION

A preliminary injunction is an extraordinary remedy. Mazurek v. Armstrong, 520 U.S. 968, 972 (1997).  A preliminary injunction interfering with the government's decision to terminate federal service should be limited to "genuinely extraordinary situation[s]."  Sampson v. Murray, 415 U.S. 61

---

[4] The Secretary has changed Spadone's reporting date for basic training from October 10, 2011 to April 23, 2012.

[5] The Secretary argues, and Spadone has not refuted, that Spadone's reenrollment in the military is not even a justiciable form of relief.  (Def.'s Opp'n at 19-21.)  The D.C Circuit has held that, while a request to review the reasonableness of a decision of the military board of correction is justiciable, a request to force the military to retroactively promote a serviceman is not justiciable.  See Piersall v. Winter, 435 F.3d 319, 322 (D.C. Cir. 2006) (citing Kreis v. Sec'y of the Air Force, 866 F.2d 1508, 1511 (1989)); see also Randall v. United States, 95 F.3d 339, 348 (4th Cir. 1996) (stating that "[t]he district court would have no authority to order the Secretary of the Army to promote Plaintiff to Lieutenant Colonel").  Whether or not Spadone's request is justiciable, Spadone has not made a showing sufficient to warrant injunctive relief.

-7-

(1974); see also Penland v. Mabus, 643 F. Supp. 2d 14, 21 (D.D.C. 2009).  A plaintiff carries the burden of persuasion by a clear showing 1) of a substantial likelihood of success on the merits, 2) of irreparable injury if the injunction is not issued, 3) that the injunction would not substantially injure other interested parties, and 4) that the injunction is in the public interest. Cobell v. Norton, 391 F.3d 251, 258 (D.C. Cir. 2004).  "The four factors should be balanced on a sliding scale, and a party can compensate for a lesser showing on one factor by making a very strong showing on another factor."  In re: Navy Chaplaincy, 516 F. Supp. 2d 119, 122 (D.D.C. 2007) (citing CSX Transp., Inc. v. Williams, 406 F.3d 667 (D.C. Cir. 2005)); see Davis v. Pension Ben. Guar. Corp., 571 F.3d 1288, 1291-92 (D.C. Cir. 2009).[6]  In general, courts tread "lightly on the military domain, with

---

[6] Two judges on the Davis panel, see id. at 1295-96 (Kavanaugh, J. and Henderson, J., concurring), though, questioned the continuing vitality of, but did not squarely jettison, this sliding scale approach in light of dictum in Winter v. Nat'l Resources Def. Council, Inc., 555 U.S. 7, 20 (2008) (listing the four factors a plaintiff must establish, but neither invoking nor rejecting the sliding scale method).  The most that can be said of what Winter decided regarding standards for securing injunctive relief is that a plaintiff must demonstrate that irreparable injury is "likely," not just "possible," 555 U.S. at 22, and that the balance of equities and the public interest were sufficient in that case to weigh against injunctive relief.  555 U.S. at 32; see also Sherley v. Sebelius, 644 F.3d 388, 392-393 (D.C. Cir. 2011) (opinion by Ginsburg, J., joined by Griffith, J.) (stating that "[l]ike our colleagues [in Davis], we read Winter at least to suggest if not to hold 'that a likelihood of success is an independent, free-standing requirement for a preliminary injunction'").

scrupulous regard for the power and authority of the military establishment to govern its own affairs within the broad confines of constitutional due process." Friedberg v. Resor, 453 F.2d 935, 937 (2d Cir. 1971).  In addition, Spadone seeks more than a prohibitive injunction that would maintain the status quo; he seeks a mandatory injunction that would alter the status quo. "In this Circuit, 'the power to issue a preliminary injunction, especially a mandatory one, should be sparingly exercised.'" Mylan Pharms., Inc. v. Shalala, 81 F. Supp. 2d 30, 36 (D.D.C. 2000) (quoting Dorfmann v. Boozer, 414 F.2d 1168, 1173 (D.C. Cir. 1969)).

I.   IRREPARABLE INJURY

A showing of irreparable injury traditionally "is a threshold requirement for a preliminary injunction." City of Moundridge v. Exxon Mobil Corp., 429 F. Supp. 2d 117, 127 (D.D.C. 2006).  "Irreparable harm is an imminent injury that is both great and certain, and that legal remedies cannot repair." Id. (citing Wis. Gas Co. v. Fed. Energy Regulatory Comm'n, 758 F.2d 669, 674 (D.C. Cir. 1985)).

> The key word in this consideration is irreparable.
> Mere injuries, however substantial, in terms of money,
> time and energy necessarily expended in the absence of
> a stay, are not enough.  The possibility that adequate
> compensatory or other corrective relief will be
> available at a later date, in the ordinary course of
> litigation, weighs heavily against a claim of
> irreparable harm.

City of Moundridge, 429 F. Supp. 2d at 127-28 (quoting Va. Petroleum Jobbers Ass'n v. Fed. Power Comm'n, 259 F.2d 921, 925 (D.C. Cir. 1958); Davenport v. Int'l Bhd. of Teamsters, 166 F.3d 356, 367 (D.C. Cir. 1999)).  Monetary injuries alone, even if they are substantial, ordinarily do not constitute irreparable harm.  Nat'l Propane Gas Ass'n v. United States Dep't of Homeland Sec., 534 F. Supp. 2d 16, 19 (D.D.C. 2008) (quoting Wis. Gas Co., 758 F.2d at 674).

When plaintiffs have requested an injunction preventing a military discharge, some courts have determined that plaintiffs must make a "much stronger showing of irreparable harm than [must be made under] the ordinary standard for injunctive relief," due to the "magnitude of the interests weighing against judicial interference with the internal affairs of the armed forces." Veitch v. Danzig, 135 F. Supp. 2d 32, 37 (D.D.C. 2001) (ruling that a U.S. Navy chaplain's loss of salary and benefits and damage to professional reputation were not irreparable injuries); Hartikka v. United States, 754 F.2d 1516, 1518 (9th Cir. 1985); Sebra v. Neville, 801 F.2d 1135, 1141 (9th Cir. 1986) (stating that "the test for injunctive relief is much more stringent for a government military employee than [is] the normal test for injunction"); Guerra v. Scruggs, 942 F.2d 270, 274 (4th Cir. 1991) (reversing a district court's decision granting a preliminary injunction prohibiting the plaintiff's discharge,

-10-

stating "[w]e believe that . . . [a] higher requirement of irreparable injury should be applied in the military context given the federal courts' traditional reluctance to interfere with military matters").

Spadone speculates that he would suffer irreparable harm absent an injunction re-enrolling him in West Point because the delay would damage his future military career and his reputation. However, a delay in completing courses from West Point does not necessarily constitute irreparable harm. Martin v. Stone, 759 F. Supp. 19, 21 (D.D.C. 1991) (stating that "the fact that the plaintiff is falling behind her peers at the Academy during the pendency of her challenge to her separation" did not constitute irreparable harm); Hamblet v. Brownlee, 319 F. Supp. 2d 422, 430 (S.D.N.Y. 2004) (holding that the possible damage to a West Point cadet's reputation and career caused by a nine-month suspension did not constitute irreparable injury). Spadone relies upon dictum in Tully v. Orr, 608 F. Supp. 1222 (E.D.N.Y. 1985),[7] that an Air Force academy cadet who was expelled right before final exams and graduation suffered irreparable harm because he "face[d] the prospect of th[e] Court granting the relief sought . . . but having his graduation and commissioning delayed to such

---

[7] Tully vacated a temporary restraining order entered three weeks earlier and denied a motion for a preliminary injunction for failing to show a likelihood of success on the merits. Id., 608 F. Supp. at 1226-27.

-11-

an extent that the damage to his future military career [would

be] . . . nearly insurmountable." (Pl.'s Mem. in Supp. of Mot.

for Preliminary Injunction ("Pl.'s Mem.") at 10-11.)  However,

the dictum in Tully seemed in tension with appellate precedent in

its circuit, Phillips v. Marsh, 687 F.2d 620 (2d Cir. 1982),

involving an expelled West Point cadet who had finished her final

year's course work.  In that case, the Second Circuit reversed a

district court's decision to issue a preliminary injunction,

stating that "[w]e can conceive of no irreparable harm that would

accrue to [the plaintiff] in allowing her graduation to await the

outcome of the trial on the merits; any damages to her from

deferring her career as a military officer in that period of time

would surely be compensable by monetary damages."  Id. at 622.

In addition, Spadone does not distinguish his situation from that

of the sanctioned cadets in cases such as Martin or Hamblet, he

does not explain why any delay in graduation date would not be

compensable with monetary damages, and he does not provide any

other evidence of irreparable injury unique to this case.

Spadone has not made a sufficient showing of irreparable injury

to justify a preliminary injunction.

II.  SUCCESS ON THE MERITS

    It is important for one seeking injunctive relief to

demonstrate that he is likely to succeed on the merits, in order

to justify the "'intrusion into the ordinary processes of

administration and judicial review.'" <u>Konarski v. Donovan</u>, 763
F. Supp. 2d 128, 132 (D.D.C. 2011) (quoting <u>Am. Bankers Ass'n v.
Nat'l Credit Union Admin.</u>, 38 F. Supp. 2d 114, 140 (D.D.C.
1999)).  "Assessing the likelihood of success on the merits 'does
not involve a final determination of the merits, but rather the
exercise of sound judicial discretion on the need for interim
relief.'" <u>Beattie v. Barnhart</u>, 663 F. Supp. 2d 5, 9 (D.D.C.
2009) (quoting <u>Nat'l Org. for Women v. Dep't of Health and Human
Servs.</u>, 736 F.2d 727, 733 (D.C. Cir. 1984)).  To show that
interference into the personnel decisions of the Superintendent
is warranted, Spadone must make a very compelling case that he
was denied process explicitly given to him by statute, or that
the Army's decision was arbitrary or capricious.  "The Court's
deference to the military is at its highest 'when the military,
pursuant to its own regulations, effects personnel changes
through the promotion or discharge process.'" <u>Housman v. Baratz</u>,
916 F. Supp. 23, 28 (D.D.C. 1996) (quoting <u>Dilley v. Alexander</u>,
603 F.2d 914, 920 (D.C. Cir. 1979)).  Judicial review of
personnel decisions of the armed forces is limited to a
determination of whether they were arbitrary, capricious or
contrary to the Constitution, statutes, or governing regulations.
<u>Housman</u>, 916 F. Supp. at 28 (citing <u>Blevins v. Orr</u>, 721 F.2d
1419, 1421 (D.C. Cir. 1983)).

-13-

Spadone argues in a mere four short paragraphs (Pl.'s Mem. at 8-9) that he has a substantial likelihood of success on the merits of his eight-count complaint because the Secretary's actions were arbitrary and capricious, failed to comply with multiple internal due process timetables for adjudicating Spadone's case, violated the Establishment Clause by forcing Spadone to recite a prayer, and wrongly triggered Spadone's active duty obligation. (Id.)  The Secretary opposes, arguing that Spadone has shown no likelihood he will succeed on the merits because most of the claims in Spadone's complaint were not raised during his administrative challenge to his suspension and should be dismissed for Spadone's failure to exhaust his administrative remedies, and because the claims otherwise lack merit.

A review of the record reveals that most of the claims in the complaint that could have been raised below were not raised below.  "Generally . . . issues and arguments not made before the relevant military correction board or administrative agency are deemed waived and could not be raised in a judicial tribunal."  Christian v. United States, 46 Fed. Cl. 794, 802 (2000).  Spadone does not refute that he raised during the administrative proceedings just one of the claims presented in his complaint, namely, a challenge to the standards used for finding that

-14-

Spadone failed the HMP program.[8]  (Def.'s Opp'n at 19; Def.'s
Mem. in Supp. of Mot. for Summ. J. at 5, 8.)  Spadone cannot show
a likelihood of success on waived claims.

Even considering, though, the merits of all the complaint's
claims to which the preliminary injunctive relief he seeks
arguably relates,[9] Spadone's showing falls short.  Count 1
alleges that the Secretary's decision to disenroll Spadone for
failing to follow the requirements of the HMP violated the APA
because it was arbitrary, capricious, and an abuse of discretion.
Specifically, Spadone argues that the Secretary relied on
undefined, nebulous concepts that were not present in West
Point's regulations, such as journal entries "denying the intent"
of West Point's guidelines.  (Pl.'s Mem. at 8.)  Spadone claims
that the HMP regulations do not provide an ascertainable standard

_____

   [8] See n. 12, infra.

   [9] Count 4 complains, curiously, that West Point should have
separated Spadone immediately after he failed the HMP program but
failed to do so, and the delay deprived Spadone of his chance to
enroll in a different college or secure other employment.
(Compl. ¶¶ 122-27.)  Count 8 alleges that Spadone stayed to begin
his third year at West Point in reliance to his detriment upon an
implied promise to let him study abroad that West Point broke,
unjustly enriching the Army by requiring Spadone's services as an
enlisted soldier against his wishes.  Success on these counts
presumably would make Spadone eligible for money damages, not an
order re-enrolling him.  Count 7 alleges that West Point forced
Spadone in violation of the Establishment Clause to recite a
religious prayer.  Success on that count presumably would yield
an order barring forced religious prayer, not an order re-
enrolling Spadone.  Spadone obeyed the challenged order to recite
the prayer; his disenrollment did not stem from refusing a prayer
order.

to determine whether a cadet violates the HMP, and that the
Secretary abused his discretion by failing to provide Spadone
with the opportunity to write extra journal entries for weeks
when he was unable to write the sufficient amount.  (Compl.
¶¶ 97-106.)

A decision is arbitrary or capricious under the APA if the
Secretary failed to provide a reasoned explanation, failed to
address reasonable arguments, or failed to consider an important
aspect of the case.  See Pettiford v. Sec'y of the Navy, 774 F.
Supp. 2d 173, 182 (D.D.C. 2011).  Here, the Secretary provided a
reasoned explanation that was not close to the types of decisions
considered by this court as arbitrary and capricious.  Cf.
Wilhelmus v. Geren, 796 F. Supp. 2d 157, 163-164 (D.D.C. 2011)
(holding that the Army Board for the Correction of Military
Records acted arbitrarily and capriciously when it affirmed a
decision to recoup $137,630 from a cadet who was disenrolled for
unintentionally failing the Cadet Physical Fitness Test because
the Board ignored precedent that disallowed recoupment for
failing that test); El Rio Santa Cruz Neighborhood Health Ctr.,
Inc. v. Dep't of Health and Human Serv., 300 F. Supp. 2d 32,
42-43 (D.D.C. 2004) (holding that the Secretary of Health and
Human Services acted arbitrarily and capriciously when it denied
malpractice insurance coverage to physicians who were situated
similarly to other physicians who were granted malpractice

insurance coverage); Wagner v. Geren, 614 F. Supp. 2d 12, 18-20
(D.D.C. 2009) (holding that the Army Board for Correction of
Military Records arbitrarily and capriciously denied the
plaintiff's 20-year service retirement because when it calculated
the plaintiff's service time it relied on a document that it
could not produce or otherwise prove existed).  While Spadone
complains that the HMP lacked measurable standards for components
such as journal entries, the Secretary explained that Spadone
failed to comply with even unambiguous requirements of the HMP.
According to the Secretary, Spadone was told to begin the HMP
process before leaving West Point for the 2010 summer but he did
not, he refused to wear a brass insignia as ordered, and he did
not engage in the HMP for over a month after returning in the
fall of 2010 until an officer directed him to do so.  (See A.R.
21.)

     In Count 2, Spadone alleges that the Secretary violated his
Fifth Amendment right to due process by not providing Spadone
with a hearing or an opportunity to present a defense after he
was deemed to have failed the HMP and before the Secretary
disenrolled him.  (Compl. ¶¶ 107-110.)  In general, a procedural
due process violation consists of a (1) deprivation by the
government, (2) of life, liberty, or property, (3) without due
process of law.  Lightfoot v. Dist. of Columbia, 273 F.R.D. 314,
319 (D.D.C. 2011) (citing Propert v. Dist. of Columbia, 948 F.2d

-17-

1327, 1331 (D.C. Cir. 1991)).  Spadone has not shown that the
Secretary deprived him of a liberty or property interest.  See
Kentucky Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989).
"[T]here is no protected property interest in continued military
service." Wilhelm v. Caldera, 90 F. Supp. 2d 3, 8 (D.D.C. 2000);
see also Hanson v. Wyatt, 552 F.3d 1148, 1158 (10th Cir. 2008).
Moreover, the record shows that Spadone did receive notice in
October 2010 that he was deemed to have failed the HMP[10] (A.R.
21-22), and did use an opportunity to present a defense before he
was disenrolled.  His attorney submitted to the West Point
Superintendent in December 2010 a letter (A.R. 12-15)[11]
challenging Spadone's proposed separation based upon his alleged
failure to complete the HMP as "arbitrary and capricious, an
abuse of discretion, and not in accordance with the law."  (Id.
at 12.)[12]

In Count 3, Spadone alleges that the Secretary violated
Spadone's Fifth Amendment right to due process and the APA by
failing to complete the cadet honor proceedings within 40 days in

---

[10] The complaint concedes as much.  (Compl. ¶ 109.)

[11] The letter sought relief but did not request a hearing.
(A.R. 12 ¶ 2.)

[12] Not surprisingly, Spadone's memorandum does not even
discuss the allegations in Count 2 among the examples of due
process violations alleged in the complaint.  (Pl.'s Mem. at 9.)
Nor did the letter raise any of the other claims alleged in the
complaint.

violation of West Point's own internal procedures.  The procedure
he cites explains that "standard processing time for honor cases,
under normal circumstances, is 40 days from inception through a
finalized decision by the Superintendent." (Compl. ¶ 95, citing
USCC PAM 15-1 ¶ 204.)  As is explained above, the disenrollment
decision was amply explained.  Aside from the fact that Spadone
did not raise this challenge below, he cites no authority for a
court to override an amply explained military disenrollment
decision that was announced beyond the "standard processing time
. . . under normal circumstances."

Count 5 alleges that West Point wrongly advised Spadone in
August 2010 that he had already begun his third year and incurred
his active duty military service obligation.  On its face, the
advice was not wrong.  Spadone had begun his third year even
before he committed his first honor code violation in
October 2009.

Count 6 alleges that West Point failed to advise Spadone of
his right to remain silent before he was questioned about his
alleged honor code violations.  The record does not support his
allegation.  Spadone's signature, witnessed by two people,
appears on two separate waivers for two separate interviews on
November 18, 2009.  Both waivers acknowledged that before he was
questioned, he was advised of his right to a lawyer and right to
remain silent, and that he understood his rights and was willing

to speak without a lawyer present.  (A.R. 510-13.)  In the face
of this evidence, Spadone's mere assertion that he was advised of
his rights only after he was questioned (Compl. ¶ 39) is not
sufficient to establish a likelihood of success on the merits of
this claim.

The preliminary injunctive relief Spadone seeks is re-
enrollment, but he has failed to show that he is likely to
succeed on the merits of the counts for which re-enrollment
arguably could be the ultimate relief awarded.

III. HARM TO OTHERS; PUBLIC INTEREST

The balance of the harms and the public interest do not
weigh in favor of granting an injunction.  Spadone argues that
the Secretary "stands to lose very little by allowing Cadet
Spadone to resume his studies at West Point while this litigation
is pending." (Pl.'s Mem. at 11.)  The Secretary disagrees, and
argues that the public would be harmed by granting Spadone's
requested injunction because the Army would be forced to spend
additional resources educating Spadone despite the fact that
Spadone would face honor proceedings shortly after his return.
(Def.'s Opp'n at 22.)  The Secretary also argues that the public
has an interest in West Point maintaining high standards for
future Army Officers, and re-enrolling Spadone would create an
irreconcilable conflict between adhering to West Point's
standards and educating Spadone.  (Id. at 23.)  While neither

-20-

party's arguments are dispositive, the Secretary points out that

at least one court has stated that "'the public has an interest,

particularly in light of current events, in seeing that the

Army's discretionary decision making with respect to personnel

decisions is effectuated with minimal judicial interference.'"

Parrish v. Brownlee, 335 F. Supp. 2d 661, 675 (E.D.N.C. 2004)

(quoting Irby v. United States, 245 F. Supp. 2d 792, 798 (E.D.

Va. 2003)).  Even if the reasoning Parrish is not fully adopted,

Spadone, at a minimum, has not shown that these factors weigh in

his favor.

CONCLUSION AND ORDER

Because Spadone has not shown that he will suffer

irreparable injury without his requested injunctive relief, that

he is likely to succeed on the merits of his claims against the

defendant, or that the balance of harms and the public interest

weigh in favor of his proposed injunction, it is hereby

ORDERED that Spadone's motion for a preliminary injunction

[9] be, and hereby is, DENIED.

SIGNED this 8th day of February, 2012.


_____/s/_____
RICHARD W. ROBERTS
United States District Judge