**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| ALAN MATTHEW SPADONE<br><br>                              Plaintiff,<br><br>      v.<br><br>JOHN M. McHUGH<br><br><br>                              Defendant. | Civil Action No. 1:11-cv-01601 (RWR)<br><br>Oral Argument Requested |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S AMENDED MOTION**
**<u>REQUESTING HEARING</u>**

May 2, 2012

Joseph E. Fluet, III (USDC BAR # 480527)
Christian B. Nagel (admitted *pro hac vice*)
FLUET HUBER + HOANG, PLLC
4000 Genesee Place, Suite 205
Lake Ridge, VA 22192
(703) 590-1234

*Counsel for Plaintiff Alan Matthew Spadone*

# I.    Statement of the Case

Alan Matthew Spadone ("Plaintiff" or "Cadet Spadone") filed suit against Defendant Hon. John M. McHugh, Secretary of the Army ("Defendant") pursuant to Defendant's unlawful order disenrolling Cadet Spadone from the United States Military Academy ("West Point").  In addition to ordering Cadet Spadone disenrolled from West Point, Defendant also issued orders to Cadet Spadone requiring him to serve for two years on active duty as an enlisted soldier.

Cadet Spadone's Complaint for Injunctive Relief ("Complaint") sets forth claims that Defendant, acting through the Assistant Secretary of the Army for Manpower and Reserve Affairs, violated the Administrative Procedures Act ("APA"), due process protections, the Establishment Clause, and that Defendant stands to be unjustly enriched by forcing Cadet Spadone into enlisted service against his will.

In response to Cadet Spadone's Complaint, Defendant filed his Motion to Dismiss or in the Alternative, Motion for Summary Judgment, as well as Supporting Memorandum of Law ("Defendant's Motion").  Cadet Spadone filed a Memorandum of Law in Opposition to Defendant's Motion ("Plaintiff's Opposition").  Finally, Defendant filed a Reply to Plaintiff's Opposition.  The parties now await a ruling from the Court on Defendant's Motion.[1]

Cadet Spadone previously had been ordered to report for active duty on Monday, April 23, 2012.  On Friday, April 20, 2012, at approximately 4:00 pm, pursuant to Cadet Spadone's request, the Army revoked Cadet Spadone's orders and issued him new orders.  Under the new

---

[1] Cadet Spadone also filed a Motion for Preliminary Injunction, requesting that the Court order Defendant to re-enroll Cadet Spadone pending the outcome of the underlying case.  In its Memorandum Opinion and Order dated February 8, 2012, the Court denied Cadet Spadone's Motion for Preliminary Injunction.

orders, Cadet Spadone is required to report to a local recruiter on or before July 23, 2012.[2]  At

8:05 pm on April 20, 2012, counsel for Cadet Spadone received the Court's Minute Order

granting Defendant's Motion in part.  The Minute Order indicated that the remainder of

Defendant's Motion would be addressed in a forthcoming memorandum opinion and order.  See

Minute Order of Judge Richard Roberts dated April 20, 2012.

 Cadet Spadone herein respectfully requests the opportunity to provide the Court in-

person testimony in this matter before the Court issues its ruling on Defendant's Motion.[3]

According to the terms imposed by the Army upon his disenrollment from West Point, Cadet

Spadone may not seek employment or engage in any other activity that could potentially

interfere with his enlistment in the Army.  These terms have been in effect since he was initially

dismissed from West Point in December 2010.  As a result, Cadet Spadone respectfully requests

that the Court rule on this motion and Defendant's Motion as quickly as possible.

## II. Facts

 As set forth in greater detail in previous filings, Defendant issued orders disenrolling

Cadet Spadone from West Point and requiring Cadet Spadone to serve as an enlisted soldier in

the United States Army.  Defendant issued these orders pursuant to the recommendation of the

West Point Superintendent after Cadet Spadone allegedly violated the rules of West Point's

Honor Mentorship Program (HMP), in which he had been placed after having been found to have

violated West Point's Honor Code.

 In his order, Defendant confirmed determinations made by West Point faculty members

---

[2] See Cadet Spadone Amended Orders, attached hereto as Exhibit 1.

[3] In compliance with Local Rule 7(m), counsel for Cadet Spadone requested Defendant's
position on the instant motion in an email to counsel for Defendant on April 30, 2012.  Counsel
for Defendant responded to that email on May 2, 2012, indicating that Defendant would oppose
the instant motion on the basis that the relief requested is duplicative of that requested in a
previously filed motion which has not been ruled on by the Court.

that Cadet Spadone submitted journals whose content "violated the intent" of the HMP, did not

begin the HMP as ordered prior to leaving West Point for summer 2010, refused to wear a brass

insignia as ordered, and did not engage in the HMP for over one month after returning to West

Point in the fall of 2010.

## III.   Argument

### a.  The Court may consider testimony from Cadet Spadone.

Courts generally rely solely on the administrative record when reviewing agency actions

under the APA.  However, the D.C. Circuit has set forth exceptions to this general rule.  The

APA limits judicial review to the administrative record "except when there has been a 'strong

showing of bad faith or improper behavior' or when the record is so bare that it prevents

effective judicial review." Theodore Roosevelt Conservation Partnership v. Salazar, 616 F.3d

497, 514 (2010), quoting Commercial Drapery Contractors, Inc. v. United States, 133 F.3d 1, 7

(D.C.Cir.1998) (quoting Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 420, 91

S.Ct. 814, 28 L.Ed.2d 136 (1971)).  Moreover, in Oceana, Inc. v. Locke, 674 F.Supp.2d 39

(2009), this court determined that the testimony at issue, which was outside of the administrative

record, would considered if "plaintiff has shown that the agency (1) acted in bad faith in reaching

its decision, (2) engaged in improper behavior in reaching its decision, (3) failed to examine all

relevant factors, or (4) failed to adequately explain its grounds for decision." Id. at 45, citing

Camp v. Pitts, 411 U.S. 138, 142-143, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973)).

In his Complaint, Cadet Spadone alleges that Defendant failed to adequately explain the

grounds for his decision by, *inter alia*, stating only vague and conclusory reasons for

Defendant's order.  Specifically, Defendant relies on the West Point Superintendent's

memorandum, which claims that Cadet Spadone failed the HMP by submitting journal entries

that "violated the intent" of HMP regulations and that Cadet Spadone demonstrated "unresolved issues that will prevent him from successfully completing the HMP." AR 4. Without more clearly defining the "intent" of the journal entry requirement, or what specific issues would prevent Cadet Spadone from completing the HMP, Defendant has failed to adequately explain the grounds for his decision.

Cadet Spadone further alleges in his previous submissions that Defendant failed to examine all relevant factors. As set forth in Plaintiff's Opposition and detailed in this Motion below, many of the purportedly unambiguous HMP violations on which Defendant based his order are factually untrue. The allegations that Cadet Spadone failed to begin the HMP in a timely manner, that he failed to wear the brass insignia until ordered to do so, and that Cadet Spadone should have started the HMP as soon as he returned to West Point in the fall of 2010 all are based on incomplete or inaccurate facts. Defendant thus made his decision without examining all relevant factors, and the Court should consider Cadet Spadone's testimony in addition to the administrative record.

Finally, and most importantly, Cadet Spadone sets forth multiple causes of action that are not based on the APA. Complaint, at 18-25. These causes of action, including violations of due process protections, violation of the Establishment Clause, and unjust enrichment, do not carry with them any restrictions on the type of evidence a court may consider.

For these reasons, the Court may hear Cadet Spadone's testimony if it so chooses. As set forth below, Cadet Spadone respectfully submits that his in-person testimony would prove beneficial to the Court in reaching its determination on Defendant's Motion.

### b. Cadet Spadone's testimony will assist the Court in evaluating the truthfulness of claims made in Defendant's Motion.

Defendant alleges that Cadet Spadone violated certain unambiguous requirements of the

HMP, in addition to violating an undefined "intent" of the HMP journal requirement.[4]  However, Cadet Spadone has countered in his previous filings that these factual allegations are untrue and/or tell only part of the story.

For example, Defendant claims that Cadet Spadone was told to begin the HMP process before leaving West Point for the 2010 summer, but that he did not begin the program as ordered.  See AR 21.  Cadet Spadone, in his filings, has claimed that he was never told to begin the program over the summer of 2010.  Plaintiff's Opposition at 4-5.  Indeed, he was told just the opposite.  Contrary to Defendant's assertion, and as set forth in Plaintiff's Opposition, West Point faculty actually told Cadet Spadone that he would not be allowed to start the HMP until he returned to West Point after the summer break.  In oral testimony, Cadet Spadone would provide the Court with details about the meeting in which several West Point faculty members and a fellow cadet gave him an initial in-brief and specifically told him that he would not be allowed to participate in the HMP over the summer.

Similarly, Defendant claims that Cadet Spadone refused to wear a brass insignia as ordered.  See AR 21.  Cadet Spadone also has refuted that claim in his previous filings.[5] Plaintiff's Opposition at 4.  In oral testimony, Cadet Spadone would provide additional detail

---

[4] It should be noted that both the West Point Superintendent's memorandum and the supporting legal review memorandum requesting that Defendant disenroll Cadet Spadone make reference to only one HMP rule violation.  See AR 16, 17.  Those documents note only the arbitrary allegation that Cadet Spadone "failed to submit any journal entries that meet the intent of [the HMP]" and that "Cadet Spadone's mentor…believes that Cadet Spadone has unresolved issues that will prevent him from successful completion of the HMP."  Id.  As Cadet Spadone has consistently noted to the Court, the "intent" of the journals is never defined, or even referenced, in the HMP regulation.  Not surprisingly, however, Defendant's Motion emphasizes other alleged HMP violations in an effort to make Defendant's actions seem based on some objective, measurable, and lawful standard.

[5] Plaintiff's Opposition states that Cadet Spadone "always maintained the correct insignia." Plaintiff's Opposition at 4.  Upon further discussion between Cadet Spadone and counsel, Plaintiff's Opposition should have stated that Cadet Spadone always wore the insignia *from the date on which he was aware of the requirement*.

and context from his perspective in terms of the clarity of that order, as well as confirming that he did wear the insignia consistently beginning on the date that he understood the order.

Defendant further claims that Cadet Spadone did not engage in the HMP for over a month after returning in the fall of 2010, when an officer directed him to do so.  See AR 21.  Although Defendant's claim is factually accurate in this regard, Cadet Spadone's oral testimony would provide critically important context for the Court's complete understanding of this allegation.  As set forth in his Complaint, Cadet Spadone spent the first two weeks of the 2010 school year in the hospital.  He then returned to West Point having already missed the beginning of the semester.  West Point cadets generally report to school one week before classes start in order to prepare and organize for the academic and military coursework ahead.  After missing this week of preparation as well as one full week of classes because of his time in the medical facility, Cadet Spadone spent the next two weeks frantically trying to catch up on missed classwork while still preparing for upcoming academic and military evaluations.  As a result, Defendant's assertion that Cadet Spadone waited too long before beginning the HMP program tells only part of the story.  In his oral testimony, Cadet Spadone would offer the Court a more complete picture of the circumstances surrounding the first month of his 2010 school year.

Defendant's underlying claims of lawful action hinge on the assertion that Cadet Spadone violated unambiguous HMP requirements.  Without the violations of those unambiguous requirements, Defendant is left only with the assertion that Cadet Spadone failed the HMP because he violated the "intent" of the journal entry requirements – a subjective, arbitrary standard defined neither in the HMP regulations nor in any of Defendant's supporting documentation.   Under the APA and due process requirements, Defendant may not use such an arbitrary and capricious standard (or lack of any standard at all) as the basis for disenrolling

Cadet Spadone from West Point and ordering him to serve against his will as an enlisted soldier.

Determining which HMP rules Cadet Spadone actually violated thus represents a critical and necessary process in the Court's decision on Defendant's Motion.  Before ruling on Defendant's Motion, then, the Court should hear from Cadet Spadone personally in order to provide additional context, perspective, and detail regarding these alleged HMP rules violations.

### c.  Cadet Spadone's testimony will assist the Court in evaluating the appropriateness of Defendant's order to enlisted service.

In disenrolling Cadet Spadone from West Point and ordering him into involuntary enlisted service, Defendant has focused irrationally on punishing Cadet Spadone to the exclusion of all other considerations.  Defendant's actions are unsupported by law, public policy, or common sense.  For example, Cadet Spadone's tactical officer at West Point recorded in a supporting memorandum,

> My interactions with Cadet Spadone over the last year and a half lead me to distrust him and his judgment.  I feel that Cadet Spadone would be a potentially hazardous liability to his future chain of command.  He has displayed a continuing downward spiral of personality issues which include suicidal acts and intentions, a lack of a functioning grasp of reality, and an inability to move beyond what most observers consider to be inconsequential events.  I distrust him to the extent that *I would not allow him to be armed* given the reasons expressed above.

AR 9 (emphasis added) (attached hereto as Exhibit 2).

Yet in spite of this dire warning from a West Point faculty member with detailed knowledge of Cadet Spadone's situation, Defendant nevertheless issued an order requiring Cadet Spadone to report to active duty as an enlisted soldier in the *infantry* – the very position in which he is most likely to be armed and use weapons in both training and combat scenarios.  <u>See</u> Cadet Spadone 13 September 2011 Orders (attached hereto as Exhibit 3).[6]

---

[6] Cadet Spadone's new orders (attached hereto as Exhibit 1) provide that Cadet Spadone will

In the same supporting documentation relied on by Defendant to issue his order, Cadet

Spadone's tactical officer notes, "Dr. Hain, Psychiatrist, Keller Army Community Hospital, has

evaluated and treated Cadet Alan Spadone, and concurs that *a call to active service would not be

appropriate.*" AR 9 (emphasis added).  Dr. Hain's exact recommendation is set forth in the

administrative record, as well: "I am of the opinion that (Cadet Spadone's) personality traits and

significant adjustment difficulties are likely to continue to adversely affect his ability to serve

both as an officer and in the active military…*A call to action is not in the best interest of the

cadet or the US Army.*"  AR 10 (attached hereto as Exhibit 4) (emphasis added).  Defendant has

offered no indication that he even considered Dr. Hain's evaluation in issuing orders that directly

contradict the recommendation of a trained medical expert.

Thus, Defendant supports his decision with documentation that includes a psychiatrist's

evaluation that Cadet Spadone should not be called to active service, and a West Point faculty-

member's opinion that Cadet Spadone should be rendered unfit even to carry a weapon.  Yet, in

the face of these recommendations by professionals who have personally interacted with and

evaluated Cadet Spadone, Defendant nevertheless has chosen to order Cadet Spadone to active

military service.  The inconsistency of these positions demands the conclusion that the decision

to force Cadet Spadone to serve as an enlisted soldier is purely retributive and not based on any

sound policy or objective standard.

By considering Cadet Spadone's in-person testimony, the Court may gain further insight

---

report to a recruiting station, where he will be assigned a Military Occupational Specialty
("MOS") – which presumably could be an MOS other than infantry.  The Army's *ex post facto*
attempt to reconcile its decision with the recommendations made by its own West Point faculty
in no way diminishes the complete lack of common sense applied in forcing involuntary military
service on an unwilling individual.  In any event, soldiers generally are required to carry assault
weapons while they are deployed, irrespective of their MOS.  Thus, Defendant's order still flies
in the face of recommendations made by professionals much more familiar with the situation.

in its efforts to reconcile how Defendant can claim that Cadet Spadone should not be trusted with

weapons while ordering him to carry automatic weapons as an enlisted soldier.  Such a

determination represents a necessary theoretical leap in Defendant's assertion that his actions

complied with the APA and due process requirements.  As a result, the Court should hear from

Cadet Spadone personally before rendering a final decision on Defendant's Motion.

### d. Cadet Spadone's testimony will provide useful context to assist the Court in understanding the circumstances of the initial honor code violation.

Finally, allowing Cadet Spadone to provide in-person testimony would provide the Court

with essential background information required to fully understand the circumstances

surrounding Defendant's order.  Defendant produced a prodigious administrative record in

support of his Motion.  Cadet Spadone, on the other hand, will have to use depositions and

affidavits during the pre-trial discovery process in order to provide a similar level of detail in

support of his own claims.  However, Cadet Spadone will not have the chance to engage in pre-

trial discovery prior to the Court's ruling on Defendant's Motion – the outcome of which

obviously could preclude discovery altogether.

For example, while Defendant has introduced Cadet Spadone's HMP journal entries as

part of the administrative record, these entries represent only a small portion of the larger factual

basis that led to Cadet Spadone's dismissal.  Those journal entries reflect Cadet Spadone's

frustration after West Point administration failed to honor its affirmative commitment to allow

him to participate in a study abroad program.  In pre-trial discovery, Cadet Spadone will be able

to adduce from Defendant an application form on which West Point faculty indicated that Cadet

Spadone had been given "approval to study abroad at his or her nominated universities."  See,

e.g., Institute for Study Abroad Application (attached hereto as Exhibit 5).

Although West Point has retained possession of the signed document, Cadet Spadone can

provide testimony to the Court recounting his verbal conversations with West Point faculty in which he was told that this form had been signed – and thus that West Point had approved his participation in the study abroad program.  West Point's assurance that Cadet Spadone would be allowed to participate in the study abroad program represents a critical factual basis both for understanding his journal entries and as an element of Cadet Spadone's promissory estoppel claim.  Because such facts could prove critical to the Court's analysis of Defendant's Motion, and because supporting documentation is not available to Cadet Spadone before the discovery process begins, the Court should allow Cadet Spadone to provide testimony in support of his claims before the Court rules on Defendant's Motion.

## IV.   Conclusion

For the reasons stated herein, Cadet Spadone's Request for Hearing should be granted. As noted above, since December 2010, Cadet Spadone has not been able to engage in any activity that could potentially interfere with his enlistment in the Army.  As a result, Cadet Spadone respectfully requests that the Court rule on this and Defendant's Motion as quickly as possible.


Dated: May 2, 2012                               Respectfully submitted,


                                        _____/s/_____
                                        Joseph E. Fluet, III (USDC BAR # 480527)
                                        Christian B. Nagel (admitted *pro hac vice*)
                                        FLUET HUBER + HOANG, PLLC
                                        4000 Genesee Place, Suite 205
                                        Lake Ridge, VA 22192
                                        (703) 590-1234
                                        *Counsel for Plaintiff Alan Matthew Spadone*

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of May, 2012, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Daniel J. Everett, Esq.
Special Assistant U.S. Attorney
555 Fourth Street, N.W., 10th Floor
Washington, D.C.  20530
daniel.everett@usdoj.gov

*Counsel for Defendant*

_____/s/_____
Joseph E. Fluet, III (USDC BAR # 480527)
Christian B. Nagel (admitted *pro hac vice*)
FLUET HUBER + HOANG, PLLC
4000 Genesee Place, Suite 205
Lake Ridge, VA 22192
(703) 590-1234

*Counsel for Plaintiff Alan Matthew Spadone*