UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
ALAN MATTHEW SPADONE,               )
                                    )
            Plaintiff,              )
                                    )
            v.                      )        Civil Action No. 11-1601 (RWR)
                                    )
JOHN M. MCHUGH,                     )
                                    )
            Defendant.              )
_____ )

## MEMORANDUM OPINION AND ORDER

Plaintiff Alan Spadone filed this complaint against

Secretary of the Army John McHugh, alleging that the Secretary's

actions, including his order disenrolling Spadone from the United

States Military Academy ("West Point") and directing Spadone to

serve as an enlisted solider in the Army, violated the

Administrative Procedures Act ("APA"), 5 U.S.C. § 702 et seq.,

the Due Process Clause of the Fifth Amendment, and the

Establishment Clause of the First Amendment, and unjustly

enriched the Army.  The Secretary has moved to dismiss the

complaint or for summary judgment.  Because the Secretary is

entitled to judgment on Spadone's APA and due process claims

since Spadone received the process that was due and the Secretary

did not violate the APA, and the Secretary is entitled to

dismissal of the unjust enrichment claim since the United States

has not waived its sovereign immunity for a claim of unjust

enrichment that seeks equitable relief, the Secretary's motion

-2-

will be granted in part.  However, because the Secretary has not
justified dismissing the Establishment Clause claim and disputed
material facts bar summary judgment on that claim, the
Secretary's motion will be denied in part.

<u>BACKGROUND</u>

The background of this case is discussed more fully in
<u>Spadone v. McHugh</u>, Civil Action No. 11-1601 (RWR), 2012 WL
393056, at * 1-3 (D.D.C. Feb. 8, 2012).  Briefly, in July 2007,
Spadone enrolled at West Point.  (Compl. ¶ 13.)  In
February 2009, Spadone asked West Point's Dean to allow him to
enroll in a study-abroad program.  The Dean denied Spadone's
request in September 2009, and denied reconsidering that decision
in October 2009, after Spadone had started his third year of
study at West Point.  (<u>Id.</u> ¶¶ 23-24, 26.)  A cadet who starts a
third year of study incurs an active duty service obligation.
One who leaves before then does not incur an active duty service
obligation.  (<u>Id.</u> ¶¶ 22-23.)

In November 2009, Spadone admitted that he violated West
Point's honor code by committing plagiarism in writing an
October 2009 essay.  (Def.'s Mot. to Dis., Def.'s Stmt. of Facts
("Def.'s Stmt.") ¶¶ 8, 13.)  Spadone submitted another assignment
in November that his course's professor, Dr. Terri Sabatos,
suspected involved dishonorable documentation.  Spadone told her
he had been merely careless, and he later signed two statements

-3-

denying that the second essay violated the honor code.  (Def.'s
Stmt. ¶¶ 15-16, 20; A.R. 403-404.)  In February 2010, West
Point's Commandant for Honor Matters referred Spadone to an Honor
Investigative Hearing for three charges of violating the honor
code: one charge of plagiarizing in the October paper, one charge
of plagiarizing in the November paper, and one charge of lying to
his professor about the November paper.  (Def.'s Stmt. ¶ 25.)

Spadone pled guilty to plagiarizing in the October essay at
an Honors Investigative Board hearing held on March 8, 2010.  The
Honors Investigative Board also determined that the allegations
of plagiarizing in the November essay were supported by a
preponderance of the evidence but the allegation of lying was
not.  (Compl. ¶¶ 42, 44; Def.'s Stmt. ¶¶ 31-32.)

In April 2010, Spadone was questioned about his honor code
violations by a panel composed of the Commandant of Cadets, a
Command Sergeant Major, five cadets from the Cadet Honor
Committee, and Spadone's Tactical Officer.  (Compl. ¶ 46.)
According to Spadone, the Commandant of Cadets indicated during
the hearing that Spadone had not properly shown contrition or
accepted responsibility for the honor code violations, and
ordered Spadone to stand with his body rigid in a military
posture and to read aloud the "Cadet's Prayer."  (Id. ¶¶ 47-48.)
The prayer says in part, "O God, our Father, Thou Searcher of
human hearts, help us to draw near to Thee in sincerity and

-4-

truth.  May our religion be filled with gladness and may our
worship of Thee be natural. . . .  Help us . . . in doing our
duty to Thee[.]"  (Id. ¶ 47.)

In May 2010, West Point's Superintendent disenrolled Spadone
from West Point for the summer of 2010, delayed his graduation by
one year, placed Spadone in a "suspended separation status" until
graduation, and enrolled Spadone in the Honor Mentorship Program
("HMP") under specific conditions.  (Compl. ¶ 51; Def.'s Stmt.
¶ 41.)  Spadone was told to begin the HMP process before leaving
West Point for the summer, but Spadone did not do so.  After
returning in the fall, he did not engage in the HMP for over a
month until an officer directed him to do so, and he refused to
wear an HMP brass insignia as ordered.  (See A.R. 21.)

In October 2010, the Special Assistant to the Commandant for
Honor Matters recommended vacating the suspension of Spadone's
separation from West Point because Spadone had not submitted
journal entries that met the requirements of the HMP.  (Compl.
¶ 65; A.R. 23.)  In December 2010, the West Point Superintendent
suspended Spadone and placed him on an authorized leave of
absence without pay pending the Army's final decision on his
disenrollment.  (Compl. ¶ 75.)  In August 2011, Spadone learned
that the Secretary signed orders disenrolling Spadone from West
Point and ordering Spadone to report in October 2011 for two
years on active duty as an enlisted soldier.  (Id. ¶¶ 82, 86.)

-5-

Spadone filed his complaint for injunctive relief in this
action in September 2011 challenging the Secretary's actions as
arbitrary, capricious and in violation of due process.  He also
alleged that ordering him to read aloud the Cadet's Prayer
violated the Establishment Clause of the First Amendment, and
that the delay in denying his study abroad enrollment unjustly
enriched the Army by triggering his active duty military service
obligation.  In addition to back pay, his complaint seeks full
reinstatement at West Point and expungement of all records of his
HMP failure, or, in the alternative, an order requiring the
Secretary to discharge Spadone from West Point without requiring
a period of enlisted military service.  He also seeks any other
relief that is just and proper.  (Compl. ¶ 150.)[1]

The Secretary has now moved to dismiss or for summary
judgment on all counts of Spadone's complaint.  Spadone opposes.

## DISCUSSION

"'Summary judgment may be appropriately granted when the
moving party demonstrates that there is no genuine issue as to
any material fact and that moving party is entitled to judgment
as a matter of law.'"  Pueschel v. Nat'l Air Traffic Controllers
Ass'n, 772 F. Supp. 2d 181, 183 (D.D.C. 2011) (quoting Bonaccorsy
v. Dist. of Columbia, 685 F. Supp. 2d 18, 22 (D.D.C. 2010)

---

[1] The Secretary has changed Spadone's reporting date from
October 10, 2011 to July 23, 2012.  (See Notice of Pl.'s
Reporting Status at 2.)

(citing Fed. R. Civ. P. 56(c)).  "'In considering a motion for summary judgment, [a court is to draw] all 'justifiable inferences' from the evidence . . . in favor of the nonmovant.'" Pueschel, 772 F. Supp. 2d at 183 (quoting Cruz-Packer v. Dist. of Columbia, 539 F. Supp. 2d 181, 189 (D.D.C. 2008) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).  "The relevant inquiry 'is the threshold inquiry of determining whether there is a need for a trial - - whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'"  Single Stick, Inc. v. Johanns, 601 F. Supp. 2d 307, 312 (D.D.C. 2009) (quoting Anderson, 477 U.S. at 250) (overruled on other grounds by Prime Time Int'l Co. v. Vilsack, 599 F.3d 678 (D.C. Cir. 2010)).  A genuine issue is present in a case where the "evidence is such that a reasonable jury could return a verdict for the non-moving party," a situation wholly distinct from a case where the evidence is "so one-sided that one party must prevail as a matter of law."  Anderson, 477 U.S. at 248, 252.

"In general, courts tread 'lightly on the military domain, with scrupulous regard for the power and authority of the military establishment to govern its own affairs within the broad confines of constitutional due process.'"  Spadone, 2012 WL

393056, at *3 (quoting <u>Friedberg v. Resor</u>, 453 F.2d 935, 937 (2d

Cir. 1971)).

> To show that interference into the personnel decisions
> of the Superintendent is warranted, Spadone must make a
> very compelling case that he was denied process
> explicitly given to him by statute, or that the Army's
> decision was arbitrary or capricious.  "The Court's
> deference to the military is at its highest 'when the
> military, pursuant to its own regulations, effects
> personnel changes through the promotion or discharge
> process.'"  <u>Housman v. Baratz</u>, 916 F. Supp. 23, 28
> (D.D.C. 1996) (quoting <u>Dilley v. Alexander</u>, 603 F.2d
> 914, 920 (D.C. Cir. 1979)).  Judicial review of
> personnel decisions of the armed forces is limited to a
> determination of whether they were arbitrary,
> capricious or contrary to the Constitution, statutes,
> or governing regulations.  <u>Housman</u>, 916 F. Supp. at 28
> (citing <u>Blevins v. Orr</u>, 721 F.2d 1419, 1421 (D.C. Cir.
> 1983)).

<u>Spadone</u>, 2012 WL 393056, at *5.

I.   COUNTS 1-6: APA AND DUE PROCESS

    The APA "requires courts to 'hold unlawful and set aside

agency action, findings, and conclusions' that are 'arbitrary,

capricious, an abuse of discretion, or otherwise not in

accordance with law.'"  <u>Wilhelmus v. Geren</u>, 796 F. Supp. 2d 157,

160 (D.D.C. 2011) (quoting 5 U.S.C. § 706(2)(A)).  A decision is

arbitrary or capricious under the APA if an agency failed to

provide a reasoned explanation, failed to address reasonable

arguments, or failed to consider an important aspect of the case.

<u>See</u> <u>Pettiford v. Sec'y of the Navy</u>, 774 F. Supp. 2d 173, 181-82

(D.D.C. 2011).  "'[T]he scope of review under the arbitrary and

capricious standard is narrow and a court is not to substitute

-8-

its judgment for that of the agency.'" <u>Pettiford</u>, 774 F. Supp.

2d at 182 (quoting <u>Motor Vehicle Mfrs. Ass'n v. State Farm</u>, 463

U.S. 29, 43 (1983).[2]

Count 1 of Spadone's complaint alleges that the Secretary's

decision to disenroll Spadone for failing to follow the

requirements of the HMP violated the APA because it was

arbitrary, capricious, and an abuse of discretion.  Specifically,

Spadone argues that the Secretary relied on undefined, nebulous

concepts that were not present in West Point's regulations, such

as journal entries "denying the intent" of West Point's

guidelines.  (Pl.'s Mem. at 8.)  Spadone also asserts that the

HMP regulations do not provide an ascertainable standard to

determine whether a cadet violates the HMP, and that the

_____

[2] Spadone may have waived the claims found in Counts 2
through 6 of the complaint.  As was mentioned in the previous
opinion,

> [a] review of the record reveals that most of the
> claims in the complaint that could have been raised
> below were not raised below.  "Generally . . . issues
> and arguments not made before the relevant military
> correction board or administrative agency are deemed
> waived and could not be raised in a judicial tribunal."
> <u>Christian v. United States</u>, 46 Fed. Cl. 794, 802
> (2000).  Spadone does not refute that he raised during
> the administrative proceedings just one of the claims
> presented in his complaint, namely, a challenge to the
> standards used for finding that Spadone failed the HMP
> program.  (Def.'s Opp'n at 19; Def.'s Mem. in Supp. of
> Mot. for Summ. J. at 5, 8.)

<u>Spadone</u>, 2012 WL 393056, at *5.  However, even if Spadone has not
waived the claims in Counts 2 through 6, judgment will be entered
against him for the reasons discussed below.

-9-

Secretary abused his discretion by failing to provide Spadone
with the opportunity to write extra journal entries for weeks
when he was unable to write the sufficient amount.  (Compl.
¶¶ 97-106.)

However, the Secretary provided a reasoned explanation that
offered fair grounds for his decision.[3]  See Chamness v. McHugh,
814 F. Supp. 2d 7, 14 (D.D.C. 2011) (finding that a decision of
the Army Board for Correction of Military Records was not
arbitrary or capricious since it "minimally contain[ed] a
rational connection between the facts and the choice made").
Although Spadone argues that the HMP lacked measurable standards
for components such as journal entries, the Secretary explained
that Spadone failed to comply with even unambiguous requirements
of the HMP.  Spadone was told to begin the HMP process before

---

[3] That is not always the case with agency decisions.
Cf. Wilhelmus, 796 F. Supp. 2d at 163-164 (holding that the Army
Board for the Correction of Military Records acted arbitrarily
and capriciously when it affirmed a decision to recoup $137,630
from a cadet who was disenrolled for unintentionally failing the
Cadet Physical Fitness Test because the Board ignored precedent
that disallowed recoupment for failing that test); El Rio Santa
Cruz Neighborhood Health Ctr., Inc. v. Dep't of Health and Human
Serv., 300 F. Supp. 2d 32, 42-43 (D.D.C. 2004) (holding that the
Secretary of Health and Human Services acted arbitrarily and
capriciously when it denied malpractice insurance coverage to
physicians who were situated similarly to other physicians who
were granted malpractice insurance coverage); Wagner v. Geren,
614 F. Supp. 2d 12, 18-20 (D.D.C. 2009) (holding that the Army
Board for Correction of Military Records arbitrarily and
capriciously denied the plaintiff a 20-year service retirement
because when it calculated the plaintiff's service time, it
relied on a document that it could not produce or otherwise prove
existed).

leaving West Point for the 2010 summer but he did not, he failed to engage in the HMP for over a month after returning in the fall of 2010 until an officer directed him to do so, and he refused to wear a brass insignia as ordered.  It was not arbitrary or capricious for the military to sanction such misbehavior, and second-guessing the sanction's severity is not within the limited purview of judicial review of the military's personnel decisions.

Count 2 alleges that the Secretary violated Spadone's Fifth Amendment right to due process by not providing Spadone with a hearing or an opportunity to present a defense after he was deemed to have failed the HMP and before the Secretary disenrolled him.  (Compl. ¶¶ 107-110.)  In Count 3, Spadone alleges that the Secretary violated his Fifth Amendment right to due process and the APA by failing to complete the cadet honor proceedings within 40 days in violation of West Point's own internal procedures.  The procedure he cites explains that "standard processing time for honor cases, under normal circumstances, is 40 days from inception through a finalized decision by the Superintendent."  (Id. ¶ 95, citing USCC PAM 15-1 ¶ 204.)  In Count 4, Spadone asserts that the Secretary violated Spadone's Fifth Amendment right to due process and the APA by failing to separate him immediately after he failed the HMP program, and the delay deprived Spadone of his chance to enroll

-11-

in a different college or secure other employment.  (Compl.
¶¶ 122-27.)

In general, a procedural due process violation consists of a
(1) deprivation by the government, (2) of life, liberty, or
property, (3) without due process of law.  Lightfoot v. Dist. of
Columbia, 273 F.R.D. 314, 319 (D.D.C. 2011) (citing Propert v.
Dist. of Columbia, 948 F.2d 1327, 1331 (D.C. Cir. 1991)).

Spadone has shown neither that the Secretary deprived him of
a liberty or property interest, nor that the process he received
was inadequate.  See Kentucky Dep't of Corr. v. Thompson, 490
U.S. 454, 460 (1989).  "[T]here is no protected property interest
in continued military service."  Wilhelm v. Caldera, 90 F. Supp.
2d 3, 8 (D.D.C. 2000); see also Hanson v. Wyatt, 552 F.3d 1148,
1158 (10th Cir. 2008).  In addition, the record shows that
Spadone received notice in October 2010 that he was deemed to
have failed the HMP[4] (A.R. 21-22), and that Spadone used his
opportunity to present a defense before he was disenrolled.  His
attorney submitted to the West Point Superintendent in
December 2010 a letter (A.R. 12-15)[5] challenging Spadone's
proposed separation based upon his alleged failure to complete
the HMP as "arbitrary and capricious, an abuse of discretion, and

---

[4] The complaint concedes as much.  (Compl. ¶ 109.)

[5] The letter sought relief but did not request a hearing.
(A.R. 12 ¶ 2.)

-12-

not in accordance with the law." (Id. at 12.)  The Secretary's
disenrollment decision was amply explained to Spadone.  Aside
from the fact that Spadone did not raise this challenge below, he
cites no authority for a court to override an amply explained
military disenrollment decision that was announced beyond the
"standard processing time . . . under normal circumstances."
Nor can it be true that according Spadone due process after he
failed the HMP program, rather than immediately separating him
without it, violates due process or the APA.

     Count 5 claims that the Secretary violated Spadone's
Fifth Amendment right to due process and the APA by wrongly
advising Spadone in August 2010 that he had already begun his
third year and incurred his active duty military service
obligation.  (Compl. ¶¶ 128-134.)  Count 6 asserts that the
Secretary violated Spadone's Fifth Amendment right to due process
and the APA by failing to advise Spadone of his right to remain
silent before he was interviewed about his first honor code
violation.  (Id. ¶¶ 38-39, 135-138.)

     The record shows that the Secretary is entitled to judgment
on Counts 5 and 6.  The advice that Spadone complains of in
Count 5 was not objectively wrong, as Spadone had begun his third
year even before he committed his first honor code violation in
October 2009.  Similarly, Spadone has failed to rebut the record
evidence that the interview in which he was not initially

informed of his right to remain silent was not one that required
a prior advice of rights.[6]  The professor to whom Spadone
submitted the plagiarized essay conducted an "approach for
clarification . . . to determine if there [was] a reasonable
explanation for the situation. . . .  There is no requirement to
provide a rights warning during an approach for clarification."
(Def.'s Stmt. ¶¶ 11-12.)[7]  Therefore, judgment will be entered
for the Secretary on Counts 1 through 6.

II.  COUNT 7: ESTABLISHMENT CLAUSE

    Count 7 alleges that the Secretary violated Spadone's rights
under the Establishment Clause when, during the April 2010

---

[6] The caption of Count 6 and paragraph 138 within that Count
refer to questioning in connection with a single honor code
violation, not multiple alleged violations.  Paragraph 38 of the
complaint, which Count 6 incorporates by reference (Compl.¶ 135),
specifies that the questioning occurred during the interview
conducted by Major Anthony George, Dr. Terri Sabatos, and Cadet
Adam J. Bishop.  Sworn statements by Dr. Sabatos, Cadet Bishop
and Major George reflect that the contact occurred on November 6,
2009 and was "an approach for clarification" about the
October essay.  (A.R. at 575, 580, 601.)  The three met in
advance to review the proper way to conduct an approach for
clarification to assure that it was not an accusatory session
(id. at 580, 601), and Major George told Spadone during the
interview that this was not an accusation, but a chance to
clarify the similarities between his paper and a journal article.
(Id. at 575, 581.)

[7] Even if Dr. Sabatos' interview regarding the November
essay were at issue, the Secretary's dismissal decision was based
upon a full record that included careful examination and
assessment of this interview as an approach for clarification
that required no prior advice of rights.  (See A.R. 70-106,
196-98.)  Spadone has provided no basis for substituting a
judicial assessment for the Secretary's.

-14-

hearing, the Commandant of Cadets forced Spadone to recite a religious prayer. (Compl. ¶¶ 139-144.) The Establishment Clause provides that "Congress shall make no law respecting an establishment of religion." U.S. Const. amend. I. The Supreme Court has explained that "the purpose of the Establishment and Free Exercise Clauses of the First Amendment is 'to prevent, as far as possible, the intrusion of either [the church or the state] into the precincts of the other.'" Lynch v. Donnelly, 465 U.S. 668, 672 (1984) (citing Lemon v. Kurtzman, 403 U.S. 602, 614 (1971)). "For decades, the Supreme Court has tested the constitutionality of state action under the Establishment Clause pursuant to a standard first articulated in Lemon. . . ." Newdow v. Bush, 355 F. Supp. 2d 265, 283 (D.D.C. 2005). The Lemon test upholds a government's action only if it has a "secular . . . purpose" and its "principal or primary effect . . . neither advances nor inhibits religion." Lemon, 403 U.S. at 612-13. And the Constitution guarantees that government must not coerce anyone to support or participate in religion or its exercise. Lee v. Weisman, 505 U.S. 577, 587 (1992). For example, military service academies violate the Establishment Clause when they force their students to attend religious services. See Anderson v. Laird, 466 F.2d 283, 290 (D.C. Cir. 1972).

The Secretary does not argue that a compelled monotheistic prayer has a secular purpose or that it does not advance

-15-

religion.  Instead, the Secretary argues that Spadone lacks

standing to assert an Establishment Clause claim.

> "[A] showing of standing is an essential and unchanging
> predicate to any exercise of [a court's] jurisdiction."
> Fla. Audubon Soc'y v. Bentsen, 94 F.3d 658, 663  (D.C.
> Cir. 1996) (internal quotation marks omitted).  In
> order for a plaintiff to establish standing to bring a
> constitutional claim, Article III requires that the
> plaintiff demonstrate (1) that he has suffered "an
> injury in fact" that is "(a) concrete and
> particularized and (b) actual and imminent, not
> conjectural or hypothetical," (2) that there exists
> "a causal connection between the injury and the conduct
> complained of," that is, that the injury is "fairly
> traceable to the challenged action of the defendant,"
> and (3) that it is "likely, as opposed to merely
> speculative, that the injury will be redressed by a
> favorable decision."  Lujan v. Defenders of Wildlife,
> 504 U.S. 555, 560-61 (1992) (internal quotation marks
> and citations omitted).

Urban Health Care Coalition v. Sebelius, Civil Action No. 06-2220

(RWR), 2012 WL 1035392, at *3 (D.D.C. March 29, 2012).

"An alleged Establishment Clause injury is sufficiently

concrete and particularized when the plaintiff sees or hears a

government-sponsored religious display or speech that offends his

or her beliefs."  Newdow v. Roberts, 603 F.3d 1002, 1014 (D.C.

Cir. 2010) (Kavanaugh, J., concurring) (citing In re Navy

Chaplaincy, 534 F.3d 756, 764 (D.C. Cir. 2008)).  Spadone, of

course, has alleged not that he merely witnessed offensive

government-sponsored religious speech, but that the government

coerced him into uttering the government-sponsored religious

speech.  He has sufficiently alleged an injury in fact.

-16-

In claiming that Spadone has failed to establish that his
injury was fairly traceable to the Commandant's order forcing
Spadone to recite the prayer, the Secretary misidentifies the
injury as Spadone's dismissal (Def.'s Mem. in Supp. of Mot. for
Summ. J. ("Def's Mem.") at 39-40), a claimed due process and APA
injury.  It is beyond debate that Spadone's claimed Establishment
Clause injury is fairly traceable to the Commandant's challenged
order.  Likewise, in arguing that Spadone's reinstatement will
not redress the Establishment Clause injury, even the Secretary
acknowledges that reinstatement is not the relevant relief.
(Def.'s Mem. at 41 ("the proper remedy is an injunction
precluding" action violating the Establishment Clause).)  Spadone
filed a complaint for injunctive relief that prays for relief
that is "just and proper."  (Compl. ¶ 150(f).)  Any Establishment
Clause injury established here likely would be redressed by a
proper injunction barring forced religious prayer.  Thus, Spadone
has standing to challenge the Secretary's alleged Establishment
Clause violation.

The Secretary's argument that Spadone waived his
Establishment Clause claim asserts that granting the relief of
setting aside the decision dismissing Spadone from West Point
would improperly inject the judiciary into discretionary
personnel and disciplinary decisions.  (Def.'s Mem. at 9-10.)
Here, too, the Secretary's argument is misfocused upon relief

-17-

that would not flow from a proven Establishment Clause claim, and
his explanation presents no cogent reason for dismissing Count 7.
Finally, in seeking summary judgment on Count 7, the Secretary
suggests a dispute about a material fact that would bar summary
judgment. While Spadone alleges that the Commandant forced
Spadone to recite a religious prayer, the Secretary asserts that
there is no indication in the administrative record that this
occurred. (Def.'s Mem. at 40.) The Secretary's motion, then,
will be denied as to Count 7.

III. COUNT 8: UNJUST ENRICHMENT

Count 8 alleges that the Secretary would be unjustly
enriched if he were allowed to force Spadone to serve as an
enlisted soldier. (Compl. ¶¶ 145-149.) The Secretary argues
that Count 8 should be dismissed for lack of jurisdiction because
the United States has not waived its sovereign immunity for
claims of unjust enrichment that seek equitable relief as opposed
to monetary damages. (Id. at 23.)

"In reviewing a motion to dismiss for lack of subject matter
jurisdiction, a court 'accepts as true all of the factual
allegations contained in the complaint[.]'" Teton Historic
Aviation Found. v. U.S. Dep't of Def., 686 F. Supp. 2d 75, 78
(D.D.C. 2010) (quoting Peter B. v. CIA, 620 F. Supp. 2d 58, 67
(D.D.C. 2009)) (some internal quotations omitted). "The
plaintiff bears the burden of establishing that the court has

jurisdiction over a claim." Teton Historic Aviation Foundation,
686 F. Supp. 2d at 78.

"The Federal Government cannot be sued without its consent."
United States v. Navajo Nation, 129 S. Ct. 1547, 1551 (2009).
The government's consent to be sued cannot be inferred or
"'implied but must be unequivocally expressed.'" Franconia
Assocs. v. United States, 536 U.S. 129, 141 (2002) (quoting
United States v. King, 395 U.S. 1, 4 (1969)); Strong-Fisher v.
Lahood, 611 F. Supp. 2d 49, 53 (D.D.C. 2009). "'Jurisdiction
over any suit against the Government requires a clear statement
from the United States waiving sovereign immunity . . . together
with a claim falling within the terms of the waiver.'"
Cartwright Int'l Van Lines, Inc. v. Doan, 525 F. Supp. 2d 187,
194 (D.D.C. 2007) (quoting United States v. White Mountain Apache
Tribe, 537 U.S. 465, 472 (2003)). Courts lack subject matter
jurisdiction to hear claims filed against the government that do
not fall within the scope of a waiver of sovereign immunity. See
P&V Enterprises v. United States Army Corps of Eng'rs, 516 F.3d
1021, 1026-1027 (D.C. Cir. 2008); Ballard v. Holinka, 601 F.
Supp. 2d 110, 121 (D.D.C. 2009) (noting that sovereign immunity
is jurisdictional in nature).

The Little Tucker Act, 28 U.S.C. § 1346(a)(2), provides
jurisdiction in federal district courts for claims seeking less
than $10,000 in monetary damages against the United States

founded upon express or implied contracts.  However, the Little Tucker Act does not provide a waiver of sovereign immunity for claims against the United States where a party seeks equitable relief, as opposed to monetary relief, against the United States for breach of a contract.  <u>Wright v. Foreign Serv. Griev. Bd.</u>, 503 F. Supp. 2d 163, 178 (D.D.C. 2007).  A plaintiff's request for back pay does not transform "what is 'in essence' a claim for equitable relief into a claim for money damages."  <u>Wright</u>, 503 F. Supp. 2d at 179.

Here, Spadone's claim for unjust enrichment fails to allege a viable waiver of sovereign immunity, or, frankly, any viable jurisdictional basis.  Spadone's complaint is, in essence, a claim for equitable relief.  He seeks an order setting aside his disenrollment and reinstating him as a student at West Point, or an order requiring the Secretary to discharge Spadone from West Point without requiring him to serve a period of enlisted service.  While the complaint does ask for "monetary damages for back pay no greater than $10,000" (Compl. ¶ 150(d)), Spadone has abandoned that request.  His opposition asserts that he does not seek monetary damages for Count 8; rather, he "is requesting equitable relief to prevent Defendant from unjust enrichment in the form of Cadet Spadone's service as an enlisted soldier." (Pl.'s Opp'n at 25.)  In his opposition, Spadone invokes the APA's waiver of sovereign immunity, but Spadone does not provide

-20-

any support for the proposition that an action that would
unjustly enrich the Secretary would be actionable as arbitrary or
capricious under the APA.

<u>CONCLUSION</u>

Spadone has not established that his suspension and
disenrollment from West Point violated the APA or his right to
due process, and Spadone failed to demonstrate a waiver of
sovereign immunity for his claim of unjust enrichment.  However,
summary judgment is premature on Spadone's Establishment Clause
claim, and the Secretary's faulty reasoning does not warrant
dismissing that claim.  Therefore, it is hereby

ORDERED that the defendant's motion [14] to dismiss or for
summary judgment be, and hereby is, GRANTED in part and DENIED in
part.  Count 8 of Spadone's complaint will be dismissed, and
judgment will be entered in favor of the Secretary on Counts 1
through 6.  The remainder of the motion will be denied.  It is
further

ORDERED that the plaintiff's motions [18] [21] for a hearing
be, and hereby are, DENIED as moot.

SIGNED this 6th day of June, 2012.

                          _____/s/_____
                          RICHARD W. ROBERTS
                          United States District Judge